**BAKER & HOSTETLER LLP**
Matthew C. Kane, Esq. (SBN 171829)
mkane@bakerlaw.com
Amy E. Beverlin, Esq. (SBN 284745)
abeverlin@bakerlaw.com
Kerri H. Sakaue, Esq. (SBN 301043)
ksakaue@bakerlaw.com
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859

**BAKER & HOSTETLER LLP**
Sylvia J. Kim, Esq. (SBN 258363)
*sjkim@bakerlaw.com*
Transamerica Pyramid
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile: 415.659.2601

Attorneys for Defendant SACRAMENTO LOGISTICS LLC and *Specially Appearing* Defendants C&S LOGISTICS OF SACRAMENTO/TRACY LLC and C&S WHOLESALE GROCERS, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

TENIAH TERCERO, as an individual and on behalf of all other similarly situated Class Members,

Plaintiff,

v.

SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company; C&S LOGISTICS OF SACRAMENTO/TRACY LLC, a Delaware Limited Liability Company; C&S WHOLESALE GROCERS, LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive,

Defendants.

CASE NO.

[Sacramento Superior Court Case No. 24CV002889]

**DEFENDANT SACRAMENTO LOGISTICS LLC AND *SPECIALLY APPEARING* DEFENDANTS C&S LOGISTICS OF SACRAMENTO/ TRACY AND C&S WHOLESALE GROCERS, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION**

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant SACRAMENTO LOGISTICS LLC ("**Sacramento Logistics**"), and Specially Appearing Defendants C&S LOGISTICS OF SACRAMENTO/TRACY ("**C&S Logistics**") and C&S WHOLESALE GROCERS, LLC ("**C&S Wholesale**") (collectively, "Defendants") by and through their undersigned counsel, hereby remove the above-captioned action from the Superior Court of the State of California in and for the County of Sacramento (the "**State Court**") to this Court on the grounds that this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("**CAFA**") (28 U.S.C. § 1332(d)(2)), traditional diversity jurisdiction (28 U.S.C. § 1332(a)), federal question jurisdiction (28 U.S.C. §§ 1331, 1441(a), 1446), and on all other grounds for jurisdiction to the extent applicable, including supplemental jurisdiction. In support of this Notice of Removal, and in accordance with 28 U.S.C. § 1446, Defendants aver as follows:

## STATUS OF THE PLEADINGS AND PROCESS

1. On February 16, 2024, Plaintiff TENIAH TERCERO filed a putative Class Action Complaint (the "**Complaint**") against Defendants in the State Court, styled as *Teniah Tercero, an individual, and on behalf of all other similarly situated Class Members vs. Sacramento Logistics LLC, a Delaware Limited Liability Company; C&S Logistics of Sacramento/Tracy LLC, a Delaware Limited Liability Company; C&S Wholesale Grocers, LLC a Delaware Limited Liability Company; and Does 1 to 100 inclusive*, Case No. 24CV002889 (the "**State Court Action**"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2. Plaintiff's Complaint alleges seven (7) purported causes of action for: (1) recovery of unpaid minimum wages and liquidated damages; (2) recovery of unpaid overtime wages; (3) failure to provide meal periods or compensation in lieu thereof; (4) failure to provide rest periods or compensation in lieu thereof; (5) failure to pay all

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

timely wages due upon separation of employment; (6) failure to reimburse business expenses; and (7) unfair competition based on alleged violations of the California Labor Code. Plaintiff purports to bring these causes of action on behalf of herself and "[a]ll current and former non-exempt employees that worked either directly or via a staffing agency for any one or more of the DEFENDANTS at any location in California at any time within the four (4) years prior to the filing of the initial Complaint ('Class Period')." Exh. A, ¶ 17.

3. On February 26, 2024, Defendants' agent for service of process was personally served with copies of the Summons and Complaint.

4. True and correct copies of every process, pleading, and order served on Defendants are attached hereto as the Exhibits identified below:

| **Exhibit** | **Document** |
|---|---|
| **A** | Complaint |
| **B** | Summons |
| **C** | Civil Case Cover Sheet |
| **D** | Notice of Case Assignment and Case Management Conference |

5. Defendants are informed and believe that the following additional documents are also on file in the State Court Action, which are attached hereto as the Exhibits identified below:

| **Exhibit** | **Document** |
|---|---|
| **E** | Proof of Service of Summons – Sacramento Logistics |
| **F** | Proof of Service of Summons – C&S Wholesale |
| **G** | Proof of Service of Summons – C&S Logistics |
| **H** | Notice of Reassignment |
| **I** | Minute Order Re: Complex Determination |
| **J** | Notice of Case Management Conference and Orders Re: Complex Case Management Procedures |

6. Defendants are informed and believe that the aforementioned documents and exhibits constitute all of the process, pleadings, and orders on file in the State Court Action.

7. Defendants are further informed and believe that there has been no service of process upon Defendants DOES 1 through 100, which are fictitious defendants to be disregarded for the purposes of this removal. *See* 28 U.S.C. § 1441(a).

## REMOVAL JURISDICTION – CAFA JURISDICTION

### A. STATEMENT OF JURISDICTION

8. Defendants aver that this Court has original subject matter jurisdiction over this action pursuant to, *inter alia*, CAFA. *See* 28 U.S.C. § 1332(d)(2).

9. CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a putative class of plaintiffs is a citizen of a state different from any defendant, the matter in controversy exceeds $5 million exclusive of interest and costs, and the number of members of all proposed plaintiff classes in the aggregate is at least 100 class members. 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

10. There is no presumption against removal under CAFA. *See, e.g.*, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("*Dart*") ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."). To the contrary, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant.'" *Id.* at 554 (quoting S. Rep. No. 109-14, p. 43 (2005)).

11. This Court has jurisdiction over this case under CAFA, and this case may be removed pursuant to 28 U.S.C. § 1441(a), because: (1) the proposed class contains more than 100 members; (2) Defendants are not a state, state official, or other governmental entity; (3) the total amount in controversy for all putative class members

exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member (Plaintiff) and Defendants.

12. Removal to this Court is proper because the action was filed and is pending in the Superior Court of the State of California in and for Sacramento County, which is within this judicial district. 28 U.S.C. §§ 128(b), 1446(a).

13. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## B. THIS ACTION IS A CLASS ACTION UNDER CAFA

14. Pursuant to Section 4 of CAFA, 28 U.S.C. § 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which —
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant …;

15. CAFA defines a "class action" to include civil actions filed under state statutes or rules of procedure similar to Rule 23 of the Federal Rules of Civil Procedure that authorize an action to be brought by one or more representative persons as a class action. In the Complaint, Plaintiff states that "PLAINTIFF is informed and believes, and thereon alleges that at all times relevant to this Complaint, DEFENDANTS were the joint employers of PLAINTIFF and the Class Members Exh. A, ¶ 13; *see also id.*, ¶ 15 ("Thus, DEFENDANTS collectively exercised the right to control the wages, hours and working conditions of PLAINTIFF and Class Members …."; *id.*, ¶ 17 ("Class Allegations"). Therefore, this action is a "class action" under CAFA.

## C. MINIMUM DIVERSITY OF CITIZENSHIP EXISTS

16. Minimum diversity exists pursuant to 28 U.S.C. § 1332(d)(2)(A).

17. **Plaintiff's Citizenship.** The Complaint alleges that "Plaintiff is, and at all relevant times, was an individual domiciled in the State of California and a citizen of the State of California." *See* Exh. A, ¶ 2; *see also id.*, ¶17 ("The class Plaintiff seeks to represent are defined as … all current and former non-exempt employees that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

worked either directly or via staffing agency for any one or more of the Defendants at any location in California.…”). As such, Plaintiff is a citizen of California for purposes of CAFA. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also Mondragon v. Capital One Auto Fin.*, 776 F.3d 880, 885-86 (9th Cir. 2013) (holding that, in connection with removal to federal court, a person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change").

18. **Defendant Sacramento Logistics' Citizenship.** Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it was organized." 28 U.S.C. § 1332(d)(10).[1] A limited liability company ("**LLC**") is an unincorporated association under CAFA. *See, e.g.*, *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 700 (4th Cir. 2010) (holding that an LLC is properly considered an "unincorporated association" within the meaning of § 1332(d)(10)); *see also Jack v. Ring LLC*, 553 F.Supp.3d 711, 714-15 (N.D. Cal. 2021) (same); *Ramirez v. Carefusion Resources, LLC*, 2019 WL 2897902, at *2 (S.D. Cal. July 5, 2019) (same) (citing cases). As shown on the Delaware Division of Corporations' website, Sacramento Logistics is a Delaware LLC. *See* URL at https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (search for "Sacramento Logistics"). Additionally, Sacramento Logistics maintains its corporate headquarters and principal place of business in Keene, New Hampshire, where its officers direct, control and coordinate its activities and the majority of its executive functions are performed there. Thus, Sacramento Logistics was not and is not a citizen

[1] *See also Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) ("[Section] 1332(d)(10) ... departs from the rule that frequently destroys diversity jurisdiction, that a limited partnership's or unincorporated association's citizenship for diversity purposes can be determined only by reference to all of the entity's members."); *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032, & n.13 (9th Cir. 2009) (Kleinfeld, J., concurring) ("CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes ....").

of the State of California, but rather was and is a citizen of the States of Delaware and New Hampshire for the purpose of determining jurisdiction. *See* 28 U.S.C. § 1332©(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

19. ***Specially Appearing* Defendant C&S Logistics of Sacramento/Tracy LLC's Citizenship.** As shown on the California Secretary of State's Business Entities Search website, C&S Logistics is an LLC organized under the laws of Delaware that maintains its corporate headquarters and principal place of business in Keene, New Hampshire. *See* URL at https://bizfileonline.sos.ca.gov/search/business (search for "C & S Logistics of Sacramento/Tracy LLC"). At its corporate headquarters in Keene, New Hampshire, C&S Logistics' officers direct, control and coordinate its activities and the majority of its executive functions are performed there. Thus, C&S Logistics was not and is not a citizen of the State of California, but rather was and is a citizen of the States of Delaware and New Hampshire for the purpose of determining jurisdiction. *See* 28 U.S.C. § 1332(d)(10); *see also Abrego Abrego*, 443 F.3d at 684; *Ferrell*, 591 F.3d at 700.

20. ***Specially Appearing* Defendant C&S Wholesale Grocers LLC's Citizenship.** As discussed above with respect to C&S Logistics, for purposes of CAFA, C&S Wholesale "shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it was organized." 28 U.S.C. § 1332(d)(10). As shown on the Delaware Division of Corporations' website, C&S Wholesale Grocers LLC is a Delaware LLC. *See* URL at https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx (search for "C&S Wholesale Grocers LLC"). Additionally, C&S Wholesale maintains its corporate headquarters and principal place of business in Keene, New Hampshire, where C&S Wholesale Grocers LLC's officers direct, control and coordinate its activities and the majority of its executive functions are performed there. Thus, C&S Wholesale Grocers LLC was not and is not a citizen of the State of California, but rather was and is a citizen of the States of Delaware and New Hampshire for the purpose of determining

jurisdiction. *See* 28 U.S.C. § 1332(d)(10); *see also Abrego Abrego*, 443 F.3d at 684; *Ferrell*, 591 F.3d at 700.

21. **Doe Defendants.** DOES 1 through 100 are fictitious defendants whose citizenship is disregarded for purposes of removal. *See* 28 U.S.C. § 1441(a).

22. Accordingly, because Plaintiff is a citizen of the State of California, while Defendants are citizens of states ***other than California*** for the purpose of determining CAFA jurisdiction, the minimum diversity requirement under CAFA is satisfied. *See* 28 U.S.C. § 1332(d)(2) (providing that CAFA jurisdiction exists over any civil action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

### D. THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

23. Defendants aver, based on the following calculations, that the amount in controversy ("**AIC**") exceeds $5,000,000.00 only for the purpose of establishing subject matter jurisdiction under CAFA. C&S's allegations and calculations are not admissions of liability or damages with respect to any aspect of this case, or to the proper legal test(s) applicable to Plaintiff's allegations, or whether a class action is proper. *See LaCrosse v. Knight Truck and Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. 2015) ("'Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and trial.'") (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015)).

24. Consistent with Fed. R. Civ. P. 8(a), a removing defendant's notice of removal need only contain plausible allegations to demonstrate the AIC. Evidentiary submissions are ***not required*** unless and until the removing defendant's allegations are contested by the plaintiff or questioned by the Court:

> In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Dart*, 574 U.S. at 89. This standard applies to complaints, like the Complaint in this action, which do not allege or seek a specific amount of damages:

> When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy … the Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal

*Ibarra*, 775 F.3d at 1197-98 (citing *Dart*).

25. A plaintiff's complaint is a court's "first source of reference in determining the amount in controversy." *LaCrosse*, 775 F.3d at 1202 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("*Red Cab*")). Here, in determining the AIC for purposes of removal, the ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint—not what a court or jury might later determine to be the actual amount of damages, if any. *See, e.g.*, *Ibarra*, 775 F.3d at 1198 n.1 (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are *in controversy*," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal" (emph. added)); *Red Cab*, 303 U.S. at 291 ("the status of the case as disclosed by the complaint is controlling in the case of a removal"); *Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint").[2]

26. Additionally, as confirmed by the Ninth Circuit in *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413 (9th Cir. 2018), "the amount in controversy is not limited to damages incurred prior to removal … [r]ather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses *all relief a court <u>may</u> grant on that complaint if the plaintiff is victorious*." *Id.* at 414-15

[2] *See also, e.g.*, *Wilder v. Bank of Am.*, 2014 WL 6896116, at *4 (C.D. Cal. Dec. 5, 2014) (determining AIC requires the court to assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint because the ultimate inquiry is what amount is put "in controversy" by the complaint, not what a defendant will actually owe).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(emph. added); *see also id.* at 417-18 ("[T]he amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails."). Accordingly, the AIC properly includes **all** relief available to Plaintiff through the end of trial.

27. Here, Plaintiff purports to bring this action on behalf of herself and the following putative class members ("PCMs"):

> [A]ll current and former non-exempt employees that worked either directly or via a staffing agency for any one or more of the DEFENDANTS at any location on California at any time within the four years prior to the filing of the initial Complaint ("Class Period").

Exh. A, ¶ 17. Plaintiff and the PCMs she seeks to represent purport to seek, *inter alia*, allegedly unpaid minimum and overtime wages; liquidated damages in an amount equal to the allegedly unpaid minimum wages; allegedly unpaid premiums for missed, shortened, or late rest breaks and first and second meal breaks; penalties pursuant to Cal. Lab. Code § 210; waiting time penalties; unreimbursed business expenses; statutory penalties for Defendants' alleged failure to maintain accurate employee records; restitution under the UCL; and attorneys' fees under various provisions of the California Labor Code and under Cal. Civ. Proc. Code § 1021.5. *See id.*, ¶¶ 74, 90, 97, 106, 115, 120, 127, 131 & Prayer for Relief at 29:4-7, 11.

28. CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the aggregate AIC for *all* class members exceeds $5,000,000.00. *See* 28 U.S.C. § 1332(d). Here, the AIC based on the allegations in Plaintiff's FAC and the claimed statutory damages, penalties, and attorneys' fees exceeds that jurisdictional minimum.

**Size of Proposed Class**

29. According to the Complaint, "[t]he potential members of the class as defined are so numerous that joinder of all members is impractical under the circumstances of this case." Exh. A, ¶ 17(a). More specifically, Plaintiff alleges that she "is informed and believes the class consists of at least 100 individuals." *See id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Indeed, Sacramento Logistics alone has employed more than 100 individuals during the putative class period as defined in the Complaint (*i.e.*, February 16, 2020 through March 9, 2024). Therefore, the aggregate membership of the proposed class is *at least* 100 as required under CAFA. *See* 28 U.S.C. § 1332(d)(5)(B).

**Amount in Controversy**

30. Defendants aver that the aggregate AIC for the above-described types of damages sought by Plaintiff for all of the PCMs exceeds $5,000,000.00, and, therefore the AIC as sought in the Complaint exceeds CAFA's jurisdictional minimum. *See* 28 U.S.C. § 1332(d).

31. The claims of the individual class members in a "class action" are aggregated to determine if the AIC exceeds the sum or value of $5,000,000.00. *See* 28 U.S.C. §§ 1332(d)(6), (11). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff for the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." *See* Senate Judiciary Committee Report, S. Rep. 109-14, at 42. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.[3]

32. Sacramento Logistics' payroll, employment, and operational data for the PCMs, comprised of current and former employees in California who worked as non-exempt hourly employees between February 16, 2020 and March 9, 2024 was used and

[3] *See* S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case ... Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

analyzed to determine the CAFA AIC for purposes of this Notice of Removal.[4] Data for that four-year period can be summarized as follows:

(a) For the period from February 16, 2020 through March 9, 2024 (the "**4-Year SOL Period**"):

(i) The PCMs worked an aggregate total of 49,463 workdays;

(ii) Their average base regular rate of pay was $23.55 per hour;

(iii) They worked an aggregate total of 49,038 workdays with shifts of over 3.5 hours ("**3.5-Hour Workdays**");

(iv) They worked an aggregate total of 47,804 workdays with shifts of over 5 hours ("**5-Hour Workdays**");

(v) They worked an aggregate total of 29,213 workdays with shifts of over eight hours but not more than 12 hours ("**8/12-Hour Workdays**") during which they worked an aggregate total of 53,140.84 hours in excess of eight in a day;

(vi) They worked an aggregate total of 3,046 workdays with shifts of over 12 hours ("**12-Hour Workdays**") during which they worked an aggregate total of:

a. 12,184 hours in excess of eight but less than 12 hours in a day; and

b. 2,888.29 hours in excess of 12 hours in a day.

(b) For the period from February 16, 2021 through March 9, 2024 (the "**3-Year SOL Period**"):

(i) At least 138 PCMs separated from their employment; and

(ii) Those *former* employees were paid an average base regular rate of pay of $21.57 per hour; and

(iii) Those *former* employees worked an average of 9.17 hours per day.

[4] If challenged, Defendants expressly reserve and do not waive their rights to supplement and/or amend their removal submissions to rely on additional data and/or claims for which no calculations have yet been proffered in calculating AIC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

***First Cause of Action: Unpaid Minimum Wages & Liquidated Damages***

33. In support of her First Cause of Action for unpaid minimum wages and liquidated damages, Plaintiff advances two different theories of liability. *First*, Plaintiff alleges that Defendants failed to pay Plaintiffs and other PCMs minimum wages due to unlawful policies and/or practices including alleged policies and practices of "rounding meal period start and end times," "automatically deducting at least thirty minutes per shift for meal periods, despite having actual and/or constructive knowledge that Plaintiff and other class members were subject to Defendants' control during purported meal periods," and "paying according to scheduled hours worked instead of actual time worked." (Ex. A, ¶¶ 22, 23, 37)

34. Second, Plaintiff alleges she and other PCMs were required to work off the clock. Specifically, Plaintiff alleges that she and other PCMs were "required … to be at their assigned workstations at the start of a scheduled shift, thereby forcing Class Members to gather work-related equipment and/or safety gear," "make any necessary adjustments to tools/equipment," "perform maintenance/cleaning tasks," "don work clothing/uniforms and/or protective equipment," and "complete other work tasks" "prior to their scheduled shift and/or prior to clocking in/signing in, thereby resulting in pre-shift off-the-clock work." Ex. A, ¶ 24. Plaintiff further alleges that she and other PCMs were required to "form a line to clock in for the start of their shifts each day, resulting in at least approximately two (2) to three (3) minutes of off-the-clock work each workday per each Class Member," "stand in line behind other employees to access DEFENDANTS' time-keeping system … before they could clock in … after completing a purported meal period," "spend time reinitiating DEFENDANTS' time-keeping system before they could clock in" after meal periods or at the end of shifts, "clock out for the end of their shifts but continue working due to the need to ... clean and/or organize their work stations/areas," "provide shift status updates and/or debriefings and/or participate in work meetings," "respond to work-related communications," and "perform other work tasks off-the-clock." Ex. A, ¶¶ 25, 26, 28.

Finally, Plaintiff alleges she and other PCMs were required to undergo certain orientations, questionnaires, and security and Covid-19 screenings, off the clock. (Ex. A, ¶¶ 31, 32, 36)

35. Based on Plaintiff's allegations regarding unpaid minimum wages resulting from various off the clock work caused by Defendants' "policy and/or practice," Defendants reasonably estimate that Plaintiff is alleging that PCMs work(ed) off-the-clock approximately 16.7 minutes, or .28 of an hour, per day. Consequently, utilizing an average minimum wage rate of $14.38 for the 4-Year SOL Period,[5] Defendants reasonably calculate the AIC on Plaintiff's unpaid minimum wages claim based on an off-the-clock theory to be at least $199,157.82, calculated as follows:

| Total Days Worked | | Average Minimum Wage Rate | | Hours Off-the-Clock | | AIC |
|---|---|---|---|---|---|---|
| 49,463 | x | $14.38 | x | .28 | = | **$199,157.82** |

**Liquidated Damages On Minimum Wages Claim**

36. On her First Cause of Action, Plaintiff expressly seeks "liquidated damages" in the amount of the alleged unpaid minimum wages owed to the PCMs. Exh. A ¶ 90. Liquidated damages may be awarded "in an amount equal to the wages unlawfully unpaid ..." Cal. Lab. Code §1194.2. Therefore, the AIC for the PCMs' putative class claim for liquidated damages is at least **$199,157.82**.

37. Accordingly, the *total* AIC for Plaintiff's First Cause of Action for unpaid minimum wages and liquidated damages is at least **$398,315.64** [$199,157.82 + $199,157.82]

***Second Cause of Action: Recovery of Unpaid Overtime/Double Time Premium Wages***

38. In support of her Second Cause of Action, Plaintiff alleges that

[5] The average minimum wage rate was calculated based on the following minimum wage rates: $13 in 2020, $14 in 2021, $15 in 2022 and $15.50 in 2023.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Defendants "failed and continue to fail to pay a premium wage rate for all hours worked beyond eight (8) hours in a day or beyond forty (40) hours in a week," "failed and continue to fail to pay … two times their regular rate of pay for time worked beyond twelve (12) hours per work day," "failed and continue to fail to pay … two times their regular rate of pay ... for time worked beyond eight (8) hours on the seventh consecutive day of work in a workweek," and "failed to incorporate all non-discretionary remuneration … into the regular rate of pay used to calculate owed overtime rate(s)…." Exh. A ¶ 40-42.

39. Given the Complaint's allegations, Defendants reasonably assume that the PCMs will seek overtime premium payments for each hour of overtime worked (between 8 and 12 hours per day) and double time premium payments for each hour of double time worked (over 12 hours per day) during the 4-Year SOL Period.

40. As set forth above, the PCMs worked an aggregate total of 29,213 8/12-Hour Workdays during the 4-Year SOL Period during which they worked an aggregate of 53,140.84 overtime hours (i.e, between 8 and 12 hours per day) and were paid an average base regular rate of $23.55. Accordingly, Defendants calculate the AIC on Plaintiffs' putative class claims for overtime premium wages for the 8/12-Hour Workdays, as follows: $23.55 (average base regular rate) x .5 (overtime premium) x 53,140.84 overtime hours = **$625,733.39**.

41. As set forth above, the PCMs worked an aggregate total of 3,046 12-Hour Workdays during the 4-Year SOL Period during which they worked an aggregate of 12,184 overtime hours (i.e, between 8 and 12 hours per day) and 2,888.29 double time hours (i.e., over 12 hours per day), and were paid an average base regular rate of $23.55. Accordingly, Defendants calculate the total AIC on Plaintiffs' putative class claims for overtime and double time *premium* wages for the 12-Hour Workdays to be at least **$211,483.71**, calculated as the sum of the following:

Overtime Premium Wages

12,184 overtime hours x $23.55 x 0.5 overtime premium = $143,466.60

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Double Time Premium Wages

2,888.20 double time hours x $23.55 x 1.0 double time premium = $68,017.11

42. Accordingly, Defendants reasonably estimate the total AIC on Plaintiff's putative class claims for unpaid overtime and double time premium wages to be at least **$837,517.10** ($625,733.39 + $211,483.71).

***Third Cause of Action: Failure to Provide Meal Periods or Compensation In Lieu Thereof***

43. In support of her Third Cause of Action for failure to provide meal periods or to pay meal period premiums, Plaintiff alleges that she and other PCMs "were consistently unable to take timely, off duty, thirty-minute, uninterrupted first and second meal periods, often being forced to take late meal periods, interrupted meal periods, and/or work through part or all of their meal periods..." Exh. A, ¶ 101. Moreover, Plaintiff alleges that the PCMs "did not receive a timely, uninterrupted second meal period when working shifts over ten (10) hours in a workday." *Id.* at ¶103.

44. Plaintiff alleges, ***without qualification***, that Defendants "failed to pay premiums for missed/otherwise unlawful meal periods in violation of California law." *Id.*, ¶ 105; *see also* ¶ 56 ("Defendants either failed to pay a meal period premium at all for each workday a lawful meal period was not provided and/or failed to pay the proper meal period premium for failure to incorporate all non-discretionary remuneration…."). She further alleges when she "worked shifts of more than ten (10) hours and/or twelve (12) hours in a shift, [she] was not provided with any version of a second meal period." *Id.*, ¶ 52. Finally, Plaintiff alleges that Defendants "implemented policies and/or practices that failed to relieve Class Members of all duties and Defendants' control during unpaid meal periods." *Id.* at ¶ 48. Plaintiff seeks to recover "one additional hour's pay at the employee's regular rate of compensation for each day a meal period was missed, late, interrupted, or otherwise unlawful." *Id.*, ¶ 106.

45. Given the Complaint's allegations, Defendants can reasonably assume

that each of the PCMs will claim to have not been provided nor paid premiums for *one* non-compliant meal break *each day* they worked a meal-break eligible shift (i.e., over five hours) during the 4-Year SOL Period.[6] Defendants' timekeeping and payroll data reflect that there were 47,804 5-Hour Workdays recorded during the 4-Year SOL Period. Therefore, for purposes of calculating the AIC for this removal, and based on the Complaint's allegations, Defendants *reasonably* assume that a one-hour premium payment is sought at the regular rate of pay for each 5-Hour Workday reflected in the timekeeping data for PCMs during the 4-Year SOL Period.

46. Therefore, based on Defendants' data, which shows the PCMs worked at least 47,804 5-Hour Workdays during the 4-Year SOL Period, and were paid an average base regular rate of $23.55 during that time period, Defendants calculate the AIC on Plaintiff's claim for meal break violations to be at least **$1,125,784.20**, as follows:

| Average Regular Rate of Pay | | Total Number of Putative Break Violations | | AIC |
|---|---|---|---|---|
| $23.55 | x | 47,804 | = | **$1,125,784.20** |

///

[6] *See*, *e.g.*, *Archuleta v. Avcorp Composite Fabrication, Inc.*, 2018 WL 6382049, at *4-5 (C.D. Cal. Dec. 6, 2018) (100% violation rate was permissible where complaint alleged a "consistent policy of violations" and "does not allege a more precise calculation" to dispute the violation rate proffered by the employer) (int. quot. omitted); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, *4 (C.D. Cal. May 21, 2015) (100% violation rate was properly utilized where complaint did "not contain any allegations that suggest a 100% violate rate is an impermissible assumption"); *Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1149-50 (C.D. Cal. 2010), *affirmed* 631 F.3d 1010 (9th Cir. 2011) (defendant properly utilized a 100% violation rate for missed meal and rest breaks when calculating the AIC for CAFA removal purposes where plaintiff had alleged that the class members "consistently" worked without meal breaks); *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *5 (E.D. Cal. Apr. 30, 2007) (100% rate appropriate where plaintiff "allege[d] no facts specific to the circumstances of her or [PCMs'] allegedly missed meal and/or rest periods" and alleged only that "they were 'not always provided lawful meal periods'").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

***Fourth Cause of Action: Failure to Provide Rest Periods or Compensation In Lieu Thereof***

47. With respect to her rest break claim, Plaintiff alleges, ***without qualification***, that Defendants "did not properly authorize and provide … legally compliant rest periods...." Exh. A, ¶ 57. More specifically, she alleges that Defendants "did not … have a compliant written rest period policy, nor did DEFENDANTS have any sort of compliant rest period policy in practice" and that PCMs "were frequently if not always unable to take compliant rest periods…." *Id.* at ¶¶ 59-60.

48. Plaintiff also alleges that Defendants "either failed to pay a rest period premium at all for each workday a proper rest period was not provided and/or failed to pay the proper rest period premium for failure to incorporate all non-discretionary remuneration…." *Id.*, ¶ 69. She seeks to recover "one hour of additional pay at the regular rate of compensation for each workday that a required rest period was not provided, pursuant to California Labor Code section 226.7." *Id.*, ¶ 115.

49. Given the Complaint's allegations, Defendants can reasonably assume that each of the PCMs who worked a rest break eligible shift (i.e., more than 3.5 hours in a workday) will claim to have not been authorized or permitted to take at least one rest break nor paid a rest break premium for the missed rest break on each 3.5-Hour Workday during the 4-Year SOL Period.[7]

50. Therefore, based on the data, which shows that the PCMs worked at least 49,038 3.5-Hour Workdays during the 4-Year SOL Period, and were paid an average base regular rate of $23.55 during that time period, Defendants reasonably calculate the AIC on Plaintiff's claim for rest break violations to be no less than **$1,154,844.90**, as follows:

[7] *See United Parcel Serv. Wage & Hour Cases*, 196 Cal.App.4th 57, 69 (2011) (holding that Cal. Lab. Code § 226.7 permits recovery of up to *two* break premium payments per work day – 1 for meal break violations + 1 for rest break violations).

| Average Regular Rate of Pay | | Total Number of Putative Break Violations | | AIC |
|---|---|---|---|---|
| $23.55 | x | 49,038 | = | **$1,154,844.90** |

***Fifth Cause of Action: Waiting Time Penalties***

51. In support of her Fifth Cause of Action for waiting time penalties under Cal. Lab. Code § 203 ("**Section 203**"), Plaintiff alleges that, "Defendants failed and continue to fail to timely pay final wages to Plaintiff and Class Members upon separation of employment..." Exh. A, ¶ 119. She further alleges, ***without qualification***, that "[u]nder Labor Code section 203, Plaintiff and the Class Members who are no longer employed by Defendants are entitled to recover waiting time penalties **of up to 30 days' pay**, plus attorney's fees and costs, in an amount to be proved at trial." *Id.*, ¶ 120 (emph. added).

52. Here, Plaintiff alleges that Defendants "failed and continue to fail to pay a premium wage rate for all hours worked beyond eight (8) hours in a day...." *Id.*, ¶ 40. Additionally, "the Complaint does not differentiate between any of the [PCMs] and the claim is premised on [Sacramento Logistics''] 'faulty pay policies.'" *Rapisura*, 2022 WL 1557001, at *5 (addressing allegations nearly identical to Plaintiff's allegations in this action). Thus, "it is reasonable for [D]efendants to assume that ***all*** [PCMs] who are former employees were owed waiting time penalties …." *Id.* (emph. added).[8] Similarly, Defendants "reasonably assume[s] a 30-day waiting time penalty

[8] Given the Complaint's allegations of "faulty pay practices" and multiple wage and hour violations, it is reasonable to assume that Plaintiff is alleging ***each*** terminated PCM incurred unpaid/underpaid time in *some* amount *at least once* during the relevant time period, and a *single* incident of underpayment to each terminated PCM is sufficient to trigger Section 203 penalties for the *entire* 30-day period for *all* PCMs. *See, e.g.*, *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *12 (N.D. Cal. June 14, 2013) (based on the allegations, it was reasonable to assume all terminated employees suffered one incident of underpayment and awarding penalties for 30-day period); *Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (Mendez, J.) (accepting assumption that terminated PCMs suffered at least one violation based on allegations of "uniform policy and practice," which resulted in amounts not paid at termination).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

for ***all*** [PCMs]" because Plaintiff alleges that she and **all** Class Members who are no longer employed by Defendants are "entitled" to "penalties of up to 30 days' pay" under Labor Code § 203. (Exh. B, ¶ 120). *See, e.g.*, *Rapisura*, 2022 WL 1557001, at *5 (finding ***identical*** allegations supported defendant's assumed 30-day waiting time penalty for all PCMs); *Marentes v. Key Energy Servs. Cal, Inc.*, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015) (Thurston, M.J.) (where "wages are alleged to have not been paid, the full thirty days may be used for each of the [PCMs]").[9]

53. As set forth above, 138 PCMs were terminated during the 3-Year SOL Period,[10] and those PCMs' average base hourly rate was $21.57 per hour, and their average overtime hourly rate was $32.35 ($21.57 x 1.5). Therefore, the average daily rate of pay for the 138 separated PCMs is approximately $210.41, calculated as follows: $172.56 for the first 8 hours ($21.57 average base regular rate x 8 hours) + $37.85 for the 1.17 overtime hours ($32.35 average overtime hourly rate x 1.17 overtime hours). Consequently, based on the foregoing reasonable assumptions, Defendants reasonably calculate the AIC on Plaintiff's claim for waiting time penalties for separated PCMs to be **$871,097.40** calculated, as follows:

138 separated PCMs x $210.41 average daily rate x 30 days = $871,097.40

**Sixth Cause of Action: Unreimbursed Business Expenses**

54. In support of her Sixth Cause of Action for failure to reimburse business expenses under Labor Code § 2802 ("**Section 2802**"), Plaintiff alleges that Defendants "shifted the costs of doing business onto PLAINTIFF and other Class Members requiring them to pay for business expenses, including but not limited to,

---

[9] *See also, e.g.*, *Altamirano*, 2013 WL 2950600, at *12 ("[A]s there is nothing in the complaint … to suggest that Defendants paid employees these unpaid wages at some point … awarding penalties for the entire 30 day period is reasonable."); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *4 (C.D. Cal. July 28, 2017) (assumed 30-day period was reasonable); *Calderon*, 2017 WL 2618094, at *6 (reasonable to assume 30-day period when five months elapsed between last day of work and filing complaint).

[10] A statutory claim for wages is governed by the three-year statute of limitations in Code of Civil Procedure section 338.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

uniforms/work clothing/work shoes/personal protective/safety gear and the use of Class Members' personal cell phones/mobile devices, internet and/or data usage for work-related purposes, including but not limited to, to receive and respond to work-related messages and/or phone calls." Exh. A ¶76

55. More specifically, Plaintiff alleges the PCMs "were not reimbursed for the business use of their personal vehicles … when they were required to drive around and/or between job sites," "were not reimbursed for the cost of purchasing and/or maintaining their own hand tools and/or equipment required to perform their assigned job duties and/or for the costs of purchasing and/or maintaining work uniforms/clothing/shoes and/or protective gear, and "were required to receive and respond to work-related calls and/or messages from supervisors and/or other Class Members regarding scheduling and/or other work tasks but were not reimbursed by Defendants at all and/or in full for these business expenses." Exh. A ¶¶ 77-79. Because Plaintiff does not qualify her expense reimbursements as having been incurred any less than each and every workday during the 4-Year SOL Period, Defendants reasonably estimate that the PCMs will claim to have incurred at least $40 for monthly cell phone expenses or $480 per year, $50 in annual expenses of purchasing tools and/or equipment, and $100 in annual expenses of purchasing and/or maintaining work uniforms and protective gear, for a total of $630 annually. Dividing that total by 250 workdays in a year (50 weeks x 5 days per week) yields an average of $2.52 per day worked of unreimbursed business expenses. Consequently, Defendants calculate the AIC on Plaintiff's putative class claim for expense reimbursements to be at least **$124,646.76** ($2.52 per workday x 49,038 workdays).

**Statutory Attorneys' Fees**

56. Plaintiff also seeks statutory attorneys' fees under various provisions of the California Labor Code in connection with the causes of action alleged in the Complaint. *See, e.g.*, Exh. A, ¶¶ 90, 97, 106, 115, 120, 127, 133 & Prayer for Relief at 29:16. Indeed, Plaintiff expressly seeks attorneys' fees in connection with her

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

waiting time penalties claim and generally seeks such an award of attorneys' fees on all of her claims.

57. In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Moreover, "a court ***must*** include **future** attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emph. added); *see also Chavez*, 888 F.3d at 414-15 ("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses ***all*** relief a court may grant on that complaint if the plaintiff is victorious." (emph. added)).

58. Where, as here, a common fund recovery is sought, the Ninth Circuit uses a benchmark rate of 25% of the total potential award as an estimate for attorneys' fees. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% … as a benchmark award for attorney fees."); *Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 457 (9th Cir. 2009) (finding 25% of total award, rather than 25% of amount actually collected by the class, "was proper, and in line with Ninth circuit precedent").[11] Thus, utilizing Defendants' calculation of the amount in

---

[11] *See also, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) ("'[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'"); *Hamilton v. Wal-Mart Stores Inc.*, 2017 WL 4355903, at *5-6 (C.D. Cal. Sept. 29, 2017) (CAFA wage and hour case using an estimated fee award of 25% of the plaintiff's damages in calculating the AIC); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017) (CAFA wage and hour case noting that "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."); *Fong v. Regis Corp.*,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

controversy on Plaintiff's claims for relief described above and the 25% benchmark for attorneys' fees used in the Ninth Circuit, Defendants conservatively calculate the amount in controversy on Plaintiff's statutory attorneys' fees claims to be at least **$1,128,051.50** [($398,315.64 + 837,517.10 + 1,125,784.20 + $1,154,844.90 + $871,097.40 + $124,646.76) x 25%].

**Summary of CAFA AIC**

59. Based on the foregoing, the amount in controversy on Plaintiff's putative class claims alleged in the Complaint is not less than **$5,640,257.50**, which exceeds the CAFA jurisdictional threshold.[12]

| **Cause of Action / Claim** | **AIC** |
|---|---|
| Unpaid Minimum Wages and Liquidated Damages (First Cause of Action) | $398,315.64 |
| Unpaid Overtime/Double Time Premiums (Second Cause of Action) | $837,517.10 |
| Meal Period Violations (Third Cause of Action) | $1,125,784.20 |
| Rest Period Violations (Fourth Cause of Action) | $1,154,844.90 |
| Waiting Time Penalties (Fifth Cause of Action) | $871,097.40 |
| Unreimbursed Business Expenses (Sixth Cause of Action) | $124,646.76 |
| Statutory Attorneys' Fees | $1,128,051.50 |
| **TOTAL AIC:** | **$5,640,257.50** |

---

2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages.").

[12] Defendants expressly reserve and do not waive their right to amend this Notice of Removal and/or offer evidence as to additional and/or different amounts in controversy on any or all of Plaintiff's causes of action alleged in the Complaint.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**NO CAFA EXCEPTIONS APPLY**

60. CAFA contains a number of exceptions to its grant of original jurisdiction, *see* 28 U.S.C. §§ 1332(d)(3)-(5), but none of these exceptions are applicable here.

61. The first is a discretionary exception based on the number of PCMs found in the state where the action was filed. *See* 28 U.S.C. § 1332(d)(3). However, the exception ***only*** applies where the "primary defendants are citizens of the State in which the action was originally filed." *See id.* Here, the action was originally filed in the Superior Court of the State of California and, as noted above, none of the Defendants are citizens of California. Thus, this exception does not apply.

62. Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of original jurisdiction based on the number of PCMs in the state in which the action was filed (including the so-called "local controversy exception"). However, these exceptions also apply ***only*** where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed." *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II), 1332(d)(4)(B). Given that this action was originally filed in California, and none of the Defendants are citizens of California, these exceptions also do not apply.

63. Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions applicable to actions where defendants are states, state officials, or governmental entities, or in which the putative class contains less than 100 members in the aggregate. *See* 28 U.S.C. § 1332(d)(5)(A)-(B). Given that none of the Defendants are a state, state official, or governmental entity, and the above-described data establishes that the putative class in fact *far exceeds* 100 members, these exceptions also do not apply.

**REMOVAL JURISDICTION – TRADITIONAL DIVERSITY JURISDICTION**

64. In addition to CAFA removal jurisdiction, Defendants aver that this Court also has original traditional diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), and it is one which may be removed to this Court, because (1) there is complete diversity of citizenship between Plaintiff and Defendants;

and (2) the amount-in-controversy exceeds $75,000.00, exclusive of interest and costs, as set forth below.

65. Sacramento Logistics' payroll, employment, and operational data for Plaintiff was used and analyzed to determine the traditional diversity jurisdiction AIC for purposes of this Notice of Removal.[13] Data for that four-year period can be summarized as follows:

(c) For the 4-Year SOL Period from February 16, 2020 through March 9, 2024:

(i) Plaintiff worked a total of 213 workdays;

(ii) Plaintiff's average base regular rate of pay was $17.67 per hour;

(iii) Plaintiff worked a total of 209 3.5-Hour Workdays;

(iv) Plaintiff worked a total of 208 5-Hour Workdays;

(v) Plaintiff worked a total of 153 8/12-Hour Workdays during which he worked an aggregate total of 345.85 hours in excess of eight per day

(vi) Plaintiff worked a total of 32 12-Hour Workdays during which he worked an aggregate total of:

a. 128 hours in excess of eight but less than 12 hours in a day; and

b. 27.34 hours in excess of 12 hours in a day.

(d) For 3-Year SOL Period from February 16, 2021 through March 9, 2024:

(i) Plaintiff was paid a final base regular rate of pay of $19.26; and

(ii) Plaintiff worked an average of 10.5 hours per day at the time of her termination.

---

[13] If challenged, Defendants expressly reserve and do not waive their rights to supplement and/or amend their removal submissions to rely on additional data and/or claims for which no calculations have yet been proffered in calculating the AIC.

66. **Failure to Pay Minimum Wages.** Based on Plaintiff's allegations of minimum wage violations, as detailed above, and Defendants' timekeeping and payroll data reflecting that Plaintiff worked a total of 213 days at an average minimum wage rate of $14.50 per hour, and reasonably estimating that Plaintiff is going to allege that he worked off-the-clock approximately 16.7 minutes, or .28 of an hour, per day, Defendants calculate the AIC on Plaintiff's claim for minimum wage violations to be approximately $857.62, calculated as follows:

| Total Days Worked | | Average Minimum Wage Rate | | Hours Off-the-Clock | | AIC |
|---|---|---|---|---|---|---|
| 213 | x | $14.50 | x | .28 | = | **$857.62** |

67. Doubling the AIC to account for Plaintiff's additional request for liquidated damages yields a total AIC on Plaintiff's First Cause of Action for minimum wage violations of **$1,715.24**.

68. **Failure to Pay Overtime and Double Time Premiums.** Based on Plaintiff's allegations of unpaid overtime and double time premiums, as detailed above, and Defendants' timekeeping and payroll data reflecting that Plaintiff worked a total of 345.85 overtime hours (i.e, between 8 and 12 hours per day) during his 8/12-Hour Workdays and was paid an average base regular rate of $17.67 per hour during the 4-Year SOL Period, Defendants calculate the AIC on Plaintiff's individual claim for overtime premium wages for the 8/12-Hour Workdays to be **$3,055.58**, calculated as follows: $17.67 (average base regular rate) x .5 (overtime premium) x 345.85 overtime hours = $3,055.58.

69. As set forth above, Plaintiff worked a total of 32 12-Hour Workdays during which he worked a total of 128 overtime hours (i.e, between 8 and 12 hours per day) and 27.34 double time hours (i.e., over 12 hours per day). Utilizing Plaintiff's average base regular rate of $17.67 per hour during the 4-Year SOL Period, Defendants calculate the AIC on Plaintiff's individual claim for overtime and double time premium

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

wage for the 12-Hour Workdays to be **$1,614.15**, calculated as the sum of the following:

Overtime Premium Wages

128 overtime hours x $17.67 x 0.5 overtime premium = $1,130.88

Double Time Premium Wages

27.35 double time hours x $17.67 x 1.0 double time premium = $483.27

70. Accordingly, the AIC on Plaintiff's individual claim for overtime and double time premium wages is estimated to be no less than **$4,669.73** ($3,055.58 + $1,614.15).

71. **Failure to Provide Meal Periods.** Based on Plaintiff's allegations of meal break violations, as detailed above, and Defendants' timekeeping and payroll data reflecting that Plaintiff worked a total of 208 5-Hour Workdays during the 4-Year SOL Period and was paid an average base regular rate of $17.67 per hour, and reasonably utilizing a 100% violation rate for the reasons discussed above, Defendants calculate the AIC on Plaintiff's individual claim for meal break violations to be **$3,675.36** (208 workdays x $17.67).

72. **Failure to Provide Rest Periods.** Based on Plaintiff's allegations of rest break violations, as detailed above, and Defendants' timekeeping and payroll data reflecting that Plaintiff worked a total of 209 3.5-Hour Workdays during the 4-Year SOL Period and was paid an average base regular rate of $17.67 per hour, and reasonably utilizing a 100% violation rate for the reasons discussed above, Defendants calculate the AIC on Plaintiff's individual claim for rest break violations to be **$3,693.03** (209 workdays x $17.67).

73. **Waiting Time Penalties.** As set forth above, Plaintiff's final base regular rate at termination was $19.26 per hour. Accordingly, Plaintiff's final overtime rate at termination was $28.89 ($19.26 x 1.5). Therefore, based on Plaintiff's average of 10.5 hours of work per day at termination, his average daily rate of pay at termination is approximately $226.30, calculated as follows: $154.08 for the first 8 hours ($19.26

final base hourly rate at termination x 8 hours) + $72.22 for the 2.5 overtime hours ($28.89 final overtime hourly rate at termination x 2.5 overtime hours). Consequently, based on the foregoing reasonable assumptions, Defendants reasonably calculate the AIC on Plaintiff's individual claim for waiting time penalties for separated PCMs to be **$6,789.00**, calculated as follows:

$226.30 final daily rate x 30 days = $6,789.00

74. **Expense Reimbursements.** As explained above, Defendants reasonably estimate that the Plaintiff will claim to have incurred $630 in annual reimbursable expenses. Dividing that total by 250 workdays in a year (50 weeks x 5 days per week) yields an average of $2.52 per day worked of unreimbursed business expenses. Because Plaintiff worked a total of 213 days during the 4-Year SOL Period, Defendants calculate the AIC on Plaintiff's individual claim for expense reimbursements to be at least **$536.76** ($2.52 per workday x 213 workdays).

75. Accordingly, the total AIC on Plaintiff's individual claims are reasonably estimated to be no less than **$21,079.12**.

76. **Statutory Attorneys' Fees.** Based on the experience of defense counsel, Defendants conservatively estimate that Plaintiff's counsel will spend (a) at least **100** hours litigating Plaintiff's *individual* claims on written discovery and related motions (35 hours), non-expert depositions (20 hours), non-discovery motion practice, including dispositive motions (40 hours), and expert witness discovery and depositions (5 hours); and (b) at least **50** additional hours prosecuting those claims at trial or arbitration (40 hours) and engaging in post-trial or post-arbitration motions (10 hours). Thus, **$75,000** of attorneys' fees for 150 hours (100+50) of conservatively estimated time for reasonably projected work to litigate Plaintiff's individual claims at a reasonable estimated average hourly rate of $500 per hour—exclusive of the lodestar *multiplier* that Plaintiff's counsel undoubtedly will seek as well—is a reasonable calculation of the estimated AIC for such recovery sought by Plaintiff on her individual claims.

77. **Summary of AIC on Plaintiff's Individual Claims.** Based on the foregoing, the AIC on Plaintiff's individual claims alleged in the Complaint is not less than **$96,079.12**, which exceeds the $75,000 traditional diversity jurisdiction threshold.[14]

| **Cause of Action / Claim** | **AIC** |
|---|---|
| Unpaid Minimum Wages and Liquidated Damages (First Cause of Action) | $1,715.24 |
| Unpaid Overtime/Double Time Premiums (Second Cause of Action) | $4,669.73 |
| Meal Period Violations (Third Cause of Action) | $3,675.36 |
| Rest Period Violations (Fourth Cause of Action) | $3,693.03 |
| Waiting Time Penalties (Fifth Cause of Action) | $6,789.00 |
| Unreimbursed Business Expenses (Sixth Cause of Action) | $536.76 |
| Statutory Attorneys' Fees | $75,000 |
| **TOTAL AIC:** | **$96,079.12** |

## REMOVAL JURISDICTION – FEDERAL QUESTION

78. Defendants also remove this action pursuant to this Court's original federal question subject matter jurisdiction.

79. Federal courts have original jurisdiction over cases founded on a claim or right "arising under the Constitution, laws, or treaties of the United States," regardless of citizenship or diversity. 28 U.S.C. §§ 1331, 1441(c). When federal question cases

[14] Defendants expressly reserve and do not waive their right to amend this Notice of Removal and/or offer evidence as to additional and/or different amounts in controversy on any or all of Plaintiff's causes of action alleged in the Complaint.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

are brought in state court, a defendant may remove them to the federal district court embracing the place where the state court action is pending. 28 U.S.C. § 1441(a).

80. A cause of action under federal law exists for purposes of original jurisdiction and removal if the plaintiff's "well-pleaded complaint" presents a federal issue. *See, e.g., Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9-10 (1983). Although the "well-pleaded complaint rule" generally allows a plaintiff to avoid federal jurisdiction by relying exclusively on state law, there is a well-recognized corollary to that rule: the complete preemption doctrine. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 386-87 (1987). "Under the complete preemption doctrine, the preemptive force of a federal statute converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint." *Ayala v. Destination Shuttle Servs. LLC*, 2013 WL 12092284, at *2 (C.D. Cal., Nov. 1, 2013).

81. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA"), is a federal statute that can have complete preemptive force. Section 301 grants federal district courts original jurisdiction over claims for violation of contracts between an employer and a union, regardless of the citizenship of the parties. 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees … may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."); *see also Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1149-50 (9th Cir. 1988); *Scott v. Machinists Automotive Trades Dist.*, 827 F.2d 589, 594 (9th Cir. 1987).

82. Accordingly, even where, as here, a plaintiff alleges only state law claims, a federal question exists – and removal is proper – where the plaintiff's state law claims are based on the terms of a collective bargaining agreement ("CBA") or where resolution of those claims depends on analysis of the terms of a CBA. *See, e.g., Associated Builders & Constrs. v. Local 302 IBEW*, 109 F.3d 1353, 1356 (9th Cir. 1997); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997, 999 (9th Cir. 1987).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

In such cases, "complete preemption" overrides the "well-pleaded complaint rule" and the state law claims are treated as claims "arising under" federal law for jurisdictional purposes. *See Holman v. Laulo–Rowe Agency*, 994 F. 2d 666, 668 (9th Cir. 1993).[15] Put another way, a civil complaint that raises claims preempted by Section 301 raises a federal question that can be removed to a federal court. *See Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987); *see also Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-62 (1968) (recognizing that Section 301 is a federal statute with complete preemptive force).

83. For purposes of complete preemption, and thus federal question jurisdiction, it does not matter that Plaintiff's claims purportedly arise out of state law. *See, e.g.*, *Burnside*, 491 F.3d at 1059 ("Once preempted, 'any claim purportedly based on [a] ... state law is considered, from its inception, a federal claim, and therefore arises under federal law.'"). Even if a right exists independently of a CBA under state law, when resolution of a state law claim is "substantially dependent on analysis of a collective-bargaining agreement," the claim is preempted by Section 301 of the LMRA. *See Paige v. Henry J. Kaiser, Co.*, 826 F.2d 857, 861 (9th Cir. 2001) ("Section 301 preempts claims founded directly on rights created by collective bargaining agreements, and also claims which are substantially dependent on analysis of a collective bargaining agreement."); *see also Hyles v. Mensing*, 849 F.2d 1213, 1215-16 (9th Cir. 1988) (same). Nor is it relevant that Plaintiff has pled her claims to omit any reference to federal law and/or the CBA applicable to her employment because "[m]ere omission of reference to Section 301 in the complaint does not preclude federal subject matter jurisdiction." *Fristoe v. Reynolds Afetals, Co.*, 615 F.2d 1209, 1212 (9th

[15] *See also Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005) ("In such circumstances, federal law displaces a plaintiff's state-law claim, no matter how carefully pleaded."); *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) ("As a result of this broad federal mandate, the Supreme Court has explained, the 'preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.'").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Cir. 1990).

84. At all relevant times, Sacramento Logistics has been and is now a Delaware limited liability company, with its headquarters and principal place of business in Keene, New Hampshire (*see* discussion *infra*), operating in commerce and in an industry affecting commerce within the meaning of Sections 2(2), (6), (7) and 301(a) of the LMRA. *See* 29 U.S.C. § 152(2), (6), (7) & § 185(a). At all times during her employment with Sacramento Logistics, Plaintiff was represented by a labor organization, General Teamsters Local #150 (the "Union"), and was employed pursuant to a CBA between Sacramento Logistics and the Union that covered the term of her employment with C&S. *See* Declaration of Brandon Driscoll ("**Driscoll Decl.**"), ¶ 4. Specifically, Sacramento Logistics and the Union entered into a CBA that applied to work performed by covered employees, including Plaintiff, from June 1, 2017 through May 31, 2022 ("**CBA 1**") (*Id.*, Exh. 1) and from June 1, 2022 through May 31, 2027 (the "**CBA 2**") (*Id.*, Exh. 2) (collectively, the "**CBAs**").[16]

85. The CBAs address covered employees' wages, hours, and working conditions, and contains provisions specifically addressing, *inter alia*, work hours, breaks, and overtime scheduling and pay. *See id.*, Exh. 1 (CBA 1), Sections 7, 8 and 9; Exh. 2 (CBA 2), Sections 7, 8, and 9. For example:

(a) Section 7.1 of the CBAs defines the workweek and a day of work including hours worked and meal and rest breaks provided. *Id.*, Exh.

[16] The "general rule" that "a district court deciding whether to exercise removal jurisdiction must consider only the allegations in the complaint … is overridden by the artful pleading doctrine in complete preemption cases. Because complete preemption often applies to complaints drawn to evade federal jurisdiction, a federal court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims." *Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego*, 443 F.3d at 681. Thus, the 2022 CBA is properly presented to the Court in support of C&S' removal. *See, e.g.*, *Truex v. Garrett Freightlines, Inc.*, 782 F.2d 1347, 1349-50 (9th Cir. 1985) (court may look to facts outside complaint to determine whether an "artfully pleaded" claim is in reality a Section 301 claim for breach of the collective bargaining agreement).

1, p. 6; Exh. 2, p. 5.

(b) Sections 7.1 and 8 of the CBAs specify when and at what rate overtime pay will be paid to covered employees. *Id.*, Exh. 1, pp. 6-7, Exh. 2, p. 6.

(c) Section 9, and Appendix A of the CBAs sets forth the bargained for regular rates of pay for covered employees. *Id.,* Exh. 1, pp. 9, 24-26; Exh. 2, pp. 7, 26.

(d) Section 11 of the 2022 CBA provides for Vacation policies, and Section 11.5 of the 2022 CBA specifically provides the vacation pay policies for employee terminations. *Id.*, Exh. 1, pp. 9-10; Exh. 2, p. 11.

(e) Section 12 of the 2022 CBA provides the sick leave policy, and provides the policies for unused sick leave, including the policies by which the PCMs may cash out their sick leave. *Id.*, Exh. 11-12, ; Exh. 2, pp. 11-12.

(f) Section 18 of the 2022 CBA provides for a grievance procedure for disputes and controversies arising out of the 2022 CBA, which culminates in final and binding arbitration. *See id.*, Exh. 1, pp. 17-18; Exh. 2, pp. 19-20.

86. Plaintiff's Complaint alleges that Sacramento Logistics violated numerous provisions of the California Labor Code as to herself and the PCMs she seeks to represent by failing to, *inter alia*, pay minimum wages, pay overtime wages, and provide meal and rest periods or to pay premium pay when no meal and rest periods were provided,. *See generally* Exh. A. While Plaintiff purports to assert these claims under California law without reference to either of the CBAs, her overtime, break, and minimum wage claims directly implicate the above-referenced sections of the CBAs.

Consequently, interpretation of the CBAs is essential to the Court's resolution of Plaintiff's claims. Therefore, Plaintiff's claims that arise under or are dependent on an analysis of either or both of the CBAs are completely preempted by the LMRA. *See, e.g.*, *Lingle v. Norg Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) (application of state law is preempted by Section 301 where such application requires the interpretation of a collective bargaining agreement).

87. Furthermore, the resolution procedure for addressing any grievance raised by Plaintiff during her employment was at all times set forth in and governed by Section 18 of the 2022 CBAs (Grievance Procedures). Section 18.2 of the CBAs requires union members like Plaintiff to proceed through a three-step grievance process and if that process fails to address the grievance, it requires that any grievances not resolved through the procedures set forth in that Section must be submitted to "final and binding" arbitration. However, Plaintiff failed to utilize the 2022 CBA's grievance procedure at any point prior to initiating the State Court Action. *See, e.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220-21 (1985) (holding that complaint "should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement … or dismissed as preempted by § 301").

88. For all of the foregoing reasons, determination of Defendants' alleged liability on Plaintiff's claims in this action will require an interpretation and/or application of the terms and provisions of the CBAs that governed Plaintiff's employment with Sacramento Logistics—and thus, Plaintiff's Complaint falls within the preemptive scope of Section 301 of the LMRA and removal is proper on the basis of federal question jurisdiction. *See, e.g.*, *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (a suit that involves an employer's alleged failure to comport with its contractually established duties pursuant to a CBA is preempted). To the extent Plaintiff asserts any claims that are separate from and independent of those arising under Section 301 of the LMRA, they are removable under 28 U.S.C. § 1441(c) and pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367,

assuming *arguendo* that they are not otherwise removable under CAFA and/or traditional diversity original jurisdiction.

**VENUE**

89. Venue lies in this Court because Plaintiff's action was filed in the Superior Court of California in and for the County of Sacramento and is thus pending in this district and division. Accordingly, Defendants are entitled to remove this action to the United States District Court for the Eastern District of California. *See* 28 U.S.C. § 1441(a).

**TIMELINESS OF REMOVAL**

90. This removal is timely under 28 U.S.C. § 1446(b) and/or under CAFA, and this case has not previously been removed to federal court. 28 U.S.C. § 1446(b)(1), (2)(A).

91. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) which provides that such Notices "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based."[17] Additionally, the Ninth Circuit has held and clarified that removal is timely under CAFA at any time so long as (1) the face of the complaint does not plainly allege all elements needed for CAFA jurisdiction (including the amount in controversy), and (2) plaintiffs have not served some other "paper" that concedes all elements needed for CAFA jurisdiction. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125-26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of §

[17] As noted above, service of process was made on February 26, 2024.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1446(b)(1) or (b)(3) begins to run against the defendant").[18]

92. Here, the Complaint does not plainly allege all elements needed for removal under CAFA, and Plaintiff has not served some other "paper" that concedes all elements needed for such removal. Therefore, even if this removal were not being made within 30 days of service or purported service of the Summons or Complaint on Defendants, this removal would still be timely under CAFA pursuant to 28 U.S.C. § 1446(b)(3) and Ninth Circuit authority.

**RESERVATION OF RIGHTS**

93. Defendants expressly reserve and do not waive their right to amend this Notice of Removal and/or offer evidence and/or further averments supporting the Court's jurisdiction over this action under CAFA or traditional diversity jurisdiction or otherwise, including without limitation as to additional and/or different AIC calculations on any or all of Plaintiff's causes of action alleged in the Complaint, and as to federal question jurisdiction. Additionally, Defendants assume that the proposed class is as defined by Plaintiff in the Complaint for purposes of this Notice of Removal only, but expressly reserve and do not waive their position that the proposed class definition is improper and/or cannot be certified.

94. In addition, nothing in this Notice of Removal is intended to be or should be construed as any type of express or implied admission by Defendants of any fact, of the validity or merits of any of Plaintiff's claims, causes of action, or allegations, or of any liability for the same, all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of Defendants' rights, claims, remedies, and

[18] *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (reaffirming *Roth*) ("We also recently held in *Roth v. CHA Hollywood Med. Ctr., L.P.*, that the two 30-day periods are not the exclusive periods for removal…. In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time."); *Taylor v. Cox Commc'ns California, LLC*, 673 F. App'x 734, 735 (9th Cir. 2016) ("We also hold that Defendants' second Notice of Removal was timely. 'A CAFA case may be removed [by a defendant] at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered.'").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

defenses in connection with this action, all of which are hereby fully and expressly reserved, including without limitation to compel individual arbitration of Plaintiff's and/or any of the PCMs' individual claims.

**NOTICE TO PLAINTIFF AND THE STATE COURT**

95. Contemporaneously with the filing of this Notice of Removal in this Court, written notice of such filing will be served on Plaintiff's counsel of record as reflected in the attached Proof of Service. *See* 28 U.S.C. § 1446(d). A copy of this Notice of Removal will also be filed with the Clerk of the Superior Court of the State of California in and for the County of Sacramento. *See id.*

**WHEREFORE**, Defendants respectfully request that the above-captioned action now pending in the State Court be removed to this United States District Court.

Dated: March 27, 2024

**BAKER & HOSTETLER LLP**

By: */s/ Sylvia J. Kim*
Matthew C. Kane
Sylvia J. Kim
Amy E. Beverlin
Kerri H. Sakaue

Attorneys for Defendant SACRAMENTO LOGISTICS LLC and *Specially Appearing* Defendants C&S LOGISTICS OF SACRAMENTO/TRACY LLC and C&S WHOLESALE GROCERS, LLC

EXHIBIT A

Filed
Superior Court of California,
Sacramento
02/16/2024
bloxsov
By ____________, Deputy
24CV002889

JAMIE K. SERB, ESQ. (SBN 289601)
jamie@crosnerlegal.com
BRANDON BROUILLETTE, ESQ. (SBN 273156)
bbrouillette@crosnerlegal.com
ZACHARY M. CROSNER, ESQ. (SBN 272295)
zach@crosnerlegal.com
**CROSNER LEGAL, PC**
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff TENIAH TERCERO,
As an individual and on behalf of all other similarly situated Class Members

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SACRAMENTO**

TENIAH TERCERO, as an individual and on behalf of all other similarly situated Class Members,

Plaintiff,

v.

SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company; C&S LOGISTICS OF SACRAMENTO/TRACY LLC, a Delaware Limited Liability Company; C&S WHOLESALE GROCERS, LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive,

Defendants.

Case No.:

**CLASS ACTION COMPLAINT FOR:**

1. **Recovery of Unpaid Minimum Wages and Liquidated Damages**
2. **Recovery of Unpaid Overtime Wages**
3. **Failure to Provide Meal Periods or Compensation in Lieu Thereof**
4. **Failure to Provide Rest Periods or Compensation in Lieu Thereof**
5. **Failure to Timely Pay All Wages Due Upon Separation of Employment**
6. **Failure to Reimburse Business Expenses** ***and***
7. **Unfair Competition**

**DEMAND FOR JURY TRIAL**

BY FAX

EXHIBIT A

EXHIBIT A

Plaintiff, TENIAH TERCERO, ("PLAINTIFF"), as an individual and on behalf of all other similarly situated Class Members (as defined below), hereby files this Complaint against Defendants SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company; C&S LOGISTICS OF SACRAMENTO/TRACY LLC, a Delaware Limited Liability Company; C&S WHOLESALE GROCERS, LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive, (collectively referred to herein as "DEFENDANTS"). PLAINTIFF is informed and believes and thereon alleges as follows:

**JURISDICTION AND VENUE**

1. This court possesses original subject matter jurisdiction over this matter. Venue is proper in the County of Sacramento pursuant to California Code of Civil Procedure section 395.5 because DEFENDANTS transact business within this judicial district, DEFENDANTS employed PLAINTIFF to work in this judicial district and some of the acts, omissions, and conduct alleged by PLAINTIFF herein occurred in this this judicial district. Venue is also proper pursuant to section 393 of the California Code of Civil Procedure because the cause, or some part of the cause, arose in the County of Sacramento.

**THE PARTIES**

2. PLAINTIFF is, and at all relevant times, was an individual domiciled in the State of California and a citizen of the State of California.

3. PLAINTIFF is a former employee of DEFENDANTS. PLAINTIFF worked for DEFENDANTS as a non-exempt employee with a job title(s) of selector and/or receiving clerk and/or a similar title(s) and/or job position(s) from in or around July 2021 through in or around August 8, 2022. PLAINTIFF worked for DEFENDANTS at DEFENDANTS' Sacramento, California location(s). PLAINTIFF regularly worked at least eight (8) to fifteen (15) hours per day.

4. Defendant SACRAMENTO LOGISTICS LLC is a Delaware Limited Liability Company that, at all relevant times, was authorized to do business within the State of California and is doing business in the State of California.

5. Defendant C&S LOGISTICS OF SACRAMENTO/TRACY LLC is a Delaware Limited Liability Company that, at all relevant times, was authorized to do business within the State

EXHIBIT A

EXHIBIT A

of California and is doing business in the State of California.

6. Defendant C&S WHOLESALE GROCERS, LLC is a Delaware Limited Liability Company that, at all relevant times, was authorized to do business within the State of California and is doing business in the State of California.

7. DEFENDANTS own, operate, manage and/or staff its employees to work at the warehouse distribution centers, manufacturing and/or processing centers, warehouses, facilities and/or other location(s) in California, including but not limited to the warehouse distribution centers, manufacturing and/or processing centers, warehouses, facilities in Sacramento, California. DEFENDANTS, through its various warehouse distribution centers, manufacturing and/or processing centers, warehouses, facilities and/or other locations, serve the grocery supply and/or warehousing and/or logistics industry.

8. The true names and capacities of the DOE Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to PLAINTIFF, who therefore sues each such Defendant by said fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. PLAINTIFF will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

9. PLAINTIFF is further informed and believes that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, joint employer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this complaint. PLAINTIFF is further informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

EXHIBIT A

EXHIBIT A

**JOINT LIABILITY**

10. Under California law, the definition of the terms "to employ" are broadly construed under the applicable IWC Wage Order(s) to have three alternative definitions, including: (1) to exercise control over the wages, hours or working conditions; (2) to suffer of permit to work; or (3) to engage, thereby creating a common law employment relationship. See, *Martinez v. Combs*, 49 Cal.4th 35, 64 (2010). One reason that the IWC defined "employer" in terms of exercising control was to reach situations in which multiple entities control different aspects of the employment relationship. Supervision of the work, in the specific sense of exercising control over how services are properly performed, is properly viewed as one of the "working conditions" mentioned in the wage order. *Id.* at 76. A joint employer relationship exists, for example, when one entity (such as a temporary employment agency) hires and pays a worker, and the other entity supervises the work. *Id.* Moreover, the California Court of Appeal recently broadened the test for joint employment in California, applying a less stringent standard to what constitutes sufficient control by a business over its vendor's employees' wages and working conditions to render that business liable as a joint employer. See, *Medina v. Equilon Enterprises, LLC*, 68 Cal. App. 5th 868 (2021); "[i]f the putative joint employer instead exercises enough control over the intermediary entity to *indirectly* dictate the wages, hours, or working conditions of the employee, that is a sufficient showing of joint employment," *Id.* at 875 [emphasis added].

11. During PLAINTIFF's employment by DEFENDANTS, PLAINTIFF and the Class Members (defined below) were jointly employed by DEFENDANTS for purposes of the Wage Orders, under the alternative definitions of "to employ" adopted by the California Supreme Court in *Martinez*, supra. As discussed below, these DEFENDANTS (1) exercised control over wages, hours and working conditions of PLAINTIFF and the Class Members; (2) suffered or permitted PLAINTIFF and Class Members to work for them; and (3) engaged PLAINTIFF and Class Members to work for them.

12. PLAINTIFF is informed and believes, and thereon alleges that at all relevant times DEFENDANTS operated as a single integrated enterprise with common ownership and centralized human resources. As a result, DEFENDANTS utilized the same unlawful policies and practices

EXHIBIT A

EXHIBIT A

across all of their locations/facilities and subjected all of the Class Members to these same policies and practices regardless of the location(s) where they worked. Among other things, PLAINTIFF is informed and believes that: (1) there is common ownership in, and financial control, in DEFENDANTS' companies, (2) DEFENDANTS utilize common management, who have control over the day-to-day operations and employment matters, including the power to hire and fire, set schedules, issue employee policies, and determine rates of compensation across its locations in California; (3) DEFENDANTS utilize the same policies and procedures for all California employees, including issuing the same employee handbooks and other form agreements; (4) DEFENDANTS use at least some of the same Human Resources personnel and attorneys to oversee employment matters; and, (6) DEFENDANTS share employees.

13. PLAINTIFF is informed and believes, and thereon alleges that at all times relevant to this Complaint, DEFENDANTS were the joint employers of PLAINTIFF and the Class Members upon whose behalf PLAINTIFF brings these allegations and causes of action, in that DEFENDANTS, exercised sufficient control over PLAINTIFF and the Class Members' wages, hours and working conditions, and/or suffered or permitted PLAINTIFF and the Class Members to work so as to be considered the joint employers of PLAINTIFF and the Class Members. For example, based on information and belief, DEFENDANTS, and each of them, maintain the same principal place of business and/or agent for service of process as provided to the California Secretary of State and/or maintain the same entity headquarters and/or share some of the same attorneys and/or human resources personnel to oversee employment-related matters.

14. Upon information and belief, PLAINTIFF alleges that DEFENDANTS created a uniform set of policies, practices and/or procedures concerning, inter alia, hourly and overtime pay, time-keeping practices, meal and rest periods, reimbursement of business expenses and other working conditions that were distributed to, and/or applied to PLAINTIFF and the Class Members, and further that DEFENDANTS uniformly compensated and controlled the wages of PLAINTIFF and the Class Members in a uniform manner. DEFENDANTS collectively represented to PLAINTIFF and the Class Members that each was an "at-will" employee of DEFENDANTS, and that DEFENDANTS collectively retained the right to terminate PLAINTIFF's and Class Members'

EXHIBIT A

EXHIBIT A

employment with or without cause. Upon information and belief, DEFENDANTS further collectively represented to PLAINTIFF and Class Members in writing the details of their compensation, and the manner in which they were to take meal and rest periods, the procedures required by DEFENDANTS collectively for recordation of hours worked and the policies applicable to PLAINTIFF and Class Members by which DEFENDANTS collectively would evaluate the wage rates of PLAINTIFF and Class Members.

15. Thus, DEFENDANTS collectively exercised the right to control the wages, hours and working conditions of PLAINTIFF and Class Members. As such, DEFENDANTS collectively held the right to control virtually every aspect of PLAINTIFF's and the Class Members' employment, including the instrumentality that resulted in the illegal conduct for which PLAINTIFF seeks relief in this Complaint.

16. PLAINTIFF is informed and believes that DEFENDANTS exercised the same control over, applied the same policies and practices, and engaged in the same acts and omissions with regard to the other Class Members.

## CLASS ALLEGATIONS

17. PLAINTIFF brings this action on behalf of PLAINTIFF, and all others similarly situated as a class action pursuant to Code of Civil Procedure section 382. The class PLAINTIFF seeks to represent are defined as follows and referred to as the "Class" or "Class Members":

> All current and former non-exempt employees that worked either directly or via a staffing agency for any one or more of the DEFENDANTS at any location in California at any time within the four years prior to the filing of the initial Complaint ("Class Period").

a. Numerosity. While the exact number of Class Members is unknown to PLAINTIFF at this time, the Class is so numerous that the individual joinder of all members is impractical under the circumstances of this case. PLAINTIFF is informed and believes the Class consists of at least 100 individuals.

b. Common Questions of Law and Fact. This lawsuit is suitable for class treatment because common questions of law and fact predominate over individual issues.

EXHIBIT A

EXHIBIT A

Common questions include, but are not limited to, the following: (1) whether DEFENDANTS understated hours worked and failed to pay all amounts due to PLAINTIFF and the Class Members for wages earned, including minimum and overtime wages, under California law; (2) whether DEFENDANTS provided PLAINTIFF and the Class Members with all meal periods or premium payments in lieu thereof in compliance with California law; (3) whether DEFENDANTS provided PLAINTIFF and the Class Members with all rest periods or premium payments in lieu thereof, in compliance with California law; (4) whether DEFENDANTS timely paid PLAINTIFF and the Class Members all wages due upon separation of employment; (5) whether DEFENDANTS failed to reimburse PLAINTIFF and the Class Members for all business expenses; and (6) whether DEFENDANTS violated California Business and Professions Code sections 17200, *et seq*.

c. Ascertainable Class. The proposed Class is ascertainable as members can be identified and located using information in DEFENDANTS' business, payroll and personnel records.

d. Typicality. PLAINTIFF's claims are typical of the claims of the Class Members. PLAINTIFF suffered a similar injury as members of the Class as a result of DEFENDANTS' common practices regarding, *inter-alia*, failure to calculate and pay all owed minimum and overtime wages, failure to provide proper meal periods and rest periods or premium compensation in lieu thereof, failure to reimburse business expenses, and failure to timely pay all wages due upon separation of employment.

e. Adequacy. PLAINTIFF will fairly and adequately protect the interests of the Class Members. PLAINTIFF has no interests adverse to the interests of the other Class Members. Counsel who represent PLAINTIFF are competent and experienced in litigating similar class action cases and are California lawyers in good standing. Counsel for PLAINTIFF have the experience and resources to

EXHIBIT A

EXHIBIT A

vigorously prosecute this case.

f. Superiority. A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impractical. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments. Finally, the alternative of filing a claim with the California Labor Commissioner is not superior, given the lack of discovery in such proceedings, the fact that there are fewer available remedies, and the losing party has the right to a trial de novo in the Superior Court.

**FACTUAL AND LEGAL ALLEGATIONS**

18. During the relevant period, PLAINTIFF, and each of the Class Members, worked for DEFENDANTS in the State of California. At all times referenced herein, DEFENDANTS exercised control over PLAINTIFF and Class Members, and suffered and/or permitted them to work.

19. PLAINTIFF is a former employee of DEFENDANTS. PLAINTIFF worked for DEFENDANTS as a non-exempt employee with a job title(s) of selector and/or receiving clerk and/or a similar title(s) and/or job position(s) from in or around July 2021 through in or around August 8, 2022. PLAINTIFF worked for DEFENDANTS at DEFENDANTS' Sacramento, California location(s). PLAINTIFF regularly worked at least eight (8) to fifteen (15) hours per day.

20. At all relevant times, PLAINTIFF was a non-exempt employee that was paid on an

EXHIBIT A

EXHIBIT A

hourly basis for time counted by DEFENDANTS as hours worked. Based on information and belief, PLAINTIFF and other Class Members were also compensated with non-discretionary bonuses/incentive pay (e.g., non-discretionary productivity bonuses) and/or multiple base rates of pay and/or shift differential pay and/or other non-discretionary compensation.

21. **Unpaid Minimum and Overtime Wages**. DEFENDANTS failed to compensate PLAINTIFF and Class Members for all hours worked, resulting in the underpayment of minimum and overtime wages. DEFENDANTS failed to compensate PLAINTIFF and Class Members for all hours worked by virtue of, DEFENDANTS' automatic deduction and time rounding policies, and failure to relieve employees of all duties/employer control during unpaid meal periods or otherwise unlawful practices for missed or improper meal periods, as explained below.

22. Based on information and belief, DEFENDANTS implemented a policy and/or practice of rounding meal period start and end times and/or automatically deducting at least thirty minutes per shift for meal periods, despite having actual and/or constructive knowledge that PLAINTIFF and other Class Members were subject to DEFENDANTS' control during purported meal periods and/or were otherwise not afforded lawful meal periods, depriving PLAINTIFF and Class Members of all wages owed.

23. Based on information and belief, Class Members were not paid for all hours worked due to DEFENDANTS' policy and/or practice of paying according to scheduled hours worked instead of actual time worked, and/or mandated off-the clock work policies and/or practices.

24. For example, based on information and belief, DEFENDANTS required Class Members to be at their assigned workstations at the start of a scheduled shift, thereby forcing Class Members to gather work-related equipment and/or safety gear, make any necessary adjustments to tools/equipment and/or perform maintenance/cleaning tasks, don work clothing/uniforms and/or protective equipment, and/or complete other work tasks prior to their scheduled shift and/or prior to clocking in/signing in, thereby resulting in pre-shift off-the-clock work.

25. Based on information and belief, at times, Class Members were required to stand in line behind other employees to access DEFENDANTS' time-keeping system and/or were required to spend time reinitiating DEFENDANTS' time-keeping system before they could clock in for the

EXHIBIT A

EXHIBIT A

start of their shifts and/or after completing a purported meal period.

26. For example, PLAINTIFF and other Class Members were required to form a line to clock in for the start of their shifts each day, resulting in at least approximately two (2) to three (3) minutes of off-the-clock work each workday per each Class Member and the underpayment of wages owed to PLAINTIFF and other Class Members.

27. Based on information and belief, Class Members were required to complete other off-the-clock work tasks after clocking out for the end of their shifts and/or during uncompensated meal periods, resulting in off-the-clock work and the underpayment of minimum and overtime wages owed to Class Members.

28. For example, based on information and belief, DEFENDANTS required Class Members to clock out for the end of their shifts but to continue working due to the need to return/maintain tools, clean and/or organize their work stations/areas, provide shift status updates and/or debriefings and/or participate in work meetings, respond to work-related communications and/or perform other work tasks off-the-clock, resulting in the underpayment of minimum wages and overtime wages owed to Class Members.

29. Based on information and belief, DEFENDANTS did not compensate Class Members for all time spent donning and doffing personal protective equipment, safety equipment and/or uniforms/work clothing (e.g., gloves, goggles/safety glasses, hats/bump caps/safety helmets and/or face masks) during meal periods, before the start of a scheduled shift, and after completing a scheduled shift, resulting in DEFENDANTS' failure to pay Class Members for all work time and the underpayment of minimum wages and overtime wages owed to Class Members.

30. Based on information and belief, at times, DEFENDANTS' electronic employee time-keeping system/app malfunctioned such that Class Members were required to either reinitiate and/or otherwise troubleshoot the system prior to being able to clock in and/or were unable to clock in at all for the start of their shifts and/or clock back in from meal periods, resulting in off-the-clock work and the underpayment of wages owed to Class Members. Based on information and belief, Class Members experienced the same issues when clocking out for shifts and/or back in for meal periods. This time spent under DEFENDANTS' control was not recorded and not compensated and

EXHIBIT A

EXHIBIT A

resulted in unpaid minimum wages owed to Class Members.

31. Based on information and belief, Class Members were required to undergo security screenings and/or other mandated screenings before and/or after a scheduled shift and/or before or after clocking in/out for work, resulting in pre-shift and/or post-shift off-the-clock work.

32. Based on information and belief, DEFENDANTS required Class Members to undergo COVID-19 temperature screenings and/or complete questionnaires prior to beginning their scheduled shift and/or prior to clocking/signing in, thereby, resulting in pre-shift off-the-clock work.

33. Based on information and belief, Class Members were also pressured to complete at least some additional work tasks off-the-clock in order to meet DEFENDANTS' goals and expectations.

34. For example, based on information and belief, Class Members were required to complete off-the-clock work outside of scheduled shifts due to including but not limited to, work-related phone calls and/or messages they received to their phones and/or mobile devices and were required to respond to, including but not limited to, communications from supervisors regarding scheduling and/or other work tasks, resulting in the underpayment of wages owed to Class Members.

35. Based on information and belief, DEFENDANTS failed to pay Class Members the applicable minimum wage for the county and/or city within which the Class Member worked in California.

36. Based on information and belief, DEFENDANTS failed to pay Class Members for time they were required to spend completing orientation, policy questionnaires, and/or time spent completing the onboarding process including but not limited to reviewing various documents and policies provided by DEFEDANTS. Based on information and belief, this work time was completed off-the-clock and was not compensated.

37. Based on further information and belief, DEFENDANTS implemented a time-rounding system that as applied systematically deprived PLAINTIFF and other Class Members of compensable time because the time-rounding system implemented by DEFENDANTS would almost always, if not always, result in understating actual compensable work time.

38. DEFENDANTS' failure to pay for all time worked by virtue of its time rounding,

EXHIBIT A

EXHIBIT A

auto-deduction policies and practices for unlawful meal periods, failure to provide lawful meal periods, and/or other off-the-clock work practices and policies, resulted in the underpayment of minimum wages owed to PLAINTIFF and Class Members as well as unpaid overtime wages for those Class Members who worked more than eight (8) hours in a day and/or more than forty (40) hours in a week.

39. Based on information and belief, DEFENDANTS had actual and/or constructive knowledge that its time rounding policies/practices, auto-deduction policies and practices, failure to provide lawful meal periods (as described below) and/or other off-the-clock work resulted in the underpayment of minimum wages owed to PLAINTIFF and other Class Members, in violation of California's minimum and overtime wage laws.

40. Based on information and belief, DEFENDANTS failed and continue to fail to pay a premium wage rate for all hours worked beyond eight (8) hours in a day or beyond forty (40) hours in a week.

41. Based on information and belief, DEFENDANTS failed and continue to fail to pay Class Members two times their regular rate of pay for time worked beyond twelve (12) hours per workday and for time worked beyond eight (8) hours on the seventh consecutive day of work in a work week, in violation of California's overtime laws.

42. Based on information and belief, DEFENDANTS failed to incorporate all non-discretionary remuneration, including but not limited to, shift differential pay, bonus pay, and/or other non-discretionary pay into the regular rate of pay used to calculate the owed overtime rate(s), resulting in the miscalculation and underpayment of overtime wages owed to PLAINTIFF and other Class Members.

43. **Meal Period Violations**. PLAINTIFF and other Class Members consistently worked shifts of at least five and one-half hours or more, entitling them to at least one meal period. However, PLAINTIFF and other Class Members would not receive legally compliant thirty (30) minute first and second meal periods. Based on information and belief, Class Members were consistently unable to take timely, off duty, thirty-minute, uninterrupted meal periods, often being forced to take late meal periods, interrupted meal periods, and/or work through part or all their meal periods due to

EXHIBIT A

EXHIBIT A

understaffing, the nature and constraints of their job duties and/or commentary from supervisors pressuring them to take non-compliant meal periods or skip meal periods completely.

44. For example, based on information and belief, Class Members were forced to take late meal periods in order to complete assigned job duties.

45. Based on information and belief, Class Members were at times interrupted during purported meal periods and/or had meal periods cut short and/or restricted to DEFENDANTS' premises due to the need to continue assigned job duties. For example, PLAINTIFF was frequently required to take interrupted meal periods and/or work through her meal periods completely and/or take late meal periods (i.e. after working more than five (5) hours) due to the need to complete assigned job duties.

46. For example, at times, PLAINTIFF was required to clock out for meal periods but to continue working and/or was interrupted during unpaid meal periods to assist with completing paperwork pertaining to DEFENDANTS' shipping and/or receiving orders and/or completing other off-the-clock work tasks during unpaid meal periods, resulting in denied meal periods as well as DEFENDANTS' failure to compensate PLAINTIFF for all hours worked and the underpayment of wages owed to PLAINTIFF.

47. Based on information and belief, other Class Members were consistently suffered and permitted to take meal periods past the fifth hour of work and/or had their meal periods interrupted, cut short, restricted to DEFENDANTS' premises and/or otherwise on duty due to commentary from supervisors, understaffing, the nature and constraints of their job duties, and/or the need to meet DEFENDANTS' goals and expectations.

48. Based on information and belief, DEFENDANTS implemented policies and/or practices that failed to relieve Class Members of all duties and DEFENDANTS' control during unpaid meal periods.

49. Based on information and belief, DEFENDANTS required Class Members to complete off-the-clock work prior to their scheduled shift time which DEFENDANTS failed to take into account when scheduling meal periods for Class Members. Based on information and belief, meal periods were late, in part due to unaccounted pre-shift off-the-clock work.

EXHIBIT A

EXHIBIT A

50. Based on information and belief, despite DEFENDANTS' failure to provide lawful meal periods, DEFENDANTS implemented a policy and/or practice of rounding the start and end times of PLAINTIFF's and other Class Members' meal periods and/or automatically deducting at least thirty minutes per shift for missed and/or otherwise unlawful meal periods despite having actual and/or constructive knowledge that PLAINTIFF and other Class Members did not receive lawful meal periods.

51. Moreover, per DEFENDANTS' uniform policy and practice, Class Members who worked shifts of more than ten hours did not receive a second legally compliant thirty (30) minute second meal period.

52. For example, when PLAINTIFF worked more than ten (10) and/or twelve (12) hours in a shift, PLAINTIFF was not provided with any version of a second meal period.

53. Based on information and belief, DEFENDANTS failed to instruct PLAINTIFF and other Class Members as to the timing and duty-free nature of meal periods. Based on further information and belief, DEFENDANTS did not have a written meal period policy, nor did DEFENDANTS have any sort of compliant policy in practice.

54. Moreover, based on information and belief, DEFENDANTS failed to keep accurate records of the true start and end times of PLAINTIFF's and Class Members' meal periods. Based on information and belief, to the extent meal period were recorded, DEFENDANTS illegally rounded the start and end times of purported meal periods resulting in PLAINTIFF and other Class Members not being paid for all time worked as well as late and/or shortened meal periods. *See Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58.

55. Based on information and belief, DEFENDANTS had actual and/or constructive knowledge that its policies and practices resulted in the denial of uninterrupted meal periods which were free of DEFENDANTS' control owed to PLAINTIFF and other Class Members, in violation of California's meal period laws.

56. DEFENDANTS failed to pay PLAINTIFF and other Class Members, an additional hour of wages at their respective regular rates of compensation for each workday a lawful meal period was not provided. DEFENDANTS either failed to pay a meal period premium at all for each

EXHIBIT A

EXHIBIT A

workday a lawful meal period was not provided and/or failed to pay the proper meal period premium for failure to incorporate all non-discretionary remuneration, including but not limited to, bonuses, shift differential pay and/or other non-discretionary compensation into the regular rate or compensation for purposes of calculating the owed meal period premium.

57. **Rest Period Violations**. DEFENDANTS did not properly authorize and provide PLAINTIFF and other Class Members with legally compliant rest periods at a rate of every four (4) hours worked or major fraction thereof, that insofar as practicable, are provided in the middle of the work period, as required by law.

58. PLAINTIFF and other Class Members were not adequately informed, authorized, instructed about, nor permitted an opportunity to take proper rest periods per California law. Based on information and belief, DEFENDANTS had no policy in place nor instruction as to the taking of duty-free rest periods.

59. Based on information and belief, DEFENDANTS did not have a have a compliant written rest period policy, nor did DEFENDANTS have any sort of compliant rest period policy in practice.

60. For example, based on information and belief, Class Members were frequently if not always unable to take compliant rest periods due to their need to complete assigned job duties and/or were unable to take a net ten-minute rest period in a suitable rest area and/or had purported rest periods restricted to DEFENDANTS' premises.

61. For example, per DEFENDANTS' unlawful rest period policies and practices, PLAINTIFF was only allowed to take two rest periods per shift, even on shifts lasting longer than ten (10) hours.

62. Furthermore, PLAINTIFF was restricted to the worksite premises during any rest periods and as such, DEFENDANTS failed to relieve PLAINTIFF of all duties and DEFENDANTS' control during any rest periods, in violation of California rest period law.

63. Based on information and belief, DEFENDANTS failed to authorize and permit rest periods that were a "net" ten minutes in a suitable rest area, and instead, to the extent rest periods were provided, DEFENDANTS limited PLAINTIFF and other Class Members to only ten-minute

EXHIBIT A

EXHIBIT A

rest periods, requiring them to be back at their workstations within ten minutes of leaving their work stations, in violation of California rest period law.

64. Based on information and belief, Class Members' rest periods were interrupted, cut short, on duty, restricted to premises and/or late due to understaffing, the nature and constraints of their job duties, and/or due to commentary from supervisors/managers pressuring them to skip rest periods completely or otherwise take non-compliant rest periods.

65. Moreover, DEFENDANTS failed to provide any form of a third rest period on shifts lasting longer than ten hours.

66. For example, as explained above, when PLAINTIFF worked shifts lasting longer than ten (10) hours, PLAINTIFF was not afforded the opportunity and/or was not permitted to take a third ten-minute rest period.

67. Based on information and belief, DEFENDANTS implemented policies and/or practices that failed to relieve PLAINTIFF and other Class Members of all duties and DEFENDANTS' control during rest periods.

68. Based on information and belief, Class Members were pressured to complete their work duties according to a designated schedule such that rest periods were only taken once tasks were completed, and/or as time permitted.

69. Furthermore, DEFENDANTS failed to pay a rest period premium for each day in which PLAINTIFF and Class Members experienced a missed/unlawful rest period in violation of California law. DEFENDANTS either failed to pay a rest period premium at all for each workday a proper rest period was not provided and/or failed to pay the proper rest period premium for failure to incorporate all non-discretionary remuneration, including but not limited to, bonuses, shift differential pay, and/or other non-discretionary compensation into the regular rate of compensation for purposes of calculating the owed rest period premium.

70. **Failure to Timely Pay All Wages Upon Separation of Employment**. Based on information and belief, DEFENDANTS failed to timely pay Class Members all wages that were due and owing upon termination or resignation. Based on information and belief, DEFENDANTS untimely provide final wages to Class Members without regard to the timing requirements of Labor

EXHIBIT A

EXHIBIT A

Code sections 201-202.

71. Upon separation of employment, Class Members' final paychecks were not timely provided and/or were not timely provided with all owed vacation pay and/or paid time off. Moreover, PLAINTIFF's and Class Members' final paychecks, once provided, did not include all wages owed as they were devoid of, including but not limited to, all owed minimum wages, overtime wages, premium wages, vacation pay, and all owed sick leave and/or paid time off wages at the properly accrued rates.

72. For example, DEFENDANTS failed to furnish PLAINTIFF with any final paycheck at the time of termination, instead requiring PLAINTIFF to wait at least several days after her termination, until the end of the pay period, to receive a final paycheck, and PLAINTIFF's late final paycheck was devoid of all wages owed including but not limited to all owed minimum wages, overtime wages, premium wages, vacation pay, all owed sick leave and/or paid time off wages at the properly accrued rates (including but not limited to, all owed vacation pay/paid time off paid at the final rate including non-discretionary compensation, including but not limited to, any shift differentials).

73. Based on further information and belief, DEFENDANTS failed to timely provide all owed wages immediately upon discharge of employment. Based on information and belief, at times, Class Members experienced breaks in employment caused by DEFENDANTS whereby Class Members would not be called in for work for longer than a single pay period due to including but not limited to DEFENDANTS' lack of work or lack of assignments. Such instances qualify as a discharge of employment. Yet, DEFENDANTS failed to timely pay all owed wages at the end of such periods of employment, in violation of including but not limited to Labor Code section 201-202.

74. These violations subject DEFENDANTS to civil penalties under Labor Code section 203, 210, and/or 256.

75. **Unreimbursed Business Expenses**. Based on information and belief, DEFENDANTS required PLAINTIFF and Class Members to incur business expenses as a direct consequence of the performance of their job duties without providing reimbursement, in violation

EXHIBIT A

EXHIBIT A

of Labor Code section 2802. Based on information and belief, PLAINTIFF and Class Members were improperly required to provide and maintain work tools that are supposed to be the responsibility of the employer.

76. Based on information and belief, DEFENDANTS shifted the costs of doing business onto PLAINTIFF and other Class Members requiring them to pay for business expenses, including but not limited to, uniforms/work clothing/work shoes/personal protective/safety gear and the use of Class Members' personal cell phones/mobile devices, internet and/or data usage for work-related purposes, including but not limited to, to receive and respond to work-related messages and/or phone calls.

77. For example, based on information and belief, Class Members were required to receive and respond to work-related calls and/or messages from supervisors and/or other Class Members regarding scheduling and/or other work tasks but were not reimbursed by DEFENDANTS at all and/or in full for these business expenses.

78. Based on information and belief, Class Members were not reimbursed for the cost of purchasing and/or maintaining their own hand tools and/or equipment required to perform their assigned job duties and/or for the costs of purchasing and/or maintaining work uniforms/clothing/shoes and/or protective gear (e.g., gloves and/or face masks).

79. Based on information and belief, at times, Class Members were not reimbursed for the business use of their personal vehicles, including mileage, wear and tear and/or cost of fuel when they were required to drive around and/or between job sites, and/or otherwise use their personal vehicles in carrying out the duties assigned by DEFENDANTS. As such, DEFENDANTS failed to compensate Class Members at the legally mandated Internal Revenue Service (IRS) per mile compensation rates in effect during the relevant period.

80. As explained above, based on information and belief, Class Members were not reimbursed for the cost of using their personal phone for work-related purposes and/or the cost of purchasing and/or maintaining work uniforms/work clothing/work shoes, personal protective/safety gear and/or hand tools/work equipment.

81. Based on information and belief, DEFENDANTS regularly failed to reimburse and

EXHIBIT A

EXHIBIT A

indemnify Class Members for business expenses. Pursuant to California Labor Code section 2802, PLAINTIFF and Class Members were entitled to be reimbursed for all reasonable expenses associated with carrying out DEFENDANTS' orders and/or carrying out the duties assigned by DEFENDANTS.

82. DEFENDANTS' failure to provide Class Members with full reimbursement for all reasonable expenses associated with carrying out their duties required that Class Members subsidize and/or carry the burden of business expenses in violation of Labor Code section 2802.

83. PLAINTIFF is informed and believes and alleges thereon that DEFENDANTS engaged in these same herein described unlawful practices and that DEFENDANTS applied these same herein described unlawful practices to all of its employees that it applied to PLAINTIFF.

## FIRST CAUSE OF ACTION

**Recovery of Unpaid Minimum Wages and Liquidated Damages**
**(By PLAINTIFF and the Class Members Against all DEFENDANTS)**

84. PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

85. It is fundamental that an employer must pay its employees for all time worked. California Labor Code sections 218 and 218.5 provide a right of action for nonpayment of wages. Labor Code section 222 prohibits the withholding of part of a wage. Labor Code section 224 only permits deductions from wages when the employer is required or empowered to do so by state or federal law or when the deduction is expressly authorized in writing by the employee for specified purposes that do not have the effect of reducing the agreed upon wage. Labor Code section 223 prohibits the pay of less than a statutory or contractual wage scale.

86. Pursuant to California Labor Code sections 1194 and 1197, and the Industrial Wage Commission ("IWC") Wage Orders, an employer must pay its employees for all hours worked, up to 40 hours per week or 8 hours per day, at a regular rate no less than the mandated minimum wage. Payment to an employee of less than the applicable minimum wage for all hours worked in a payroll period is unlawful.

87. DEFENDANTS violated California's minimum wage laws by failing to compensate PLAINTIFF and the Class Members for all hours worked by virtue of, among other things, DEFENDANTS' time rounding, automatic deduction for meal periods, off-the-clock/unpaid work

EXHIBIT A

EXHIBIT A

completed during meal periods, other pre-shift, post-shift and/or otherwise off-the-clock work, and/or payment according to scheduled hours worked rather than actual hours worked (described above), which resulted in the failure to account for all hours worked and thus the denial of minimum wages.

88. DEFENDANTS had and continue to have a policy of failing to pay PLAINTIFF and Class Members for all hours worked.

89. Based on information and belief, DEFENDANTS had actual or constructive knowledge that its time-rounding policies and practices, auto-deduction policies and practices for meal periods, failure to relieve employees of all duties and employer control during unpaid meal periods, policy and practice of payment according to scheduled work time rather than actual work time, and/or other mandated off-the-clock work resulted in the underpayment of minimum wages owed to PLAINTIFF and other Class Members.

90. Pursuant to Labor Code sections 1194 and 1194.2, PLAINTIFF and the Class Members are entitled to recover all unpaid minimum wages and liquidated damages thereon, plus attorney's fees and costs, in an amount to be proved at trial.

**SECOND CAUSE OF ACTION**

**Recovery of Unpaid Overtime Wages**

**(By PLAINTIFF and the Class Members Against all DEFENDANTS)**

91. PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

92. Employees in California must be paid overtime, equal to one and one-half times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh consecutive day of work in a workweek, and they must be paid double the regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) on the seventh consecutive day of work in a workweek, unless they are exempt.

93. PLAINTIFF and the Class Members worked overtime hours for which they were not compensated by DEFENDANTS by virtue of, among other things, DEFENDANTS' time rounding, automatic deduction for meal periods, off-the-clock/unpaid work completed during meal periods, other pre-shift, post-shift and/or otherwise off-the-clock work, and/or payment according to

EXHIBIT A

EXHIBIT A

scheduled hours worked rather than actual hours worked (described above), and/or other unlawful policies and/or practices described above which resulted in unpaid minimum and overtime wages which resulted in the failure to account for all hours worked and thus the denial of all owed overtime wages.

94. Based on information and belief, DEFENDANTS failed to pay twice Class Members' regular rate(s) of pay for time worked beyond twelve (12) hours per workday and for time worked beyond eight (8) hours on the seventh consecutive day of work in a work week, in violation of California's overtime laws.

95. Based on information and belief, DEFENDANTS further violated California's overtime wage laws by failing to incorporate all non-discretionary compensation, including but not limited to, non-discretionary bonus compensation, shift differentials, and/or other non-discretionary compensation into the regular rate of pay used to calculate the overtime rate of pay. Failing to include non-discretionary compensation into the regular rate of pay resulted in a miscalculation of the overtime wage rate, resulting in the underpayment of overtime wages owed to PLAINTIFF and other Class Members.

96. DEFENDANTS' conduct described above is in violation of California Labor Code sections 510 and 1194 and all applicable Wage Orders.

97. PLAINTIFF and the Class Members are entitled to recover all unpaid overtime wages, plus attorney's fees and costs, in an amount to be proved.

**<u>THIRD CAUSE OF ACTION</u>**

**Failure to Provide Meal Periods or Compensation in Lieu Thereof**

**(By PLAINTIFF and the Class Members Against all DEFENDANTS)**

98. PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

99. Pursuant to Labor Code section 512 and all applicable IWC Wage Orders, DEFENDANTS were required to provide PLAINTIFF and the Class Members with one 30-minute meal break free from all duties and employer control for all shifts longer than 5 hours, and a second 30-minute meal break free from all duties for all shifts longer than 10 hours. Meal periods can be waived, but only under the following circumstances: (1) if an employee's total work period in a day is over five (5) hours but no more than six (6) hours, the required meal period may be waived by

EXHIBIT A

EXHIBIT A

mutual consent of the employer and employee, and (2) if an employee's total work period in a day is over ten (10) hours but no more than twelve (12) hours, the required second meal period may be waived by mutual consent of the employer and employee, but only if the first meal period was not waived. Employers covered by the Wage Orders have an obligation to both (1) relieve their employees for at least one meal period for shifts over five hours (see above), and (2) to record having done so.

100. Employers must pay employees an additional hour of wages at the employees' regular rate of pay for each missed or unlawful meal period (e.g., less than 30 minutes, interrupted meal period, first meal period provided after five (5) hours, second meal period provided after 10 hours). Lab. Code § 226.7.

101. As explained above, PLAINTIFF and other Class Members were consistently unable to take timely, off duty, thirty-minute, uninterrupted first and second meal periods, often being forced to take late meal periods, interrupted meal periods, and/or work through part or all of their meal periods due to understaffing, the nature and constraints of their job duties, and/or commentary from supervisors pressuring them to take non-compliant meal periods or skip meal periods completely.

102. Based on information and belief, DEFENDANTS had and continue to have a policy of rounding the start and end times of employees' meal periods and/or automatically deducting thirty minutes per shift despite having actual and/or constructive knowledge that PLAINTIFF and Class Members did not receive compliant meal periods.

103. Moreover, based on information and belief, Class Members did not receive a timely, uninterrupted second meal period when working shifts over ten (10) hours in a workday.

104. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS had actual and/or constructive knowledge that its time-rounding and auto-deduction policies and practices, other unlawful policies and practices resulted in the denial of compliant meal periods in violation of California's meal period laws.

105. DEFENDANTS also failed to pay premiums for missed/otherwise unlawful meal periods in violation of California law and/or failed to pay the proper meal period premium for failure

EXHIBIT A

EXHIBIT A

to incorporate all non-discretionary remuneration including but not limited to, bonuses, shift differential pay and/or other non-discretionary compensation into the regular rate or compensation for purposes of calculating the owed meal period premium.

106. As a result, under Labor Code section 226.7, PLAINTIFF and the Class Members are entitled to one additional hour's pay at the employee's regular rate of compensation for each day a meal period was missed, late, interrupted, or otherwise unlawful, plus attorneys' fees and costs, all in an amount to be proved at trial.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Rest Periods or Compensation in Lieu Thereof**
**(By PLAINTIFF and the Class Members Against all DEFENDANTS)**

107. PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

108. Labor Code section 226.7 and all applicable IWC Wage Orders require an employer to authorize or permit an employee to take a rest period of ten (10) net minutes for every four hours worked or major fraction thereof. Such rest periods must be in the middle of the four-hour period "insofar as practicable." In *Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004 (2012), the California Supreme Court held that employees are entitled to a 10-minute paid rest period for shifts from 3 ½ to 6 hours in a length, two 10-minute rest periods for shifts more than 6 hours up to 10 hours, and three 10-minute rest periods for shifts of more than 10 hours up to 14 hours. (*Id.* at 1029). The rest period requirement obligates employers to permit and authorize employees to take off-duty rest periods, meaning employers must relieve employees of all duties and relinquish control over how employees spend their time. *Augustus v. ABM Security Services, Inc.*, (2016) 5 Cal.5th 257.

109. If the employer fails to provide any required rest period, the employer must pay the employee one hour of pay at the employee's regular rate of compensation for each workday the employer did not provide at least one legally required rest period, pursuant to Labor Code section 226.7.

110. Moreover, under California law rest periods must be a "net" ten minutes in a suitable rest area. *Id.* at 268 (relying on January 3, 1986 and February 22, 2002 Division of Labor Standards Enforcement (DLSE) Letters wherein the DLSE ruled that the net ten-minute language for rest periods means ten minutes of time in a rest area and cannot include time it takes to get to and from

EXHIBIT A

EXHIBIT A

the rest area). The employer must show that it clearly articulates the right to a net ten minutes, which means it must clearly communicate what "net" ten minutes means (i.e., regardless of what happens along the way to and from a rest area, employees are entitled to a full ten minutes of rest in the rest area). *Id.*; see also, *Bufil v. Dollar Fin. Grp., Inc.*, (2008) 162 Cal. App. 4th 1193, 1199 (the "onus is on the employer to clearly communicate the authorization and permission [to take rest periods] to its employees.").

111. PLAINTIFF and the Class Members did not receive legally compliant, timely 10-minute rest periods for every four (4) hours worked or major fraction thereof. As explained above, any purported rest periods were late, interrupted, cut short, on duty, and/or otherwise subject to DEFENDANTS' control due to the nature and constraints of Class Members' job duties, understaffing, and/or commentary from supervisors pressuring PLAINTIFF and Class Members to skip rest periods completely or otherwise take non-compliant rest periods.

112. Based on information and belief, DEFENDANTS implemented policies and/or practices that failed to relieve PLAINTIFF and other Class Members of all duties and employer control during rest periods. Based on further information and belief, Class Members were pressured to complete their work duties according to a designated schedule such that rest periods were only taken once tasks were completed, and/or as time permitted.

113. As a result, PLAINTIFF and Class Members did not receive legally compliant first, second, or third rest periods as required by California law.

114. Moreover, based on information and belief, DEFENDANTS failed to pay a rest period premium to PLAINTIFF and other Class Members for each workday in which there was a missed or otherwise unlawful rest period. Based on further information and belief, when a rest premium was paid, DEFENDANTS failed to include non-discretionary compensation including but not limited to, bonuses, shift differential pay, and/or other non-discretionary compensation into the regular rate of compensation for purposes of determining the owed rest period premium.

115. DEFENDANTS are therefore liable to PLAINTIFF and the Class Members for one hour of additional pay at the regular rate of compensation for each workday that a required rest period was not provided, pursuant to California Labor Code section 226.7 and the applicable Wage

EXHIBIT A

EXHIBIT A

Order, plus pre-judgment interest, plus attorneys' fees and costs, all in an amount to be proved at trial.

**FIFTH CAUSE OF ACTION**
**Failure to Timely Pay All Wages Due Upon Separation of Employment**
**(By PLAINTIFF and the Class Members Against all DEFENDANTS)**

116. PLAINTIFF incorporates all preceding paragraphs as if fully set forth herein.

117. California Labor Code section 201(a) provides, in relevant part, that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

118. California Labor Code section 202(a) provides, in relevant part, that "[i]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

119. Based on information and belief, DEFENDANTS failed and continue to fail to timely pay final wages to PLAINTIFF and Class Members upon separation of employment in violation of Labor Code section 201-202. Moreover, final paychecks once provided to PLAINTIFF and Class Members do not include all wages owed as they are devoid of, including but not limited to, all owed minimum wages, overtime wages, premium wages, vacation pay, and all owed sick leave and/or paid time off wages at the properly accrued rates.

120. Under Labor Code section 203, PLAINTIFF and the Class Members who are no longer employed by DEFENDANTS are entitled to recover waiting time penalties of up to 30 days' pay, plus attorney's fees and costs, in an amount to be proved at trial.

**SIXTH CAUSE OF ACTION**
**Failure to Reimburse Business Expenses**
**(By PLAINTIFF and the Class Members Against all DEFENDANTS)**

121. PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

122. California law requires employers to indemnify their employees for all necessary expenditures incurred by the employee in direct consequence of the discharge of their duties or of their obedience to the directions of the employer. *See* Cal. Lab. Code s. 2802 and all applicable

EXHIBIT A

EXHIBIT A

Wage Orders section 9(b). Furthermore, "for purposes of [section 2802], the term 'necessary expenditure or losses' shall include all reasonable costs, including, but not limited to, attorneys' fees incurred by the employee enforcing the rights granted by this section."

123. Among other things, under California law, when employees must use their personal cellphones for work-related purposes, the employer must reimburse them for a reasonable percentage of their cell phone bills. See *Cochran v. Schwan's Home Services*, Inc. (2014) 228 Cal.App.4th 1137, 1140. To show liability, an employee will only need to show that he or she was required to use their personal cellphone for work-related purposes and not reimbursed for the use. Id. 1144-1145. California law also requires employers to reimburse employees for automobile expenses incurred for the business use of personal vehicles, such as for mileage, gas, and the wear and tear on the vehicle. *See Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554.

124. As described above, PLAINTIFF and the Class Members were improperly required to pay for business expenses that are legally the responsibility of the employer.

125. DEFENDANTS' failure to provide PLAINTIFF and the Class Members with full reimbursement for all reasonable expenses associated with carrying out their duties required that PLAINTIFF and the Class Members subsidize and/or carry the burden of business expenses in violation of Labor Code section 2802.

126. As a result of DEFENDANTS' unlawful conduct, PLAINTIFF and the Class Members have suffered injury in that they were not completely reimbursed as mandated by California law.

127. Pursuant to California Labor Code section 2802, PLAINTIFF and the Class Members are entitled to recover the full amount of reimbursable expenses due, in addition to reasonable attorneys' fees, and costs of suit.

**SEVENTH CAUSE OF ACTION**
**Unfair Competition**
**(By PLAINTIFF and the Class Members Against all DEFENDANTS)**

128. PLAINTIFF incorporates all preceding paragraphs as if fully alleged herein.

129. DEFENDANTS' unlawful conduct alleged herein constitutes unfair competition within the meaning of California Business and Professions Code section 17200 *et seq*. This unfair

EXHIBIT A

EXHIBIT A

conduct includes all unlawful conduct alleged herein, including but not limited to: DEFENDANTS' failure to pay minimum and overtime wages by virtue of its illegal policies and practices; DEFENDANTS' failure to authorize or permit, or provide, all required meal and rest periods or pay proper premiums in lieu thereof; DEFENDANTS' failure to reimburse business expenses; DEFENDANTS' failure to timely pay all wages owed upon separation of employment; and DEFENDANTS' failure to provide paid sick leave (or paid time off in lieu thereof) at the properly accrued rates (due to, including but not limited to, DEFENDANTS' failure to incorporate all non-discretionary compensation into the sick pay calculation and failure to base the accrued sick leave on the correct number of hours worked as a result of DEFENDANTS' time-rounding/auto deduction policies and practices, payment according to scheduled hours worked and/or other off-the-clock work policies and practices).

130. Due to DEFENDANTS' unfair and unlawful business practices in violation of the California Labor Code, DEFENDANTS have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their obligations to authorize or permit rest periods and meal periods or pay proper meal and rest period premiums in lieu thereof, to properly accrue and pay sick time benefits, to reimburse employees for all business expenses, to pay all owed minimum and overtime wages and to pay all wages due upon separation of employment of their employees.

131. As a result of DEFENDANTS' unfair competition as alleged herein, PLAINTIFF and Class Members have suffered injury in fact and lost money or property, as described in more detail above. Pursuant to California Business and Professions Code section 17200, *et seq*., PLAINTIFF and Class Members are entitled to restitution of all wages and other monies rightfully belonging to them that DEFENDANTS failed to pay and wrongfully retained by means of their unlawful and unfair business practices.

132. PLAINTIFF also seeks an injunction against DEFENDANTS on behalf of the Class Members, enjoining DEFENDANTS and any and all persons acting in concert with them from engaging in each of the unlawful practices and policies set forth herein.

133. PLAINTIFF also seeks an award of attorney's fees pursuant to Code Civ. Proc

EXHIBIT A

EXHIBIT A

Section 1021.5 and as permitted by law, and an award for costs reasonably incurred, as permitted by law.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

28

PLAINTIFF'S CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
EXHIBIT A

EXHIBIT A

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for relief and judgment, on behalf of PLAINTIFF and Class Members as follows:

1. For an order that the action be certified as a class action;
2. For an order that PLAINTIFF be appointed as class representative;
3. For an order that counsel for PLAINTIFF be appointed as class counsel;
4. For compensatory damages according to proof;
5. For liquidated damages according to proof;
6. For penalties according to proof;
7. For an order requiring DEFENDANTS to make restitution of all amounts wrongfully withheld from PLAINTIFF and the Class Members;
8. For an order finding DEFENDANTS have engaged in unfair competition in violation of section 17200, *et seq*., of the California Business and Professions Code;
9. For an order enjoining DEFENDANTS from further acts of unfair competition;
10. For pre-judgment interest as permitted by law;
11. For attorney's fees and costs reasonably incurred; and
12. For such other and further relief that the Court deems just and proper.

Dated: February 16, 2024

**CROSNER LEGAL, PC**

By: ______________________

Jamie K. Serb, Esq.
Brandon Brouillette, Esq.
Zachary M. Crosner, Esq.
Attorneys for Plaintiff
TENIAH TERCERO

EXHIBIT A

EXHIBIT A

**DEMAND FOR JURY TRIAL**

PLAINTIFF demands a trial by jury on all claims so triable.

Dated: February 16, 2024

**CROSNER LEGAL, PC**

By: ______________________

Jamie K. Serb, Esq.
Brandon Brouillette, Esq.
Zachary M. Crosner, Esq.
Attorneys for Plaintiff
TENIAH TERCERO

30
PLAINTIFF'S CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
EXHIBIT A

EXHIBIT B

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

Issued and Filed
Superior Court of California,
Sacramento
02/20/2024
bloxsov
By ____________, Deputy
24CV002889

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company; C&S LOGISTICS OF SACRAMENTO/TRACY LLC, a Delaware Limited Liability Company; C&S WHOLESALE GROCERS, LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
TENIAH TERCERO, as an individual and on behalf of all other similarly situated Class Members

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

BY FAX

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Sacramento - Gordon D. Schaber Courthouse
720 9th Street, Sacramento, CA 95814

CASE NUMBER:
*(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
CROSNER LEGAL, PC 9440 Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210 Tel: (866) 276-7637

DATE: *(Fecha)* FEB 2 0 2024 Clerk, by *(Secretario)* ____________, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

SUPERIOR COURT OF CALIFORNIA COUNTY OF SACRAMENTO EUREKA

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

EXHIBIT B

EXHIBIT C

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Jamie Serb (SBN 289601), Brandon Brouillette (SBN 273156)<br>Zachary M. Crosner (SBN. 272295)<br>CROSNER LEGAL PC, 9440 Santa Monica Blvd., Ste. 301, Beverly Hills, CA 90210<br>TELEPHONE NO.: (866) 276-7637 FAX NO.: (310) 510-6429<br>EMAIL ADDRESS: jamie@crosnerlegal.com, bbrouillette@crosnerlegal.com, zach@crosnerlegal.com<br>ATTORNEY FOR *(Name):* Teniah Tercero | Filed<br>Superior Court of California,<br>Sacramento<br>02/16/2024<br>bloxsov<br>By ________________, Deputy<br>24CV002889 |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**<br>STREET ADDRESS: 720 9th Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Sacramento, 95814<br>BRANCH NAME: Gordon D. Schaber Courthouse | |
| CASE NAME:<br>Teniah Tercero v. Sacramento Logistics LLC, et al. | |

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000) [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [x] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* 7
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: February 16, 2024

Zachary Crosner
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

BY FAX

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller
    - Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

EXHIBIT D

| SUPERIOR COURT OF CALIFORNIA COUNTY OF SACRAMENTO | Court Use Only |
|---|---|
| COURTHOUSE ADDRESS: Gordon D. Schaber Superior Court 720 9th Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER: Teniah Tercero et al | |
| DEFENDANT/RESPONDENT: Sacramento Logistics LLC, a Delaware Limited Liability Company et al | |
| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (UNLIMITED CIVIL CASE)** | CASE NUMBER: 24CV002889 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

## NOTICE OF CASE ASSIGNMENT

Pursuant to rule 3.734 of the California Rules of Court, this action is hereby assigned for limited purposes to the judicial officers indicated below:

| PURPOSE | ASSIGNED JUDGE | COURT LOCATION | DEPARTMENT |
|---|---|---|---|
| **LAW & MOTION** | Richard K. Sueyoshi | Hall of Justice | 53 |
| **CASE MANAGEMENT PROGRAM** | Thadd A. Blizzard | Gordon D. Schaber Superior Court | 43 |

Please refer to Chapter Two – Parts 3 and 4 of the Sacramento Superior Court Local Rules and the Court's website for additional filing instructions and hearing reservation information.

## NOTICE OF CASE MANAGEMENT CONFERENCE

**Hearing Date**

The above entitled action has been set for a case management conference at **8:30 AM** on **February 7, 2025** in **Department 43** in accordance with California Rules of Court 3.722. You must be familiar with the case and fully prepared to participate effectively in the case management conference.

**Case Management Statement**

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

**Minimum Requirements**

Prior to the filing of the case management statement, the parties should have done the following:

- Served all parties named in the complaint within 60 days after the summons has been issued
- Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered
- Met and conferred with all parties as required by CRC 3.724 to discuss and resolve issues set forth therein.

EXHIBIT D

| SHORT TITLE: TERCERO, et al. vs SACRAMENTO LOGISTICS LLC, A DELAWARE LIMITED LIABILITY COMPANY, et al. | CASE NUMBER: 24CV002889 |
|---|---|

**Tentative Ruling**

Following its review of the case management statement(s), the court may determine that a case management conference is not necessary. To determine whether an appearance is required, the parties must check the court's tentative rulings after 2:00 p.m. on the Court day before the Friday calendar by accessing the court's internet website at www.saccourt.ca.gov

**Remote Appearances**

Unless ordered to appear in person by the court, parties may appear remotely either telephonically or by video conference via the Zoom video/audio conference platform with notice to the court and all other parties in accordance with Code of Civil Procedure 367.75. If appearing remotely, parties are required to participate in their hearing using a device that has video and/or audio capability (i.e. computer, smartphone, or tablet). Although remote participation is not required, the court will presume all parties are appearing remotely for non-evidentiary civil hearings.

**Certification Filed in Lieu of Case Management Statement**

If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement.

**Case Management Orders**

At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date.

**Service of Notice of Case Assignment and Case Management Conference**

Unless otherwise ordered by the court, plaintiff shall serve a copy of this notice on any party to the complaint appearing after the court issued this notice. The cross-complainant shall have the same obligation with respect to the cross-complaint.

**Compliance**

Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money).

**Continuances**

Case management conference(s) will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference.

Dated: 02/20/2024 By: /s/ V. Bloxson

V. Bloxson, Deputy Clerk

EXHIBIT E

Filed
Superior Court of California, Sacramento
02/27/2024
larsonh
By ________________, Deputy
24CV002889

| Attorney or Party without Attorney: JAMIE K. SERB, ESQ. (SBN 289601) CROSNER LEGAL, P.C. 9440 Santa Monica Blvd Suite 301 Beverly Hills, CA 90210 Telephone No: 310-496-4818 | | | | For Court Use Only |
|---|---|---|---|---|
| Attorney For: Plaintiff | Ref. No. or File No.: 01112 | | | |
| Insert name of Court, and Judicial District and Branch Court: SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF SACRAMENTO | | | | |
| Plaintiff: TENIAH TERCERO, as an individual and on behalf of all other similarly situated Class Members<br>Defendant: SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company, et al | | | | |
| **PROOF OF SERVICE SUMMONS** | Hearing Date: | Time: | Dept/Div: | Case Number: 24CV002889 |

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference (Unlimited Civil Case)

3. a. *Party served:* SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company
   b. *Person served:* Robin Hutt-Banks, authorized to accept service for Corporation Trust Company, Agent for Service of Process

4. *Address where the party was served:* 1209 North Orange Street, Wilmington, DE 19801

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Mon, Feb 26 2024 (2) at *(time)*: 11:05 AM
   (1) [X] **(business)**
   (2) [ ] **(home)**
   (3) [ ] **(other)**:

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify)*:
   c. [ ] as occupant.
   d. [X] On behalf of *(specify)*: SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company
   under the following Code of Civil Procedure section:
   [ ] 416.10 (corporation)
   [ ] 416.20 (defunct corporation)
   [ ] 416.30 (joint stock company/association)
   [ ] 416.40 (association or partnership)
   [ ] 416.50 (public entity)
   [X] other: Limited Liability Company
   [ ] 415.95 (business organization, form unknown)
   [ ] 416.60 (minor)
   [ ] 416.70 (ward or conservatee)
   [ ] 416.90 (authorized person)
   [ ] 415.46 (occupant)

BY FAX

EXHIBIT E

EXHIBIT E

| Plaintiff: TENIAH TERCERO, as an individual and on behalf of all other similarly situated Class Members<br>Defendant: SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company, et al | Case Number:<br>24CV002889 |
|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a. Name: John Garber
   b. Address: **FIRST LEGAL**
   1517 W. Beverly Blvd.
   LOS ANGELES, CA 90026
   c. Telephone number: (213) 250-1111
   d. **The fee** for service was: $257.25
   e. I am:
      (1) [X] not a registered California process server.
      (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
      (3) [ ] a registered California process server:
         (i) [ ] owner [ ] employee [ ] independent contractor
         (ii) Registration No:
         (iii) County:

8. ***I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

02/26/2024
*(Date)*

*John Garber*

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SACRAMENTO

2024 FEB 27 PM 3:35

IN DROP BOX
RECEIVED

EXHIBIT F

Filed
Superior Court of California,
Sacramento
02/27/2024
larsonh
By _______________, Deputy
24CV002889

| Attorney or Party without Attorney: JAMIE K. SERB, ESQ. (SBN 289601) CROSNER LEGAL, P.C. 9440 Santa Monica Blvd Suite 301 Beverly Hills, CA 90210 Telephone No: 310-496-4818 Attorney For: Plaintiff | Ref. No. or File No.: 01112 | For Court Use Only |
|---|---|---|
| Insert name of Court, and Judicial District and Branch Court: SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF SACRAMENTO | | |
| Plaintiff: TENIAH TERCERO, as an individual and on behalf of all other similarly situated Class Members Defendant: SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company, et al | | |

| PROOF OF SERVICE SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number: 24CV002889 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference (Unlimited Civil Case)

3. *a. Party served:* C&S WHOLESALE GROCERS, LLC, a Delaware Limited Liability Company
   *b. Person served:* Sarai Marin, authorized to accept for CT Corporation System, Inc., Agent for Service of Process

4. *Address where the party was served:* 330 North Brand Boulevard, Suite 700, Glendale, CA 91203

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Mon, Feb 26 2024 (2) at *(time)*: 12:40 PM
   (1) [X] **(business)**
   (2) [ ] **(home)**
   (3) [ ] **(other)** :

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify)*:
   c. [ ] as occupant.
   d. [X] On behalf of *(specify)*: C&S WHOLESALE GROCERS, LLC, a Delaware Limited Liability Company
   under the following Code of Civil Procedure section:
   [ ] 416.10 (corporation)
   [ ] 416.20 (defunct corporation)
   [ ] 416.30 (joint stock company/association)
   [ ] 416.40 (association or partnership)
   [ ] 416.50 (public entity)
   [X] other: Limited Liability Company
   [ ] 415.95 (business organization, form unknown)
   [ ] 416.60 (minor)
   [ ] 416.70 (ward or conservatee)
   [ ] 416.90 (authorized person)
   [ ] 415.46 (occupant)

BY FAX

EXHIBIT F

| *Plaintiff:* | TENIAH TERCERO, as an individual and on behalf of all other similarly situated Class Members | *Case Number:* 24CV002889 |
|---|---|---|
| *Defendant:* | SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company, et al | |

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a. Name: Douglas Forrest
   b. Address: **FIRST LEGAL**
   1517 W. Beverly Blvd.
   LOS ANGELES, CA 90026
   c. Telephone number: (213) 250-1111
   d. **The fee** for service was: $55.25
   e. I am:
   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☒ a registered California process server:
   (i) ☐ owner ☐ employee ☒ independent contractor
   (ii) Registration No: 5141
   (iii) County: Los Angeles

8. ***I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

02/26/2024
*(Date)*

*Douglas Forrest*

EXHIBIT F

RECEIVED
IN DROP BOX
2024 FEB 27 PM 2:32
DOWNTOWN COURTHOUSE
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SACRAMENTO

EXHIBIT F

| *Attorney or Party without Attorney:*<br>JAMIE K. SERB, ESQ. (SBN 289601)<br>CROSNER LEGAL, P.C.<br>9440 Santa Monica Blvd Suite 301<br>Beverly Hills, CA 90210<br>*Telephone No:* 310-496-4818<br>*Attorney For:* Plaintiff | *Ref. No. or File No.:*<br>01112 | | | *For Court Use Only*<br>Filed<br>Superior Court of California,<br>Sacramento<br>02/27/2024<br>larsonh<br>By ______________, Deputy<br>24CV002889 |
|---|---|---|---|---|
| *Insert name of Court, and Judicial District and Branch Court:*<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>COUNTY OF SACRAMENTO | | | | |
| *Plaintiff:* TENIAH TERCERO, as an individual and on behalf of all other similarly situated Class Members<br>*Defendant:* SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company, et al | | | | |
| **PROOF OF SERVICE SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>24CV002889 |

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference (Unlimited Civil Case)

3. *a. Party served:* C&S LOGISTICS OF SACRAMENTO/TRACY LLC, a Delaware Limited Liability Company
   *b. Person served:* Sarai Marin, authorized to accept for CT Corporation System, Inc., Agent for Service of Process

4. *Address where the party was served:* 330 North Brand Boulevard, Suite 700, Glendale, CA 91203

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Mon, Feb 26 2024 (2) at *(time)*: 12:40 PM
   (1) [X] **(business)**
   (2) [ ] **(home)**
   (3) [ ] **(other) :**

BY FAX

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify)*:
   c. [ ] as occupant.
   d. [X] On behalf of *(specify)*: C&S LOGISTICS OF SACRAMENTO/TRACY LLC, a Delaware Limited Liability Company
   under the following Code of Civil Procedure section:
   [ ] 416.10 (corporation)
   [ ] 416.20 (defunct corporation)
   [ ] 416.30 (joint stock company/association)
   [ ] 416.40 (association or partnership)
   [ ] 416.50 (public entity)
   [X] other: Limited Liability Company
   [ ] 415.95 (business organization, form unknown)
   [ ] 416.60 (minor)
   [ ] 416.70 (ward or conservatee)
   [ ] 416.90 (authorized person)
   [ ] 415.46 (occupant)

| *Plaintiff:* | TENIAH TERCERO, as an individual and on behalf of all other similarly situated Class Members | *Case Number:* 24CV002889 |
|---|---|---|
| *Defendant:* | SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company, et al | |

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a. Name: Douglas Forrest
   b. Address: **FIRST LEGAL**
   1517 W. Beverly Blvd.
   LOS ANGELES, CA 90026
   c. Telephone number: (213) 250-1111
   d. **The fee** for service was: $95.00
   e. I am:
   (1) [ ] not a registered California process server.
   (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
   (3) [X] a registered California process server:
   (i) [ ] owner [ ] employee [X] independent contractor
   (ii) Registration No: 5141
   (iii) County: Los Angeles

8. ***I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

02/26/2024
*(Date)*

*Douglas Forrest*

EXHIBIT G

EXHIBIT G

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SACRAMENTO | Court Use Only |
|---|---|
| COURTHOUSE ADDRESS:<br>Gordon D. Schaber Superior Court<br>720 Ninth Street, Sacramento, CA 95814 | |
| PLAINTIFF(S):<br>Teniah Tercero et al | |
| Sacramento Logistics LLC, a Delaware Limited Liability Company et al | |
| **NOTICE OF CASE REASSIGNMENT** | CASE NUMBER:<br>24CV002889 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Sacramento, this action is hereby assigned by the Presiding Judge for all purposes to:

ASSIGNED JUDGE: Jill Talley
DEPARTMENT: 23
LOCATION: Gordon D. Schaber Superior Court
720 Ninth Street, Sacramento, CA 95814

Date: 02/22/2024

By: /s/ L. Chen-Knapp
L. Chen-Knapp, Deputy Clerk

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SACRAMENTO | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Sacramento<br>02/22/2024<br>L. Chen-Knapp, Deputy |
|---|---|
| COURTHOUSE ADDRESS:<br>Gordon D. Schaber Superior Court<br>720 Ninth Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER:<br>Teniah Tercero et al | |
| DEFENDANT/RESPONDENT:<br>Sacramento Logistics LLC, a Delaware Limited Liability Company et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV002889 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Reassignment upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Sacramento, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Zachary Miles Crosner
Crosner Legal, P.C.
9440 Santa Monica Blvd
Ste 301
Beverly Hills, CA 90210

Dated: 02/22/2024 By:

/s/ L. Chen-Knapp
L. Chen-Knapp, Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

Gordon D. Schaber Superior Court, Department 31

JUDICIAL OFFICER: HONORABLE STEVEN M. GEVERCER

Courtroom Clerk: L.Chen-Knapp CSR: None

**24CV002889** February 22, 2024 11:39 AM

**TERCERO, et al.**
**vs**
**SACRAMENTO LOGISTICS LLC, A DELAWARE LIMITED LIABILITY COMPANY, et al.**

## MINUTES

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Complex Determination**

COMPLEX DETERMINATION

Having reviewed and considered the pleadings on file, the Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Sacramento County Local Rules concerning complex litigation.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten (10) calendar days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Payment may be submitted by mail or placed in one of the Civil Drop Boxes located in Room 102 of the Gordon D. Schaber Courthouse at 720 9th Street, Sacramento, CA 95814. Please make checks payable to the Clerk of the Superior Court.

Failure to pay the required fees shall have the same effect as the failure to pay a filing fee, and shall be subject to the same enforcement and penalties (Cal. Gov. Code § 70616(g)).

SERVICE OF THIS ORDER

The plaintiff is directed to serve all other parties with a copy of this order.

**This action involves or is likely to involve**: Claims involving class actions.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO

Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve.

Management of a large number of witnesses or a substantial amount of documentary evidence.

The case is ordered reassigned to Judge Jill H. Talley in Department 23 at the Gordon D. Schaber Superior Court for all further proceedings and for all purposes.

Any previously calendared hearings in departments other than the newly assigned courtroom are advanced to this date and vacated.

Certificate of Mailing is attached.

By: /s/ L. Chen-Knapp
L. Chen-Knapp, Deputy Clerk

Minutes of: 02/22/2024
Entered on: 02/22/2024



EXHIBIT I

| SUPERIOR COURT OF CALIFORNIA COUNTY OF SACRAMENTO | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Gordon D. Schaber Superior Court 720 Ninth Street, Sacramento, CA 95814 | FILED Superior Court of California County of Sacramento 02/22/2024 L. Chen-Knapp, Deputy |
| PLAINTIFF/PETITIONER: Teniah Tercero et al | |
| DEFENDANT/RESPONDENT: Sacramento Logistics LLC, a Delaware Limited Liability Company et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER: 24CV002889 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Complex Determination) upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Sacramento, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Zachary Miles Crosner
Crosner Legal, P.C.
9440 Santa Monica Blvd
Ste 301
Beverly Hills, CA 90210

Dated: 02/22/2024 By: /s/ L. Chen-Knapp
L. Chen-Knapp, Deputy Clerk

EXHIBIT J

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SACRAMENTO | Court Use Only<br><br>FILED<br>Superior Court of California<br>County of Sacramento<br>03/14/2024<br>T. Shaddix, Deputy |
|---|---|
| COURTHOUSE ADDRESS:<br>Gordon D. Schaber Superior Court<br>720 Ninth Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER:<br>Teniah Tercero et al | |
| DEFENDANT/RESPONDENT:<br>Sacramento Logistics LLC, a Delaware Limited Liability Company et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDERS RE: COMPLEX CASE MANAGEMENT PROCEDURES**<br><br>Complex Civil Dept.: **23**<br>Judge: **Jill Talley** | CASE NUMBER:<br>24CV002889 |

**THIS NOTICE SHALL BE SERVED BY PLAINTIFF'S COUNSEL ON ALL OTHER PARTIES. ANY PARTY WHO HEREAFTER SERVES SUMMONS IN THIS ACTION UPON A NEW PARTY SHALL SERVE A COPY OF THIS NOTICE ON THE NEW PARTY ALONG WITH THE SUMMONS AND COMPLAINT OR CROSS-COMPLAINT.**

1. Pursuant to the Presiding Judge's Notice and Order of Complex Case Determination, the above-referenced case has been designated as complex, assigned to this department for complex case management, and pre-assigned to this department for trial. This is an *all-purpose* assignment under California Rule of Court 3.734, such that law and motion matters, motions for consolidation, severance, bifurcation, intervention and to continue trial shall be heard in this department unless otherwise directed by this Court. Other motions referenced in Local Rule 1.05 shall also be heard in this department.

2. The Court orders all parties to appear for a **Case Management Conference** on **10/04/2024,** at **10:30 AM,** in **Dept 23.**

**Please check the Civil Tentative Ruling search at www.saccourt.ca.gov prior to the above hearing date to confirm appearances and/or any updates (including updates to the hearing date/time).**

EXHIBIT J

EXHIBIT J

| SHORT TITLE: TERCERO, et al. vs SACRAMENTO LOGISTICS LLC, A DELAWARE LIMITED LIABILITY COMPANY, et al. | CASE NUMBER: 24CV002889 |
| --- | --- |

Effective January 3, 2022, civil hearings will be open for in-person appearances.

**However, the Court will continue to allow and strongly encourages all parties to appear remotely, subject to Code of Civil Procedure § 367.75 whenever possible. Additional information can be found at:**

**https://www.saccourt.ca.gov/civil/docs/pn-civil-remote-and-in-person-proceedings-effective-monday-january-3-2022.pdf**.

To join by Zoom link - https://saccourt-ca-gov.zoomgov.com/my/sscdept23

To join by phone dial (833) 568-8864 / ID: 16108301121

3. The Court orders the parties to meet and confer in good faith at least 30 calendar days prior to all CMCs pursuant to California Rules of Court, Rule 3.724. The parties shall discuss the issues outlined in Rule 3.724 and 3.750, with particular attention to the following, as applicable:
    a. Generally, what facts and issues are in dispute;
    b. Pleading and service issues, including:
        i. Whether all parties named in the complaint or cross-complaint have been served, have appeared, or have been dismissed;
        ii. Whether any additional parties may be added or the pleadings may be amended;
        iii. The deadline for the filing of any remaining pleadings and service of any additional parties;
    c. The impact of any related cases and/or other matters (e.g. bankruptcy proceedings), and whether severance, consolidation, or coordination with other actions is desirable;
    d. The possibility of early settlement, including:

NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDERS
RE: COMPLEX CASE MANAGEMENT PROCEDURES
EXHIBIT J
Page **2** of **10**

EXHIBIT J

| SHORT TITLE: TERCERO, et al. vs SACRAMENTO LOGISTICS LLC, A DELAWARE LIMITED LIABILITY COMPANY, et al. | CASE NUMBER: 24CV002889 |
| --- | --- |

i. Whether private mediation is appropriate;

ii. Proposed mediators and available dates for mediation; and

iii. Whether the parties agree to informally exchange discovery in advance of mediation;

e. Discovery issues, including, for example:

i. The general subjects on which discovery may be needed;

ii. A proposed discovery schedule that avoids duplication;

iii. Whether discovery should be stayed until all parties are brought into the case (or for any other reason);

iv. Whether discovery should be conducted in phases or be limited to or focused on particular issues;

v. Any issues related to preserving discoverable information and the need for preservation notices;

vi. Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced and possible allocation of costs, as well as whether it may be appropriate to adopt a Protocol for Discovery of Electronically Stored Information

vii. Any issues related to privacy, confidentiality, and/or trade secrets, and whether to stipulate to a Protective Order to facilitate the exchange of information and documents that may be subject to these limitations;

viii. Any issues about claims of privilege;

ix. Anticipated depositions and the subjects to be addressed in each deposition;

x. The method for exchange of documents and whether to establish an electronic document depository;

NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDERS
RE: COMPLEX CASE MANAGEMENT PROCEDURES
EXHIBIT J
Page **3** of **10**

xi. Any anticipated discovery motions;

f. The schedule for motion practice and trial, including anticipated dates for:

i. Discovery motions

ii. Dispositive motions

iii. Class certification

iv. Settlement conference

v. Pre-trial conference

vi. Trial

g. Issues related to counsel, including:

i. Whether to appoint liaison or lead counsel;

ii. Whether to establish a case-based Web site and other means to provide a current master list of addresses and telephone numbers of counsel;

h. Whether the parties have consented to electronic service in this action pursuant to California Code of Civil Procedure section 1010.6.

i. Whether a Special Master should be appointed and the purposes for such appointment; and

j. Any other relevant Case Management issues.

4. A Joint Case Management Conference Statement must be filed no later than 15 calendar days prior to all CMCs. All matters discussed during the meet-and-confer session shall be itemized and reported in the Joint CMC Statement. Individual statements will not be considered. *Do not* use Judicial Council Form CM-110 for the Joint CMC Statement. The purpose of the Joint Statement is to require counsel to confer. It shows the Court that the parties have been in direct communication. The CMC Statement shall include a declaration that the parties have met and conferred in good faith on all appropriate subjects set forth under #3. If no meet-and-confer session occurs, or if some of the issues under #3 are not discussed, the parties shall provide the Court with a brief and reasonable explanation.

EXHIBIT J

| SHORT TITLE: TERCERO, et al. vs SACRAMENTO LOGISTICS LLC, A DELAWARE LIMITED LIABILITY COMPANY, et al. | CASE NUMBER: 24CV002889 |
| --- | --- |

5. CMC Statements shall be filed at the Civil Filing Counter located in the Gordon D. Schaber County Courthouse, 720 9th Street, Room 102, Sacramento, CA 95814 or placed in a Gordon D. Schaber Civil Drop Box, with courtesy copies delivered directly to Department 23 **via email** at Dept23@saccourt.ca.gov, placing the Case Number in the Subject Line.

6. Counsel for each party and each self-represented party who appears at the CMC shall be thoroughly familiar with the case, and must be prepared to discuss and commit to the party's position on the issues outlined in #3 above.

7. Should the parties stipulate and request a continuance of the CMC, they shall make the request in their CMC Statement with the heading "CONTINUANCE REQUESTED" on the front page. They shall outline the reasons for the request and provide at least three (3) agreeable Fridays at 10:30 a.m. for the continued CMC. The Court may or may not approve the stipulated request. If the Court grants the request, the order will be reflected in the Court's Tentative Ruling. Alternatively, if the parties are seeking an earlier ruling on the request for continuance, they may submit a separate Stipulation and Proposed Order to the Court for its consideration.

8. Tentative Rulings: The Court may or may not issue a Tentative Ruling prior to the scheduled hearing. Counsel shall check the Court's Tentative Rulings after 2:00 p.m. the court day prior to the scheduled hearing. Tentative Rulings are posted on the Court's website at www.saccourt.ca.gov. ***It is imperative for the parties to review the Tentative Ruling in its entirety.*** The ruling may include important updates for the parties, including possible updates to the date/time of the CMC. The parties shall be prepared to address all issues outlined in the Court's ruling. If no Tentative Ruling is posted, the hearing will proceed as scheduled. If a Tentative Ruling is posted and the Court indicates that no appearance is required, the ruling shall become the final order of the Court, and no hearing shall occur unless the party seeking a hearing contacts the department clerk by 4:00 p.m. on the court day preceding the hearing and advises the clerk that they have provided notice to all other parties. In such event, the hearing

NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDERS
RE: COMPLEX CASE MANAGEMENT PROCEDURES
EXHIBIT J
Page 5 of 10

will proceed as scheduled or as otherwise indicated by the Court in its Tentative Ruling.

9. Law and Motion: Pursuant to Local Rule 2.30, et seq., this case is assigned to the department for all purposes. This department shall hear all law and motion matters.

10. Reserving Hearing Dates. Hearing dates for all motions must be reserved in advance **by emailing this department** at Dept23@saccourt.ca.gov. The requesting party shall meet and confer with all other parties to identify mutually agreeable dates for the hearing before emailing this department with the hearing reservation request. The requesting party shall copy all parties on the email to the Court. The email shall include the following information: (1) the case number; (2) the type of motion; and (3) at least three Friday dates at 9:00 a.m. that work for all parties. A motion filed without a reserved hearing date will be rejected.

11. Informal Discovery Conferences under Code of Civil Procedure section 2016.080 ("IDCs"): The Court strongly encourages parties to request an IDC with the Court before reserving a hearing date for any discovery motion. The Court requires civility and cooperation in scheduling an IDC, including by agreeing to extend the time to file a discovery motion to allow time for an IDC. If a discovery motion is filed without scheduling an IDC, it is likely that the Court will order one before hearing the motion. During an IDC, the Court will meet informally with the parties to try to resolve the dispute. The process is designed to benefit all parties by saving costs and avoiding delay. The following procedures apply to IDCs:

a. Counsel must complete all meet and confer obligations either in person, by phone, or by video conference at least one week before scheduling a discovery conference.

b. To schedule an IDC, the prospective moving party must contact the department clerk **by email** at Dept23@saccourt.ca.gov. The email shall copy all parties and include a meet-and-confer declaration as described in Code of Civil Procedure section 2016.040. The prospective party, after having conferred with the opposing party, shall advise the Court of the court dates and

times in the next 30 calendar days when all concerned parties are available for a Zoom conference. Counsel and/or parties with full authority to resolve the discovery issue(s) must appear at the IDC unless excused by the Court. The Court will issue a Minute Order advising counsel of the time and date of the Zoom conference.

c. At least five court days before the IDC, the requesting party must file and serve an IDC declaration *limited to three pages*. The declaration must include a brief summary of the disputed discovery. At least two court days before the IDC, the responding party shall file and serve an IDC response *limited to three pages* briefly summarizing the basis of its position. The parties shall email a courtesy copy of their respective IDC submissions to the assigned department on the same day their submission is filed and served.

d. No additional documents shall be attached to any IDC statement or response except a privilege log. Where privilege is a basis for refusal to produce documents, a privilege log must be provided.

e. Unless otherwise indicated by the Court, the minute order granting an IDC will toll the deadline for filing the discovery motion. The deadline shall be tolled until such time as the Court issues a direction or order setting a new deadline for filing a discovery motion.

f. The Court will not tolerate efforts by the parties to rely on IDCs to resolve every minor discovery dispute that should otherwise be resolved through good faith meet and confer efforts. Should any party abuse the IDC process, the Court will consider issuing sanctions under California Code of Civil Procedure section 2023.010, et seq.

12. Discovery Disputes during Depositions: If a dispute arises during a deposition that requires judicial input, the parties are to contact the Court immediately via the department

telephone number at (916) 874-5754. If the parties cannot reach Judge Talley through Dept. 23, the parties may contact Dept. 22 at (916) 874-5762.

13. Filings: All filings shall be filed at the Civil Filing Counter located in the Gordon D. Schaber County Courthouse, 720 9th Street, Room 102, Sacramento, CA 95814 or placed in a Gordon D. Schaber Civil Drop Box, with courtesy copies delivered directly **via email** to Dept23@saccourt.ca.gov .

14. Typical Case Progress:

a. After the initial CMC or a subsequent CMC, the Court may or may not issue a formal *Case Management Order* ("CMO"). In lieu of a formal CMO, the Court may issue Minute Orders after CMCs addressing Case Management topics. The breadth of such orders may vary depending upon factors such as the complexity of the case and other circumstances. The Court may issue subsequent CMOs potentially addressing topics such as discovery cut-offs, phased discovery, disclosure dates, timing of private mediation, timing of class certification motions, etc. In some cases, CMOs may be proposed by an appointed Special Master or referee with Case Management authority.

b. Pursuant to the Presiding Judge's Notice and Order of Complex Case Determination, this Court is the trial department for this case. This Court remains the trial court unless subsequently ordered otherwise. In rare instances, a case may be transferred to Department 47 for assignment to a different trial department if this Court has scheduling conflicts due to another trial or otherwise is unable to proceed with trial.

c. The Court will schedule a Trial Setting Conference at which time a precise trial date shall be set in this department. The Court will issue a *Complex Trial Setting Order* ("TSO") which shall set the Mandatory Settlement Conference in Department 59, a Final Status Conference, a Final Pre-Trial Conference, and

the trial date. The TSO shall also address deadlines for trial-related tasks and filings, including motions in limine, witness and exhibit lists, proposed jury instructions, jury questionnaires, etc.

15. The following interim orders shall be in effect:

a. Plaintiff(s) shall diligently locate and serve each defendant. It is the Court's intention, by this order, that all parties shall be served in sufficient time to have made an appearance within the time allowed under law prior to attending the first CMC.

b. Counsel shall continuously ensure that they have no legal conflicts of interest as to any present or anticipated parties so that counsel may participate fully in the CMC and this case.

16. The Court strongly encourages the parties to engage in early and meaningful alternative dispute resolution.

17. Uncivil or unprofessional behavior will not be tolerated. The Court expects the parties to be familiar with and follow the California Guidelines of Civility and Professionalism (available at https://www.saccourt.ca.gov/local-rules/docs/guidelines-civility-professionalism.pdf) and the Sacramento County Bar Association Standards of Professional Conduct (available at https://www.saccourt.ca.gov/local-rules/docs/standards-professional-conduct.pdf). The Court expects parties to resolve all disputes regarding scheduling or time extensions without the necessity of Court involvement.

**IT IS SO ORDERED.**

Dated: 03/14/2024 By: Jill Talley

Jill H. Talley / Judge

JUDGE OF THE SUPERIOR COURT

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SACRAMENTO | Reserved for Clerk's File Stamp<br><br>FILED<br>Superior Court of California<br>County of Sacramento<br>03/14/2024<br>T. Shaddix, Deputy |
|---|---|
| COURTHOUSE ADDRESS:<br>Gordon D. Schaber Superior Court<br>720 Ninth Street, Sacramento, CA 95814 | |
| PLAINTIFF/PETITIONER:<br>Teniah Tercero et al | |
| DEFENDANT/RESPONDENT:<br>Sacramento Logistics LLC, a Delaware Limited Liability Company et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV002889 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of CMC and Orders Re Complex Case Management Procedures D.23 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Sacramento, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Zachary Miles Crosner
Crosner Legal, P.C.
9440 Santa Monica Blvd
Ste 301
Beverly Hills, CA 90210

Dated: 03/14/2024 By: /s/ T. Shaddix
T. Shaddix, Deputy Clerk

# CERTIFICATE OF SERVICE

*Teniah Tercero, vs. Sacramento Logistics LLC, et al.*

I, Michael Folger, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 600 Montgomery Street, Suite 3100, San Francisco, CA 94111-2806. On March 27, 2024, I served a copy of the within document(s):

**DEFENDANT SACRAMENTO LOGISTICS LLC AND SPECIALLY APPEARING DEFENDANTS C&S LOGISTICS OF SACRAMENTO TRACY AND C&S WHOLESALE GROCERS, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION**

☑ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☑ by transmitting via e-mail or electronic transmission the document(s) listed above to the e-mail address(es) set forth below on this date and the transmission was reported as complete and without error.

| | |
|---|---|
| JAMIE K. SERB, ESQ.<br>jamie@crosnerlegal.com<br>BRANDON BROUILLETTE, ESQ.<br>bbrouillette@crosnerlegal.com<br>ZACHARY M. CROSNER, ESQ.<br>zach@crosnerlegal.com<br>**CROSNER LEGAL, PC**<br>9440 Santa Monica Blvd. Suite 301<br>Beverly Hills, CA 90210<br>Tel: (866) 276-7637<br>Fax: (310) 510-6429 | *Attorneys for Plaintiff*<br>TENIAH TERCERO, As an individual and on behalf of all other similarly situated Class Members |

I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after

date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. Executed on March 27, 2024, at San Francisco, California.

Michael Folger

Michael Folger