**BAKER & HOSTETLER LLP**
Matthew C. Kane, SBN 171829
Amy E. Beverlin, SBN 284745
Kerri H. Sakaue, SBN 301043
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4508
Telephone:   310.820.8800
Facsimile:   310.820.8859
Emails:   *mkane@bakerlaw.com*
          *abeverlin@bakerlaw.com*
          *ksakaue@bakerlaw.com*

**BAKER & HOSTETLER LLP**
Sylvia J. Kim, SBN 258363
Transamerica Pyramid
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile: 415.659.2601
Email:    *sjkim@bakerlaw.com*

Attorneys for Defendants SACRAMENTO LOGISTICS LLC and C&S
WHOLESALE GROCERS, LLC and *Specially Appearing* Defendant C&S
LOGISTICS OF SACRAMENTO/TRACY LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TENIAH TERCERO, as an individual and on behalf of all other similarly situated Class Members,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company; C&S LOGISTICS OF SACRAMENTO/TRACY LLC, a Delaware Limited Liability Company; C&S WHOLESALE GROCERS, LLC, a Delaware Limited Liability Company; and DOES 1-100, inclusive,<br><br>　　　　　Defendants. | CASE NO. 2:24-cv-00953-MCE-JDP<br><br>**DECLARATION OF KRISTA GUADJE IN SUPPORT OF DEFENDANTS SACRAMENTO LOGISTICS LLC'S AND C&S WHOLESALE GROCERS, LLC'S MOTION TO COMPEL INDIVIDUAL ARBITRATION OF PLAINTIFF'S CLAIMS AND TO STAY ALL PROCEEDINGS PENDING RESOLUTION OF THE MOTION AND/OR COMPLETION OF ARBITRATION**<br><br>**Date:      July 11, 2024**<br>**Time:      10:00 a.m.**<br>**Crtrm.:   7, 14th Floor**<br>**Judge:    Hon. Morrison C. England, Jr.** |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## DECLARATION OF KRISTA GAEDJE

I, KRISTA GAEDJE, declare as follows:

1.      I have personal knowledge of the facts and matters set forth in this declaration and could and would testify competently and truthfully to the same if called as a witness and placed under oath.  I am over 18 years of age.

2.      I am a Talent Acquisition Manager for C&S Wholesale Grocers, LLC ("C&S").  I have worked at C&S since approximately May 2021 and have held my current position since April 2022.  I previously worked for C&S as an Associate Recruiter, a Talent Acquisition Manager, and a Senior Recruiter from approximately March 2017 through approximately November 2020.

3.      In my capacity as a Talent Acquisition Manager, and in the normal course and scope of my duties, I am responsible for overseeing, among other things, the processes for and implementation of workplace policies and procedures with respect to recruiting, hiring, and on-boarding of candidates for employment with C&S and its subsidiary entities as well as documentation provided to and by C&S and its subsidiaries by and to their respective employee candidates and new hires.  In addition, as a Talent Acquisition Manager, I have general knowledge regarding (a) C&S's corporate operations and operating structure hierarchy, including its operating subsidiary entities, and (b) C&S's and each of its operating subsidiary's respective organizations, managers, and/or officers, including where they perform various executive functions to direct, control, and coordinate their respective operations.

4.      In the normal course and scope of my duties, I also have access to, and regularly do access, personnel and employment-related documents and information related to individuals who applied for employment with, or are or were previously employed by, C&S and/or its operating subsidiaries, including but not limited to Sacramento Logistics LLC ("Sacramento").  I also have

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

access to, and regularly do access, other corporate and business records related to the foregoing topics. I am also familiar with the way in which these records are created and maintained. Personnel documents and other employee records are maintained in the ordinary course of C&S's and its subsidiary entities' businesses and reflect true and correct copies of documents created or acknowledged by employees or other persons with a business duty to do so, with personal knowledge of the records or events stated therein, and at or near the time of the events reflected therein, including me.

**Defendants**

5.    C&S is a nationwide supply chain services and wholesale grocery supply company that, through its operating subsidiary entities, supplies grocery products to more than 6,000 independent supermarkets, chain stores, military bases and institutions throughout the United States. C&S owns several operating subsidiary entities that own and/or operate warehouses and office locations throughout the United States, including in California, Louisiana, and Pennsylvania. Sacramento is one such operating subsidiary.

6.    Sacramento is organized under the laws of Delaware and maintains its corporate headquarters and principal place of business in Keene, New Hampshire. At all times relevant to this action, Sacramento has operated the C&S facility located in Sacramento, California, and has employed the personnel who work at that facility and who make sales of and deliver grocery products to Sacramento's grocery customers in California. Certain of the products delivered to such customers from Sacramento's facility originate from suppliers outside of California.

7.    C&S Logistics of Sacramento/Tracy LLC ("C&S Logistics") is also another subsidiary of C&S. It is organized under the laws of Delaware and maintains its corporate headquarters and principal place of business in Keene, New Hampshire. C&S Logistics is a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF KRISTA GAEDJE

wholesale distributor.  However, it does not maintain any operations in California and does not employ any personnel in California.

### Plaintiff's Employment with Sacramento

8.     I have access to, and have accessed and reviewed for purposes of making this declaration, Sacramento's business information and records, including personnel records, pertaining to Plaintiff Teniah Tercero ("Plaintiff"), including documents maintained in and/or submitted by Plaintiff to Sacramento through Workday, which is a human resources management software platform utilized by C&S and its subsidiary entities, including Sacramento.  According to those personnel records, in or around June 2021, Plaintiff applied to work at Sacramento as an order selector and began working for Sacramento in that position on or about July 13, 2021.

9.     At all times during the application process and her employment with Sacramento, Plaintiff's email address on file with Sacramento was laar926@gmail.com.    Plaintiff's employment with Sacramento was terminated in or around May 2022.

### C&S's Application Process

10.     In my capacity as a Talent Acquisition Manager, and in the normal course and scope of my duties, I am familiar with the documentation provided to and by C&S and its subsidiaries by and to their respective prospective and newly-hired employees in the course of their recruitment, hiring, and on-boarding those individuals.  As noted above, C&S and its subsidiaries, including Sacramento, use Workday in the regular course of their business.   Among other functions, the Workday system allows candidates to electronically manage their employment applications and newly-hired employees to electronically manage their on-boarding process. Through the Workday system, candidates can submit their employment applications and can receive, review, and acknowledge documents (such as company policies, procedures, and other

DECLARATION OF KRISTA GAEDJE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

employment-related paperwork) in connection with their application to, and subsequent on-boarding with, C&S or any of its subsidiaries, including Sacramento. An individual's application for employment, their electronic communications with C&S and/or its subsidiaries, and their documents electronically acknowledged or signed through the Workday system are accessible by the candidate and certain recruiting and human resources personnel, including me, through the Workday system.

11.     C&S and its subsidiaries have a substantial interest in the accuracy of their Workday records because, among other reasons, the records stored in and/or received through the Workday system are one of the ways in which C&S and its subsidiaries can verify that their respective candidates or employees have: (i) received the documents and information presented in the application, hiring, and onboarding processes; (ii) provided certain information required for human resources and payroll purposes; and (iii) agreed to abide by various workplace rules and policies. As with other personnel and employment-related documents of employees of C&S and its subsidiaries, the documents and records maintained in and/or received through the Workday system are maintained in the ordinary course of C&S's and its subsidiaries' business and reflect true and correct copies of documents created or acknowledged by employees or other persons with a business duty to do so, with personal knowledge of the records or events stated therein, and at or near the time of the events reflected therein.

12.     Individuals applying for initial employment with C&S or any of its subsidiaries, including Sacramento, must submit their employment application through the Workday system. Open positions are posted to C&S's corporate website, careers.cswg.com. When a candidate identifies a job to which they want to apply, they click the "Apply" button on the C&S corporate website, which takes them to a log-in page for the Workday system's online platform. A true and correct screenshot of the log-in page for Workday's online platform accessible from careers.cswg.com is below:

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

13.    To access the Workday system to apply for employment with C&S or any of its subsidiaries, including Sacramento, candidates are required to create a Workday account using their personal email address and a unique password. By creating their own unique password, each candidate has their own unique user account and applicant profile on the Workday system, with their personal email address and a unique password as their log-in credentials. Candidates and employees can only access their Workday system candidate webpage and profile by entering their username (*i.e.*, personal email address) and unique password. Neither C&S nor its subsidiaries have access to a candidate's or an employee's unique Workday password. Additionally, C&S and its subsidiaries are neither permitted nor able to reset a candidate's or an employee's unique Workday system password.

14.    After they have created their Workday system user account and log into that account using their email address and unique password, individuals who clicked the "Apply" button on the C&S corporate website are presented with an online Workday application. The online Workday employment application contains screening questions, an initial assessment, and

Baker & Hostetler llp
Attorneys at Law
Los Angeles

questions regarding a candidate's prior work history.  A candidate's responses to these questions are reflected in their Workday system records.  Individuals can complete and submit the online Workday application through their Workday system user account.

15.     When a candidate logs back into the Workday system's online platform using their email address and a unique password after having submitted their online Workday employment application, they are taken to their Workday system homepage or "dashboard," which has various sections with clickable links, including sections titled "My Tasks," "My Applications," and "My Account."  Candidates who have completed and submitted an online Workday employment application can check on the status of their application under the "My Applications" section of their Workday system dashboard.

16.     A recruiter is assigned to review and screen each submitted employment application and manage the candidate's application process.  Candidates that meet the job requirements for an open position are moved to the "Interview" stage of the application process by their assigned recruiter.  At this time, they are asked to participate in an interview and/or attend an onsite tour of the facility at which they have applied for the position.  Certain facilities may also permit candidates to participate in a physical job simulation as part of their onsite tour.  During an onsite simulation, candidates perform some of the physical tasks that will be required of the position to which they have applied.  Candidates are required to review and acknowledge a Warehouse Tour and Physical Job Simulation Waiver prior to participating in an onsite simulation.   A true and correct copy of the Warehouse Tour and Physical Job Simulation Waiver (the "Waiver") is attached hereto as **Exhibit A**.  Candidates must review and acknowledge the Waiver through the Workday system.

17.     If the C&S subsidiary entity hiring for the position decides to extend an offer of employment to a candidate after their interview and/or onsite interview and/or simulation, the recruiter makes a verbal offer of employment to the candidate.  Candidates who accept the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF KRISTA GAEDJE

recruiter's verbal offer of employment are advanced by the recruiter to the "Background Check" stage of the employment application process in the Workday system.   At the Background Check stage, candidates are required to complete a background check through a third-party vendor.  At this stage in the application process, candidates are also assigned three tasks by their recruiter via the Workday system that they must complete:  (1) they must enter their social security number; (2) they must enter their date of birth; and (3) they must review and agree to C&S's Mutual Arbitration Agreement Regarding Wage & Hour Claims (the "Arbitration Agreement").

18.    Tasks assigned to candidates during the application process – like the Arbitration Agreement and Waiver review tasks – are listed in the "My Tasks" section of the candidate's Workday system dashboard, and a header instructs candidates to "follow the link to complete" their pending tasks.  The Workday system also sends an automated email to a candidate's personal email address informing them when they have tasks to complete in the system and providing them with a clickable link to go to the Workday system online platform.  Additionally, the C&S recruiter assigned to a candidate's employment application may also send a similar email to the candidate's personal email address through the Workday system or via Outlook or Gmail (as applicable) from the recruiter's company email address.  A candidate's Workday system records will reflect all communications sent to that candidate from a C&S recruiter through the Workday system as well as all automated communications sent to that candidate from the Workday system.

19.    Once a candidate has logged into Workday using their unique log-in credentials to view their assigned tasks, they will see any pending tasks listed in the "My Tasks" section of their Workday system dashboard.   Each assigned task is separately listed in the "My Tasks" section. The following is a true and correct screenshot of an exemplar of how uncompleted tasks are presented and appear to candidates on their Workday system dashboard:

[IMAGE ON NEXT PAGE]

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES



20.    As I noted above, candidates applying to certain facilities, including Sacramento, are required to review and acknowledge a Warehouse Tour and Physical Job Simulation Waiver (the "Waiver") prior to participating in an onsite simulation.  The Waiver is a "task" automatically assigned to applicable candidates through the Workday System when they are advanced by a recruiter to the Interview stage of the application process.  When the task is assigned to the candidate, the Workday system sends an automated email to a candidate's personal email address informing them when they have tasks to complete in the system and providing them with a clickable link to go to the Workday system online platform.  Upon logging into the Workday system, the candidate sees a "Review Documents" task listed in the "My Tasks" section of their Workday system homepage.

21.    To begin this "Review Documents" task, the candidate must click the blue "Review" button in the "My Tasks" section of their Workday system homepage.  Upon clicking "Review," the candidate is presented with a new screen that instructs them to "Please read and acknowledge the waiver prior to entering the facility for your job simulation and tour."  The following is a true and correct screenshot exemplar of that screen with which candidates are first presented upon selecting "Review" for the Waiver-related "Review Documents" task in the Workday system:

8

22. The candidate can click on the blue file name hyperlink to view the Waiver in its entirety. *See* Exh. A, *supra*. Candidates who click on the blue file name hyperlink are presented with the Waiver on a single screen, and they can scroll through the Waiver document to review it. Candidate must select the checkbox under the words "I Agree" to acknowledge their acceptance and understanding of the terms of the Waiver and then click the blue "OK" button at the bottom of the screen to complete the "Review Documents" task. Candidates are also able to leave comments in the "Comment" box prior to clicking the blue "OK" button. Upon clicking the "OK" button, candidates are returned to their Workday system dashboard to await further instructions

9

from the recruiter assigned to manage their candidacy.

23.    Similarly, to begin the "Arbitration Agreement" task, the candidate must click the "Review" button in the "My Tasks" section of their Workday system homepage. Upon clicking "Review," the candidate is presented with a new screen that instructs them to "Please read and understand the attached document. Once read please acknowledge below." The following is a true and correct screenshot exemplar of that screen with which candidates are first presented upon selecting "Review" for the "Arbitration Agreement" task in the Workday system:

24.     Candidates can click on the blue file name hyperlink to review the Arbitration Agreement document in its entirety. A true and correct copy of the Arbitration Agreement in effect for candidates applying for employment with Sacramento in July 2021 through Workday is attached hereto as **Exhibit B**. Candidates who click on the blue file name hyperlink are presented with the Arbitration Agreement document on a single screen, and they can scroll through the Arbitration Agreement to review it. Candidates are not required to review the Arbitration Agreement within any particular time frame, and they have the ability to print out a copy of the Arbitration Agreement if they choose to do so. After reviewing the Arbitration Agreement, the candidate must select the checkbox under the words "I Agree" to acknowledge their receipt, understanding, and agreement to the Arbitration Agreement and then click the blue "OK" button at the bottom of the screen to complete the "Arbitration Agreement" task. Candidates are also able to leave comments in the "Comment" box prior to clicking the blue "OK" button. Upon clicking the "OK" button, candidates are returned to their Workday system dashboard to await further instructions from the recruiter assigned to manage their candidacy.

25.     In order to further advance past the Background Check stage, a candidate must complete the social security number, date of birth, and Arbitration Agreement tasks. Only once all tasks assigned to the candidate at the Background Check stage have been completed can the candidate be hired into Workday and onboarded by C&S or the hiring subsidiary entity. If the social security number, date of birth, and Arbitration Agreement tasks are not completed by the candidate, they cannot be hired by and will not be given a start date with the C&S subsidiary entity hiring for that position.

### Plaintiff's Employment Application & Arbitration Agreement

26.     For purposes of making this declaration, I have accessed and reviewed Plaintiff's candidate records and application history in the Workday system. Attached hereto as **Exhibit C** is a true and correct copy of an audit trail that I generated in Workday, which logs all actions taken

by Plaintiff and by the recruiter assigned to her employment application with respect to Plaintiff's application for employment with Sacramento.

27.    Plaintiff's Workday system records reflect that, on June 3, 2021, Plaintiff created a Workday system user account using her personal email address laar926@gmail.com and a unique password that she created.  *See* Exh. C, *supra*.  Plaintiff's Workday records further reflect that, also on June 3, 2021, Plaintiff submitted a completed online Workday employment application to Sacramento through the Workday system.  A true and correct copy of Plaintiff's Workday system records reflecting her application-related submissions to Sacramento and other application-related activity in the Workday system is attached hereto as **Exhibit D**.

28.    Plaintiff's Workday system records reflect that, on or about June 28, 2021, Plaintiff accepted an invitation to take an onsite tour of and participate in an onsite simulation at Sacramento's facility in Sacramento, California.  Her Workday system records further reflect that, on July 4, 2021, at approximately 12:19 p.m., Plaintiff acknowledged and agreed to the Waiver. A true and correct copy of Plaintiff's Workday system records reflecting her completion of pre-application tasks that required her affirmative agreement or acknowledgment, including the Waiver, are included within Exhibit D (p. 6).  *See also* Exh. C (p. 2), *supra*.  As stated above, Plaintiff could only have accessed the screen on which she was presented with and electronically signed the Waiver by first logging into the Workday system using her personal email address and unique password and by selecting the "Review Documents" task from her Workday system dashboard.  Additionally, Plaintiff's Workday system records would only reflect that she had completed the "Review Documents" task if she had electronically signed the Waiver by clicking the box under the words "I Agree" and then clicking "OK" within the "Review Documents" task to complete that task.  Plaintiff's Workday system records do not reflect that she included any comments when she electronically signed the Waiver in the system.

29.    Plaintiff's Workday system records reflect that, on or about July 6, 2021, Plaintiff

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF KRISTA GAEDJE

attended an onsite interview at Sacramento's facility in Sacramento, California.  *See* Exh. D, p. 5.

30.    Chyna Sheppard, who is and was at all relevant times an employee in C&S's Talent Acquisition department, was the recruiter assigned to Plaintiff's application for employment. Plaintiff's Workday system records reflect that, on July 7, 2021, after Plaintiff had completed her interview with and on-site simulation at Sacramento, Ms. Sheppard advanced Plaintiff to the Background Check stage of the application process.  *See* Exh. C (p. 2), *supra*.

31.    On that same date (July 7, 2021), Ms. Sheppard sent an email to the personal email address that Plaintiff provided when creating her Workday system account (laar926@gmail.com) informing her that she had tasks to be complete "[i]n order to move forward in the officer process for the Order Selector Sacramento GMD position."  Ms. Sheppard's email instructed Plaintiff to "complete [her] Date of Birth and Social Security Number action items located under [her] profile" in the Workday system.   Candidates are assigned the "Arbitration Agreement" task at this same time, and thus, Plaintiff was also assigned an "Arbitration Agreement" task via the Workday system when she was assigned the "Date of Birth" and "Social Security Number" tasks.  Below is a true and correct screenshot that I took of Plaintiff's Workday system records reflecting Ms. Sheppard's communication history with Plaintiff during her candidacy and the text of the email that Ms. Sheppard sent to Plaintiff's personal email address on July 7, 2021:

32.     Plaintiff's Workday system records reflect that, on July 7, 2021, the system also sent an automated email message to Plaintiff at the personal email address that she used to create her unique Workday account (laar926@gmail.com), which similarly instructed her that she had pending tasks to complete.

33.     As discussed above, when a candidate logs into Workday using their unique log-in credentials, they will see any pending tasks listed in the "My Tasks" section of their Workday dashboard. As such, when Plaintiff logged into Workday in response to Ms. Sheppard's July 7, 2021 email and/or the Workday system's July 7, 2021 automated email to view her pending tasks, she would have seen three tasks listed in the "My Tasks" section of her Workday dashboard: (1) "Social Security Number"; (2) "Date of Birth"; and (3) "Arbitration Agreement." As further discussed above, to complete the "Arbitration Agreement" task from her Workday dashboard, for example, Plaintiff had to start the task by clicking the "Review" button, click a box to record her agreement to the Arbitration Agreement, and click the blue "OK" button to complete the "Arbitration Agreement" task.

34.     Plaintiff's Workday system records reflect that, on July 7, 2021, at approximately 5:19 p.m., Plaintiff completed the "Arbitration Agreement" task in Workday. Plaintiff's Workday system records reflecting her completion of pre-application tasks that required her affirmative agreement or acknowledgment, including the "Arbitration Agreement" tasks, are included within Exhibit D (p. 7) attached hereto. *See also* Exh. C (p. 2), *supra*. As stated above, Plaintiff could only have accessed the screen on which she was presented with and electronically signed the Arbitration Agreement by first logging into the Workday system using her personal email address and unique password and by selecting the "Arbitration Agreement" task from her Workday system dashboard. Additionally, Plaintiff's Workday system records would only reflect that she had completed the "Arbitration Agreement" task if she had electronically signed the Arbitration Agreement by clicking the box under the words "I Agree" and then clicking "OK" within the "Arbitration Agreement" task to complete that task. Plaintiff's Workday system records do not

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

14

reflect that she included any comments when she electronically signed the Arbitration Agreement task in the system.

35.     Plaintiff's Workday system records reflect that Plaintiff was deemed "ready for hire" on or about July 7, 2021, *see* Exh. C (p. 3), *supra*, and that she began working for Sacramento as an order selector on or about July 13, 2021.  As discussed above, Plaintiff would only have been hired by and able to onboard with Sacramento – and thus able to start working for Sacramento – after she completed the "Social Security Number," "Date of Birth," and "Arbitration Agreement" tasks through the Workday system.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on _____5/31/2024 | 7:19 AM EDT_____, at Keene, New Hampshire.


_____
KRISTA GAEDJE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT A

| C&S Family of Companies |
| --- |

# Warehouse Tour and Physical Job Simulation
# Assumption of Risk Release/Waiver of Liability

**THIS DOCUMENT INCLUDES A WAIVER OF YOUR LEGAL RIGHTS. PLEASE READ IT CAREFULLY BEFORE ACCEPTING.**

In connection with my voluntary application for employment as a warehouse selector, I may take a tour of the Company's facility.  In addition, if I so choose, I may voluntarily participate in a physical job simulation in which I perform some of the physical tasks of a warehouse selector.  I understand that these tasks include lifting heavy objects and setting them down.  I further understand that the risks of injury and illness from the tour and physical job simulation are significant.  Examples of possible injuries include scratches, bruises, sprains, eye injury, joint or back injury, heart attacks, paralysis, and death.  Examples of possible illnesses include communicable diseases such as MRSA, influenza, and COVID-19. I KNOWINGLY AND FREELY ASSUME ALL SUCH RISKS, both known and unknown, EVEN IF ARISING FROM THE NEGLIGENCE OF THE RELEASEES (defined below) or others, and assume full responsibility for my participation.

I, on behalf of myself and my family, heirs, administrators, executors, representatives and assigns, hereby release, discharge and waive any and all claims, actions, suits, procedures, costs, expenses, damages, and liabilities ("Claims") against the Company and its corporate affiliates, parents, subsidiaries, and its and their employees, agents, officers, directors, owners and insurers ("Releasees"), relating to or arising out of my participation the tour and the physical job simulation, WHETHER ARISING FROM THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE, to the fullest extent permitted by law.  The released, discharged, and waived Claims include but are not limited to claims for personal injury, accidents, or illnesses (including death), and property loss, as well as attorney's fees associated with such Claims.  Provided, however, that this agreement shall not apply to any Claims that by law may not be waived or released or for which any waiver or release is null and void.

I also agree not to file or pursue any Claims against Releasees related to the tour or the physical job simulation, provided, however, that nothing in this agreement shall be construed to prohibit me from filing a charge with or participating in any investigation or proceeding by the EEOC, NLRB, or similar state or local agency, although, regardless, I agree that I am unconditionally and permanently waiving any right to recover any and all monetary damages by means of any such Claim or other means, whether filed or initiated by me or any other person or entity on my behalf.  I further agree to hold harmless, defend and indemnify any of the Releasees relating to any and all Claims against any of them relating to or arising from my participation in the tour and/or the physical job simulation.

I also understand that I am not an employee of the Company and that, although during the tour I may observe Company employees in the performance of their job duties, such observation is purely for my own information and benefit, and I will provide no services to the Company.  I further understand that the physical job simulation is also purely for my own information and benefit, and does not constitute services to the Company.

I understand and agree that this agreement shall be interpreted and enforced exclusively in accordance with New Hampshire law.  If any portion of it shall be held invalid or unenforceable, all other terms and provisions shall remain in effect to the fullest extent permissible by law.

**I HAVE READ THIS AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY AGREEING TO IT, INCLUDING MY RIGHT TO SUE.  I ACKNOWLEDGE THAT I AM AGREEING TO IT FREELY AND VOLUNTARILY WITHOUT ANY INDUCEMENT.**

EXHIBIT A

EXHIBIT B

**MUTUAL ARBITRATION AGREEMENT REGARDING WAGE & HOUR CLAIMS**

1.     <u>Agreement to Arbitrate</u>.  You are applying for employment to C&S Wholesale Grocers, Inc. or one of its subsidiaries, which, together with its and their parents, subsidiaries, affiliates, successors and assigns, are intended beneficiaries under this Agreement, and are referred to herein as the "Company." In connection with your application and any subsequent employment, you and the Company agree to use binding arbitration, instead of going to court, for any Covered Claims that arise or have arisen between you and the Company.  **You understand that your new or continued employment with the Company is deemed to be acceptance of this Agreement to Arbitrate.**

The Covered Claims under this Agreement are the following statutory and common law legal claims, asserted or unasserted, brought by you against the Company (and/or the Company's customers), or brought by the Company against you: claims based on the failure to pay any wages, including minimum wage, straight time, overtime, bonuses, commissions, advances, paid time off, vacation pay, pay for sick leave or other forms of leave, expenses, loans, or any other element of compensation; claims based on eligibility for overtime (including the misclassification as an exempt employee) or the proper calculation of overtime; claims for recovery of overpayment of wages; claims based on off-the-clock work, meeting, training, or travel time, or other uncompensated hours worked; claims regarding the timing or amount of pay; claims based on payment or non-payment of accrued vacation, bonuses or other earned amounts due at separation of employment; claims regarding improper deductions from pay; claims regarding fees, commissions, bonuses, incentive payments or other amounts owed under law, policy or contract; claims for meal or rest periods; claims for failure to reimburse mileage or other business expenses; claims for failure to repay loans, tuition reimbursement, or advances; claims regarding failure to pay or provide sick leave, vacation, PTO or other leave benefits; claims regarding improper or inaccurate wage statements or notices or failure to issue statements or notices; claims for failure to maintain adequate records regarding hours, wages, vacation or leave balances; claims for statutory penalties related to hours or wages; claims regarding credit card or business expense misuse; and any other claimed violation of wage-and-hour practices or procedures under local, state or federal statutes, regulations, ordinances or common law.

**You understand and agree that arbitration is the only litigation forum for resolving Covered Claims, and that the Company and you are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration.**

The Arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to the law governing your Covered Claim(s).

2.     <u>Waiver of Class and Collective Claims</u>.  The Company and you also agree that Covered Claims will be arbitrated only on an individual basis, and that the Company and you waive the right to bring, participate in, join, or receive money or any other relief from any class, collective, or representative proceeding.  You may not bring a claim on behalf of other individuals, and any arbitrator hearing your claim may not: (i) without the consent of all parties, or as specifically provided in Section 7.iii., combine more than one individual's claim or claims into a single case; (ii) participate in or facilitate notification of others of potential claims; or (iii) arbitrate any form of a class, collective, or representative proceeding.

3.     <u>Excluded Claims</u>.  Covered Claims under this Agreement do **not** include: any claims alleging discrimination, harassment, retaliation, failure to accommodate, or other statutory or contractual claims under local, state or federal statutes, regulations, ordinances or common law not enumerated in Covered Claims.  Also excluded from this agreement are any claims that cannot be required to be arbitrated as a

EXHIBIT B

EXHIBIT B

matter of law.  You also understand that you are not barred from filing a claim or charge with a governmental administrative agency, such as the National Labor Relations Board or Equal Employment Opportunity Commission, or from filing a workers' compensation or unemployment compensation claim with respect to Covered Claims, though you are giving up the opportunity to recover monetary amounts from any such governmental agency (e.g., National Labor Relations Board or Equal Employment Opportunity Commission), and would instead be able to pursue a claim for monetary amounts through arbitration.  You also understand that if a third party seeks to have the Company garnish your wages, you may be subject to third-party garnishment proceedings in court, even though such a dispute concerns your wages.   The excluded claims in this Section 3, collectively, are defined as "Excluded Claims" for purposes of this Agreement.

4.    <u>Enforcement.</u>    In the event the Company or you choose to pursue both Covered Claims and Excluded Claims, Covered Claims must be arbitrated and Excluded Claims must be litigated in court. Covered Claims may be joined with Excluded Claims and litigated in court, and Excluded Claims may be joined with Covered Claims and arbitrated, only if the non-asserting party agrees; however in no event will there be arbitration of any form of a class, collective, or representative proceeding.  Any failure to enforce any part of this Agreement at any time shall in no way affect the right to enforce same at a later time against the same or any other party or any current or future claim.

5.    <u>At-Will Employment Unchanged by this Agreement.</u>   Nothing in this Agreement changes your relationship with the Company of employment-at-will.

6.    <u>Internal Dispute Resolution</u>.  The Company and you value our working relationship, and we would prefer to address and resolve concerns through normal workplace channels before resorting to arbitration.  Arbitration is intended to be a last resort.  If you have a concern, you are encouraged to contact your manager or a human resources representative, or take advantage of any hotline or complaint initiation processes available to you.   The Company will investigate, and should your concerns be substantiated, the Company will meet with you to discuss proposed resolutions.   In this way, the Company's goal is to offer a speedy, efficient, informal and inexpensive way to resolve your underlying concerns that may give rise to a Covered Claim.  If you are dissatisfied with the investigation results, you may provide the Company with an arbitration demand for a Covered Claim as described in Section 7.

7.    <u>How to File for Arbitration</u>.  To file a demand for arbitration:

i.    The party desiring to pursue a legal dispute must prepare a written demand setting forth the claim(s).  If you wish to initiate arbitration, you must email or prepare a written demand to your HR representative that describes the nature of the claims/dispute, a summary of the facts supporting your claim, and the relief sought.   You are encouraged but not required to use the attached Demand for Arbitration Form.  Upon receipt, the Company will follow up with you about your payment of your portion of the filing fee, which, subject to Section 7.iii below, will be the lesser of $400 or the applicable federal or state court filing fee where you work(ed) for the Company.  Once your filing fee is received, the Company will submit the Demand for Arbitration Form and remaining fees to JAMS, the organization administrating this arbitration program.   If the Company is the party initiating arbitration, you will receive a Demand for Arbitration Form from the Company and have an opportunity to respond before the Company submits the Demand for Arbitration to JAMS, but you will not owe a filing fee.

ii.    Except as provided in Section 7.iii below, the JAMS Employment Arbitration Rules and Procedures effective at the time of filing will apply to Covered Claims.  The current version can be found here:

EXHIBIT B

http://www.jamsadr.com/rules-employment-arbitration/.  These rules are modified by the terms of this Agreement as follows:

a. **Interpretation of Arbitration Agreement.**  If a party violates this Agreement by commencing an action asserting a Covered Claim in a court of law, then the court shall not have the authority to resolve any disputes about the interpretation, formation, existence, enforceability, validity, and scope of the Agreement, including the Waiver of Class and Collective Claims.  Rather, all such disputes shall be resolved by the Arbitrator selected as described below.

b. **Costs.**  For Covered Claims, the Company will pay all costs that are unique to arbitration, including the Arbitrator's fees and the arbitration filing and administrative fees, other than the initial filing fee as described in Section 7.i.

c. **Location.**  The arbitration shall take place at a mutually convenient location within 50 miles from your residence at the time of the demand for arbitration, unless the parties mutually agree to an alternative location.

d. **Selecting an Arbitrator.**  If the organization administering the arbitration so permits, either party may nominate any person(s) for consideration as an arbitrator.  If the parties do not mutually agree on an arbitrator, a list of nine (9) neutral potential arbitrators will be submitted to the parties by the arbitration administrator.    From that list, the Company and you will each have the opportunity to strike up to three names and "rank" their preference for the remaining names, and the arbitration administrator shall select a neutral arbitrator that is highest ranked by both parties and not stricken by either party.

e. **Discovery.**    Due to the simplicity, informality, and expedited nature of arbitration proceedings, absent a showing of compelling need, the parties shall engage only in limited discovery, as follows:

   1)      Each party shall avoid broad or widespread collection, search, and production of documents, including electronically stored information ("ESI"). If compelling need is demonstrated by the requesting party, the production shall: (i) be narrowly tailored in scope; (ii) only come from sources that are reasonably accessible without undue burden or cost; (iii) be produced in a searchable format if ESI and which is usable by the receiving party and convenient and economical for the producing party; and (iv) not require electronic metadata. Where the costs and burdens of the requested discovery outweigh its likely benefit, considering the needs of the case, the amount in controversy, and the importance of the discovery in resolving the issues, the Arbitrator will deny such requests or order production on condition that the requesting party advance to the producing party the reasonable costs involved in making the production, subject to the allocation of costs in the final award.

   2)      Each party shall be entitled to only one interrogatory limited to the identification of potential witnesses, in a form consistent with Rule 33 of the Federal Rules of Civil Procedures ("FRCP").

   3)      Each party shall be entitled to only 25 requests for production of documents, including sub-parts, in a form consistent with Rule 34 of the FRCP.

   4)      Each party shall be entitled to a maximum of two (2) eight hour days of depositions of witnesses in a form consistent with Rule 30 of the FRCP.

f. **Arbitrator's Authority.**

   1)      The Arbitrator shall have the authority to award only such remedies as could be awarded by a court based upon the applicable statutes of limitations, administrative

EXHIBIT B

prerequisites to suit, and applicable substantive law (which may include injunctive or other equitable relief, as well as an award of attorneys' fees if permitted by law) based on where you work(ed) for the Company.

2)      The Arbitrator shall have the authority to issue an award or partial award without conducting a hearing on the grounds that there is no claim on which relief can be granted or that there is no genuine issue of material fact to resolve at a hearing;

3)      The Arbitrator shall decide all disputes related to discovery and to the agreed limits on discovery and may allow additional discovery upon a showing of substantial need by either party or upon a showing of an inability to pursue or defend certain claims without such additional discovery;

4)      For discovery purposes only, the Arbitrator may consolidate claims filed by multiple individual employees, each on their own behalf, in a single arbitration proceeding, or may conduct a joint hearing for discovery purposes, so long as the Arbitrator does not certify (conditionally or otherwise) a collective, class, or representative action that includes individuals who have not themselves already submitted their own individual claims;

5)      The Arbitrator must issue a decision in writing, setting forth in summary form the disposition of each claim and the relief, if any, awarded as to each claim, as well as the reasons for the Arbitrator's determination, including the legal basis for the determination and the essential findings and conclusions on which the determination is based; and

6)      The Arbitrator's authority shall be limited to deciding the case submitted by the parties to the arbitration. Therefore, no decision by any arbitrator shall serve as precedent in other arbitrations except to preclude the same claim from being re-arbitrated between the same parties.

iii.    If your claim is one of greater than 30 individual employment-related arbitration claims of a nearly identical nature demanded against the Company in close proximity to one another, the Company may submit your demand with JAMS as provided above, or may submit your demand to a mutually agreed-upon Mediator at the Company's expense. You and the Company specifically agree that, to avoid the fees, costs and investment of time that would be required to arbitrate each of greater than 30 nearly identical arbitration demands at the same time, the Mediator first shall select between five and ten "test cases" to be arbitrated on an expedited basis through JAMS while the other cases stand by and will not be filed with any court, JAMS or any other arbitration administrator. No parties to the cases on "stand-by" shall be required to pay any arbitration or filing fees unless and until both: (a) the mediation process described below is concluded, and (b) individual stand-by arbitrations or court cases proceed. All statutes of limitations for the cases on stand-by shall be tolled during the stand-by period.

The test cases shall be heard and resolved as individual arbitrations pursuant to the provisions of Sections 7.i and 7.ii of this Agreement. The written decisions of the Arbitrator(s) of the test cases (see Section 7.ii.f.5 above) shall be provided to all parties to the test cases, all parties to the cases on stand-by, and the Mediator. All parties to the cases on stand-by then will participate in good faith in mediation before the Mediator. The Company shall bear the costs of the mediation.

You and the Company agree that if your case is a stand-by case and the mediation did not resolve it, both you and the Company have the right to opt out of the arbitration process and proceed in court, but only if: (a) your case is one of greater than one thousand (1,000) stand-by

EXHIBIT B

EXHIBIT B

cases; (b) the mediation has concluded; (c) the mediation fails to resolve your case and greater than one thousand (1,000) other stand-by cases; and (d) there has not yet been a hearing on the substance of your claim.  Otherwise, the parties to the stand-by cases may not opt-out of arbitration and shall proceed with individual arbitration if the mediation has concluded without resolving the case.  You and the Company also agree that if JAMS is for any reason unwilling or unable to administer arbitrations involving the Company on the basis described in this Section 7.iii, you and the Company will attempt in good faith to agree on an alternative arbitration administrator that will do so, and that if the parties cannot so agree, either party may petition a court to appoint a mediator or an arbitration administrator to carry out the parties' agreement in this Section 7.iii.

8.      <u>Confidentiality.</u>  Arbitration proceedings are private and confidential, and the parties and the Arbitrator shall be empowered to maintain the private and confidential nature of the arbitration proceeding, testimony, hearing and award.  The Arbitrator must allow persons to attend the hearing who have a direct role or interest in the hearing, but shall have the authority to safeguard privacy and confidentiality such as by excluding non-essential persons from the hearing, and by issuing orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.  This confidentiality provision shall not restrain or prohibit a party from investigating, preparing for, or presenting or defending against Covered Claims, and does not apply to a judicial challenge to or enforcement of an award, or to disclosures required or authorized by law or judicial decision.

9.      <u>Right to Representation</u>.  Each party to arbitration has a right to be represented by an attorney in arbitration.   Each party shall bear its own attorneys' fees, except as may be awarded in a matter authorized by and consistent with this Agreement and applicable law.

10.     <u>Settlement</u>.  The parties may settle any dispute on a mutual basis without involvement of the Arbitrator.

11.     <u>Amendment.</u>  The Company and you may enter into a revised agreement in writing.

12.     <u>Savings & Conformity Clause</u>.  If any provision of this Agreement is determined to be unenforceable or in conflict with a mandatory provision of applicable law, it shall be construed to incorporate any mandatory provision, or the unenforceable or conflicting provision shall be automatically severed and the remainder of the Agreement shall not be affected.  Provided, however, that if the Waiver of Class and Collective Claims is found to be unenforceable, then any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims.

13.     <u>Jury Trial Waiver for Matters Heard in Court.</u>  To the extent that, for whatever reason, either Covered Claims or disputes relating to the enforceability of this Agreement (such as pursuant to Sections 7.ii.a or 12) are heard in court rather than in arbitration, you and the Company both agree to waive any right to trial by jury, to the maximum extent permitted by applicable law based on where you work(ed) for the Company.

14.     <u>Opportunity to Review.</u>  You agree that you have received a reasonable opportunity to consider this Agreement, and you are hereby advised to consult with an attorney before indicating your agreement to it.  You have relied on your own informed judgment, or that of your attorney if any, in deciding to agree to the terms of this Agreement.

EXHIBIT B

EXHIBIT B

15.     <u>Controlling Law</u>.  You agree that this Agreement is made pursuant to and shall be governed under the Federal Arbitration Act.

By providing this Agreement to you, the Company agrees to and is bound by its terms.  Please reflect your agreement by following the designated protocols for electronic signature.

EXHIBIT B

EXHIBIT B

**Demand for Arbitration Form**

| | |
|---|---|
| Claimant Name: | |
| Work Location: | |
| Home Address: | |
| Phone: | Email: |
| Attorney Name & Firm Name: (if known) | |
| Atty Phone: | Atty Email: |

Nature of Claims/Dispute, Key Facts & Relief Sought:

_____     _____
             Signature                                              Date

EXHIBIT B



**View Job Application Event: Job Application:**
Teniah Tercero - R-232117 Order Selector
GMD (C198391) on 06/03/2021

EXHIBIT C

Page 1 of 3

| | |
|---|---|
| **For** | Teniah Tercero - R-232117 Order Selector GMD (C198391) |
| **Overall Process** | Job Application: Teniah Tercero - R-232117 Order Selector GMD (C198391) on 06/03/2021 |
| **Overall Status** | Successfully Completed |

### Details

**Candidate**    Teniah Tercero - R-232117 Order Selector GMD (C198391)

#### Contact

| | |
|---|---|
| **Email** | laar926@gmail.com |
| **Phone** | ██████3174 (Mobile) |

#### Attachments

fec3feef-82f8-41cf-ac7e-4604edca257a.pdfTerceroTeniah--Resume.doc

#### Latest Experience

Shopper/delivery
February 2016 - Current  (8 years, 4 months)
San Francisco
Going shopping for ppl and delivering

#### Education

Waseca mn
High School Diploma

#### Attachments

TerceroTeniah--Resume.doc

fec3feef-82f8-41cf-ac7e-4604edca257a.pdf

### Process
### Process History

| Process | Step | Status | Completed On | Due Date | Person (Up to 5) | All Persons | Comment |
|---|---|---|---|---|---|---|---|
| Job Application | Job Application | Step Completed | 06/03/2021 02:31:33 PM | | Teniah Tercero (251464) | 1 | |
| Job Application | Review Candidate | Completed | 06/03/2021 02:31:33 PM | | Recruiting System | 1 | |
| Job Application | Assessment | Completed | 06/03/2021 02:33:51 PM | | | 0 | |
| Interview | Interview | Automatic Complete | 06/28/2021 05:24:53 PM | | | 0 | |
| Interview | Candidate Self-Schedule Event | Not Required | | | | 0 | |
| Interview | Schedule Interview | Submitted | 06/28/2021 05:25:18 PM | 06/30/2021 | Chyna Sheppard (On Leave) (143342) | 1 | |
| Interview | Review Documents | Automatic Skip | 06/28/2021 08:27:53 PM | | | 0 | |
| Interview | Manage Interview Feedback by Primary Recruiter | Automatic Skip | 06/28/2021 08:27:53 PM | | | 0 | |
| Interview | Make Interview Decision | Step Completed | 06/28/2021 08:27:53 PM | | Chyna Sheppard (On Leave) (143342) | 1 | |

EXHIBIT C

EXHIBIT C



View Job Application Event: Job Application:
Teniah Tercero - R-232117 Order Selector
GMD (C198391) on 06/03/2021

Page 2 of 3

| Process | Step | Status | Completed On | Due Date | Person (Up to 5) | All Persons | Comment |
|---------|------|--------|--------------|----------|------------------|-------------|---------|
| Interview | Additional Interview | Automatic Complete | 06/28/2021 08:27:53 PM | | | 0 | |
| Interview | Candidate Self-Schedule Event | Not Required | | | | 0 | |
| Interview | Schedule Interview | Submitted | 06/28/2021 08:28:16 PM | 06/30/2021 | Chyna Sheppard (On Leave) (143342) | 1 | |
| Interview | Review Documents | Step Completed | 07/04/2021 12:19:44 PM | | Teniah Tercero (251464) (Candidate as Self) | 1 | |
| Interview | Manage Interview Feedback by Primary Recruiter | Automatic Skip | 07/07/2021 10:34:17 AM | | | 0 | |
| Interview | Make Interview Decision | Step Completed | 07/07/2021 10:34:17 AM | | Chyna Sheppard (On Leave) (143342) | 1 | |
| Background Check | Background Check | Submitted | 07/07/2021 10:34:25 AM | | Chyna Sheppard (On Leave) (143342) | 1 | |
| Background Check | Select Background Check Overall Status | Not Required | | | | 0 | |
| Background Check | Arbitration Agreement | Not Required | | | | 0 | |
| Background Check | Arbitration Agreement | Step Completed | 07/07/2021 05:19:38 PM | | Teniah Tercero (251464) (Candidate as Self) | 1 | |
| Background Check | Enter Your Date of Birth | Step Completed | 07/07/2021 05:19:54 PM | | Teniah Tercero (251464) (Candidate as Self) | 1 | |
| Background Check | Enter Your Social Security Number | Step Completed | 07/07/2021 05:23:41 PM | | Teniah Tercero (251464) (Candidate as Self) | 1 | |
| Background Check | To Do: Potential Duplicate Hire | Not Required | | | | 0 | |
| Background Check | Make Background Check Decision | Step Completed | 07/07/2021 08:21:39 PM | 07/09/2021 | Chyna Sheppard (On Leave) (143342) | 1 | |
| Background Check | To Do: End Contingent Worker Contract | Not Required | | | | 0 | |
| Background Check | Automatically Unpost Jobs | Not Required | | | | 0 | |
| Offer | Offer | Submitted | 07/07/2021 08:22:10 PM | | Chyna Sheppard (On Leave) (143342) | 1 | |
| Offer | To Do: Contingent Worker SSN and DOB | Not Required | | | | 0 | |
| Offer | Propose Compensation Offer/Employment Agreement | Completed | 07/07/2021 08:22:10 PM | 07/09/2021 | Chyna Sheppard (On Leave) (143342) | 1 | |
| Offer | Request One-Time Payment Offer/Employment Agreement | Completed | 07/07/2021 08:22:10 PM | 07/09/2021 | Chyna Sheppard (On Leave) (143342) | 1 | |

EXHIBIT C



Case 2:24-cv-00953-BC-JDP    Document 13-1    Filed 05/31/24    Page 27 of 37

| Process | Step | Status | Completed On | Due Date | Person (Up to 5) | All Persons | Comment |
|---------|------|--------|--------------|----------|------------------|-------------|---------|
| Offer | Consolidated Approval by Manager | Not Required | | | | 0 | |
| Offer | Generate Offer Letter | Not Required | | | | 0 | |
| Offer | Acknowledge Your Offer Letter | Not Required | | | | 0 | |
| Offer | Make Offer Decision | Step Completed | 07/07/2021 08:22:31 PM | | Chyna Sheppard (On Leave) (143342) | 1 | |
| Ready for Hire | Ready for Hire | Automatic Complete | 07/07/2021 08:22:31 PM | | | 0 | |
| Ready for Hire | Automatically Unpost Jobs | Not Required | | | | 0 | |
| Ready for Hire | Batch/Job: Decline Remaining Jobs | Not Required | | | | 0 | |
| Offer | Job Simulation Feedback Survey | Step Completed | 07/11/2021 12:39:32 PM | | Teniah Tercero (251464) (Candidate as Self) | 1 | |
| Offer | Automatically Unpost Jobs | Not Required | | | | 0 | |

Workday Proprietary and Confidential. For authorized use only.

EXHIBIT C

For: R-232117 Order Selector GMD

| | |
|---|---|
| Phone Number | ████3174 (Mobile) |
| Email | laar926@gmail.com |

| | |
|---|---|
| Role [Singular] | Teniah Tercero (Terminated) (251464) |
| Linked Pre-hire | |
| Email | laar926@gmail.com |
| Phone Number | ████3174 (Mobile) |
| Location | ████████, Elk Grove, CA 95758 United States of America |
| Jobs Applied to | 1 |

fec3feef-82f8-41cf-ac7e-4604edca257a.pdfTerceroTeniah--Resume.doc

## Overview

### Duplicates

Potential Duplicates

| Name | Match Reasons | Merge | Remove |
|---|---|---|---|

### Overview

| | |
|---|---|
| Current Job | 8 years |
| Total Jobs | 1 |
| Total Experience | 8 years |

Experience

Shopper/delivery
February 2016 - Current  (8 years, 4 months)
San Francisco
Going shopping for ppl and delivering

Websites

none entered

Resume / Cover Letter
TerceroTeniah--Resume.doc

Resume / Cover Letter
fec3feef-82f8-41cf-ac7e-4604edca257a.pdf



**EXHIBIT D**

Page 2 of 10

Education

Waseca mn
High School Diploma

Candidate Information

**Added By**   External Career Site

## Application Changes

Application Changes

| Updated By | Updated On |
|---|---|
| ▮▮▮ (268402) | 01/16/2023 04:03 PM |

## Duplicates

Duplicates

Potential Duplicates

| Name | Match Reasons | Merge | Remove |
|---|---|---|---|

## Screening

Screening Questions

**Questionnaire**   Person Screening

**Respondent**   Teniah Tercero (Terminated) (251464)

**Submission Date**   06/03/2021

| Question | | Answers |
|---|---|---|
| Are you currently working at a C&S Family of Companies facility: C&S Wholesale Grocers, Inc./C&S Wholesale Services, Inc./ES3, LLC./FreshKo Produce Services, Inc./GU Markets, LLC./Hawaiian Housewares LTD/J&R Ice Cream LLC./Piggly Wiggly LLC./Tracy Logistics/Sacramento Logistics/Robesonia Logistics/Arsenal/Davidson/DuBois Logistics/Grocer Supply/Hansen/Indianapolis Logistics/Hansen Distribution Group | **Answers** | No |
| Are you at least 18 years of age? | **Answers** | Yes |
| If hired, would you now or in the future require sponsorship to work for C&S Family of Companies in the United States? | **Answers** | Yes |
| If selected for consideration, would you be willing to submit to a pre-employment background check and drug screen? | **Answers** | Yes |
| Are you willing to relocate? | **Answers** | Yes |

**EXHIBIT D**



**EXHIBIT D**

| Question | | Answers | |
|---|---|---|---|
| If you were referred by a current employee, please provide that employee's name. | | | |
| Please enter your desired rate of compensation for this position. | | **Answers** | Open |

| | |
|---|---|
| **Questionnaire** | Warehouse |
| **Respondent** | Teniah Tercero (Terminated) (251464) |
| **Submission Date** | 06/03/2021 |

| Question | | Answers | |
|---|---|---|---|
| Have you worked in a warehouse environment before? | | **Answers** | Yes |
| From the following list, please select all of the the warehouse equipment you have experience operating. | | **Answers** | Not Listed / Other |
| Please select the below the warehouse environments that you're interested in working in. | | **Answers** | Grocery (50 - 80 degrees) |
| Are you willing to help us maintain raving fans as customers? This may sometimes require staying late, working overtime and working weekends. | | **Answers** | Yes |
| Help us understand your shift availability by choosing your available from the following shifts. | | **Answers** | 1st Shift, 2nd Shift, 3rd Shift |

## Assessments

| | |
|---|---|
| **Job Application** | Teniah Tercero - R-232117 Order Selector GMD (C198391) |
| **Overall Status** | Complete |
| **Overall Date** | 06/03/2021 |
| **Submitted by** | |
| **Comment** | Candidate has completed the WOTC assessment. |

| Assessment Test | Score | Status | Date | Comment | Results URL |
|---|---|---|---|---|---|
| ADP_WOTC | 0 | Complete | 06/03/2021 | Candidate has completed the WOTC assessment. | |
| | Total: 0 | | | | |

| | |
|---|---|
| **Overall Status** | Assess_Completed |
| **Overall Date** | 06/03/2021 |
| **Inline Assessment Test** | Yes |
| **Submitted by** | |

Workday Proprietary and Confidential. For authorized use only.

**EXHIBIT D**

**C&S Family of Companies**

| Assessment Test | Score | Status | Date | Comment | Results URL |
|---|---|---|---|---|---|
| Warehouse Selector Assessment Score | 49 | | 05/31/2021 | | https://integration-talentcentral.us.shl.com/Integration/ui/MultiReportLink/ad9a1006db2d4a5fb7757ea52bceb458/?rid=62632366 |
| | Total: 49 | | | | |

## Background Check History

### Background Check History

| Status Date | Overall Status | Package Name | Package Status | Results URL | Business Process |
|---|---|---|---|---|---|
| 07/07/2021 | Complete | Background Check Only | Passed | https://sterlingcheck.app/interactive-summary/#/order/or9Y0Qbmf7SsPc5paKqx0w%253d%253d | Background Check for Job Application: Teniah Tercero - R-232117 Order Selector GMD (Filled) |

## Interview

### Interview Feedback

**Overall Average Rating**   0 (out of 5)
**Ratings Submitted**   0 of 1 Interviewer Feedback Received

Interview on 07/06/2021 - R-232117 Order Selector GMD (Filled)

| Interviewer | Feedback Submitted | Overall Rating |
|---|---|---|
| | Not Submitted | None Entered |

**Time Zone**   GMT-08:00 Pacific Time (Los Angeles)

**Overall Average Rating**   0 (out of 5)
**Ratings Submitted**   0 of 1 Interviewer Feedback Received

Workday Proprietary and Confidential. For authorized use only.

EXHIBIT D



Interview on 07/06/2021 - R-232117 Order Selector GMD (Filled)

| Interviewer | Feedback Submitted | Overall Rating |
|---|---|---|
| (12045) | Not Submitted | None Entered |

**Time Zone**    GMT-08:00 Pacific Time (Los Angeles)

## Interview Schedule

## Questionnaire Results

### Initial Application

**Questionnaire**    Person Screening

**Respondent**    Teniah Tercero (Terminated) (251464)
**Submission Date**    06/03/2021

| Question | Answers | |
|---|---|---|
| Are you currently working at a C&S Family of Companies facility: C&S Wholesale Grocers, Inc./C&S Wholesale Services, Inc./ES3, LLC./FreshKo Produce Services, Inc./GU Markets, LLC./Hawaiian Housewares LTD/J&R Ice Cream LLC./Piggly Wiggly LLC./Tracy Logistics/Sacramento Logistics/Robesonia Logistics/Arsenal/Davidson/DuBois Logistics/Grocer Supply/Hansen/Indianapolis Logistics/Hansen Distribution Group | **Answers** | No |
| Are you at least 18 years of age? | **Answers** | Yes |
| If hired, would you now or in the future require sponsorship to work for C&S Family of Companies in the United States? | **Answers** | Yes |
| If selected for consideration, would you be willing to submit to a pre-employment background check and drug screen? | **Answers** | Yes |
| Are you willing to relocate? | **Answers** | Yes |
| If you were referred by a current employee, please provide that employee's name. | | |
| Please enter your desired rate of compensation for this position. | **Answers** | Open |

**Questionnaire**    Warehouse

**Respondent**    Teniah Tercero (Terminated) (251464)
**Submission Date**    06/03/2021

Workday Proprietary and Confidential. For authorized use only.

EXHIBIT D

**C&S Family of Companies**

| Question | | Answers |
|---|---|---|
| Have you worked in a warehouse environment before? | **Answers** | Yes |
| From the following list, please select all of the the warehouse equipment you have experience operating. | **Answers** | Not Listed / Other |
| Please select the below the warehouse environments that you're interested in working in. | **Answers** | Grocery (50 - 80 degrees) |
| Are you willing to help us maintain raving fans as customers? This may sometimes require staying late, working overtime and working weekends. | **Answers** | Yes |
| Help us understand your shift availability by choosing your available from the following shifts. | **Answers** | 1st Shift, 2nd Shift, 3rd Shift |

## Attachments

### Attachments

#### Resume / Cover Letter

| Attachment | |
|---|---|
| TerceroTeniah--Resume.doc | |
| fec3feef-82f8-41cf-ac7e-4604edca257a.pdf | |

#### Other Documents

| Attachment | Category | |
|---|---|---|

#### Standard Documents

| Document | Effective Date | Document Attachment | Signature Type | Signed By | Signature Date | Signature Statement |
|---|---|---|---|---|---|---|
| Warehouse Tour and Physical Job Simulation Waiver | 07/17/2020 | Warehouse Tour and Physical Job Simulation Waiver.pdf | Acknowledgment | | | By clicking "I Agree," I am agreeing that: (1) Clicking "I Agree" will be accepted as my electronic signature to the agreement; (2) I am the individual whose electronic signature appears below and not a delegee or agent of that person; (2) I understand it is a violation of Company policy to execute a document with an e-signature of someone other than myself; (3) I understand that you may print a copy of the agreement for your records; (4) I understand that my electronic signature has the same legally binding effect as my handwritten or physical ink signature; and (5) I consent to execute the agreement via electronic signature. By my electronic signature, I agree that I have read, fully understand, and accept all the terms of the Waiver. |

Workday Proprietary and Confidential. For authorized use only.

EXHIBIT D



| Document | Effective Date | Document Attachment | Signature Type | Signed By | Signature Date | Signature Statement |
|---|---|---|---|---|---|---|
| Warehouse Tour and Physical Job Simulation Waiver | 07/17/2020 | Warehouse Tour and Physical Job Simulation Waiver.pdf | Acknowledgment | Teniah Tercero (Terminated) (251464) | 07/04/2021 12:19:44 PM | By clicking "I Agree," I am agreeing that: (1) Clicking "I Agree" will be accepted as my electronic signature to the agreement; (2) I am the individual whose electronic signature appears below and not a delegee or agent of that person; (2) I understand it is a violation of Company policy to execute a document with an e-signature of someone other than myself; (3) I understand that you may print a copy of the agreement for your records; (4) I understand that my electronic signature has the same legally binding effect as my handwritten or physical ink signature; and (5) I consent to execute the agreement via electronic signature. By my  electronic signature, I agree that I have read, fully understand, and accept all the terms of the Waiver. |
| Arbitration Agreement Non-CA | 03/31/2021 | CS Mutual Arbitration Agreement Wage-Hour (Non-California).pdf | Acknowledgment | Teniah Tercero (Terminated) (251464) | 07/07/2021 05:19:38 PM | By selecting "I Agree," I certify that I have read, understand, and agree to the Arbitration Agreement attached above. If I have any questions about the Arbitration Agreement, I understand that I should contact the company's Employee Resource center at employeersourcecenter@cswg.com or 1.800.833.7701. I understand that my agreement to the Arbitration Agreement is a necessary step in the application process, and that is why it is the only option available below. I understand that if I do not agree to the Arbitration Agreement, I should not select "I Agree" below, but rather I should simply close my Internet browser, and my application will not be considered.

By selecting "I Agree" I also agree that: (1) Clicking "I Agree" will be accepted as my electronic signature; (2) I am the individual whose electronic signature is represented and not a delegee or agent of that person; (2) I understand it is a violation of Company policy to execute a document with an e-signature of someone other than myself; (3) I understand that I may print a copy of the Arbitration Agreement for my records; (4) I understand that my electronic signature has the same legally binding effect as my handwritten or physical ink signature; and (5) I consent to execute the Arbitration Agreement via electronic signature. (Required) |

## Offer

### Offer Details

Job Details

Hire Date  07/13/2021
Location  Sacramento, CA (GMD) 4004

Workday Proprietary and Confidential. For authorized use only.

EXHIBIT D



| | |
|---|---|
| **Hire Reason** | Hire Employee > Hire Employee > New Hire |
| **Job Profile** | Selector, In Training |
| **Business Title** | Selector, In Training |
| **Default Weekly Hours** | 40 |
| **Scheduled Weekly Hours** | 40 |
| **Contract End Date** | |

Compensation

Totals

| Total Salary & Allowances | Total Base Pay | Currency | Frequency |
|---|---|---|---|
| 17.05 | 17.05 USD | | Hourly |

| | |
|---|---|
| **Compensation Package** | C&S Wholesale Grocers |
| **Grade** | 99 |
| **Company** | Sacramento Logistics LLC |

Plan Assignments

| Compensation Plan | Assignment |
|---|---|
| Hourly | 17.05 USD Hourly |

## Offer Attachments

none entered

## Candidate

## Job Application Details Card

Job Application Details

| | |
|---|---|
| **Job Requisition** | R-232117 Order Selector GMD (Filled) |
| **Location** | Sacramento, CA (GMD) 4004 |
| **Date Applied** | 06/03/2021 02:31:33 PM |
| **Source** | Social Media -> Indeed |



███████████ (266272)
Hiring Manager

**Step**    Completion

In Progress

| Ready for Hire for Job Application: Teniah Tercero - R-232117 Order Selector GMD (C198391) | Step | Awaiting |
|---|---|---|
| Ready for Hire for Job Application: Teniah Tercero - R-232117 Order Selector GMD (C198391) | Completion | |

## Education

Education

Waseca mn
High School Diploma

## Work History

Work History

**Current Job**    8 years
**Total Jobs**    1
**Total Experience**    8 years

Experience

Shopper/delivery
February 2016 - Current  (8 years, 4 months)
San Francisco
Going shopping for ppl and delivering

## Credentials

Websites

none entered

## My Upcoming Reminders

Workday Proprietary and Confidential. For authorized use only.

EXHIBIT D



C&S Family of Companies

Personal Reminders

none entered

## Resume Attachment

Resume / Cover Letter
TerceroTeniah--Resume.doc

Resume / Cover Letter
fec3feef-82f8-41cf-ac7e-4604edca257a.pdf

EXHIBIT D