1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | TENIAH TERCERO,                         No.  2:24-cv-00953-DC-JDP

12 |              Plaintiff,

13 |       v.                               ORDER GRANTING DEFENDANTS'
                                            MOTION TO COMPEL ARBITRATION OF
14 | SACRAMENTO LOGISTICS LLC, et al.,      PLAINTIFF'S INDIVIDUAL CLAIMS AND
                                            STAYING ALL PROCEEDINGS PENDING
15 |              Defendants.               COMPLETION OF ARBITRATION

16                                          (Doc. Nos. 15, 17)

17

18         This matter is before the court on Defendants' motion to compel arbitration of Plaintiff's

19 | individual claims. (Doc. No. 15.) Pursuant to Local Rule 230(g), the pending motion was taken

20 | under submission to be decided on the papers. (Doc. No. 18.) For the reasons explained below,

21 | the court will grant Defendants' motion to compel arbitration and stay all proceedings pending

22 | completion of arbitration.

23                                  **BACKGROUND**

24         On February 16, 2024, Plaintiff Teniah Tercero filed a wage-and-hour class action

25 | complaint against Defendants Sacramento Logistics LLC ("Sacramento Logistics") and C&S

26 | Wholesale Grocers, LLC ("C&S Wholesale") (collectively, "Defendants") in Sacramento County

27 | /////

28 | /////

1

Superior Court.[1] (Doc. No. 1 at 38–66.) Plaintiff alleges Defendants violated provisions of the California Labor Code by failing to pay minimum wages, pay overtime wages, provide meal periods or compensation in lieu thereof, provide rest periods or compensation in lieu thereof, pay all wages due upon separation, and reimburse business expenses. (*Id.* at 56–63.) Plaintiff further alleges Defendants violated California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq*. (*Id.* at 63–65.)

In her complaint, Plaintiff alleges she worked for Defendants from approximately July 2021 through August 2022 in Sacramento, California. (*Id.* at 39.) Plaintiff seeks to represent a proposed class of all current and former non-exempt employees who worked for any of the Defendants at any location in California within the four years prior to the filing of the complaint. (*Id.* at 43.)

On March 27, 2024, Defendants removed this action to this federal district court pursuant to 28 U.S.C. § 1446, alleging diversity jurisdiction under the Class Action Fairness Act ("CAFA") (28 U.S.C. § 1332(d)), traditional diversity jurisdiction (28 U.S.C. § 1332(a)), and federal question jurisdiction (28 U.S.C. § 1331). (Doc. No. 1.) Plaintiff did not thereafter file a motion to remand to challenge Defendants' removal of this action.

On May 31, 2024, Defendants filed the pending motion to compel arbitration of Plaintiff's individual claims and to stay all proceedings pending completion of arbitration.[2] (Doc. No. 15.) Defendants contend that when applying for employment with Defendant Sacramento Logistics, Plaintiff electronically signed a mutual arbitration agreement that covered wage and hour claims (the "Arbitration Agreement"). (*Id.* at 9.) Defendants further contend Plaintiff is bound to arbitrate her claims on an individual basis pursuant to the Arbitration Agreement. (*Id.*) The Arbitration Agreement states, in relevant part, "[c]overed [c]laims will be arbitrated only on an individual basis," employees cannot "bring a claim on behalf of other individuals," and "any

---

[1] Plaintiff also named Defendant C&S Logistics of Sacramento/Tracy LLC ("C&S Logistics"), but that defendant was dismissed from this action on November 25, 2024. (Doc. No. 32.)

[2] Also on May 31, 2024, Defendants filed a motion to dismiss Plaintiff's individual and putative class claims. (Doc. No. 17.)

1    arbitrator hearing [a] claim may not . . . arbitrate any form of class, collective, or representative

2    proceeding." (Doc. No. 15-1 at 18.)

3         On June 14, 2024, Plaintiff filed her opposition to Defendants' motion to compel

4    arbitration, challenging the validity of the Arbitration Agreement. (Doc. No. 21.) On June 24,

5    2024, Defendants filed their reply thereto. (Doc. No. 27.)

6                                    **LEGAL STANDARD**

7         The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements

8    "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable,

9    save upon such grounds as exist at law or in equity for the revocation of any contract."

10   9 U.S.C. § 2. The FAA reflects "a national policy favoring arbitration when [] parties contract for

11   that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). "By its terms, the

12   [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that

13   district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration

14   agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing

15   9 U.S.C. §§ 3, 4). For this reason, a court's role in considering a motion to compel arbitration is

16   "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2)

17   whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.,*

18   *Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the court answers both questions in the affirmative,

19   it must 'enforce the arbitration agreement in accordance with its terms.'" *Johnson v. Walmart*

20   *Inc.*, 57 F.4th 677, 680–81 (9th Cir. 2023) (quoting *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716

21   (9th Cir. 2020)).

22        Here, the only issue before the court is whether a valid agreement to arbitrate exists

23   because Plaintiff does not contest that the Arbitration Agreement encompasses her claims. In

24   determining whether a valid arbitration agreement exists, federal courts apply state law principles

25   of contract formation. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). In

26   California, a contract is formed if the (1) parties are capable of contracting; (2) they consent; (3)

27   there is a lawful object; and (4) there is sufficient cause or consideration. Cal. Civ. Code § 1550.

28   A party's consent to "an agreement to arbitrate may be express, as where a party signs the

agreement" or "implied in fact." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US) LLC*, 55 Cal. 4th 223, 236 (2012). "Despite the strong policy favoring enforcement of arbitration agreements, generally applicable contract defenses such as fraud, duress, or unconscionability are applicable to arbitration agreements as they are to other contracts." *Loewen v. Lyft, Inc*., 129 F. Supp. 3d 945, 951 (N.D. Cal. 2015) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). A defendant seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. *See Reichert v. Rapid Invs., Inc*., 56 F.4th 1220, 1227 (9th Cir. 2022).

## ANALYSIS

Defendants seek to compel Plaintiff to arbitrate her individual claims pursuant to the terms of the Arbitration Agreement. (Doc. No. 15.) Plaintiff does not contest that her claims would be subject to arbitration if the court finds the Arbitration Agreement valid. (Doc. No. 21.) Plaintiff only challenges the validity of the Arbitration Agreement. (*Id.*) Specifically, Plaintiff argues that (1) Defendants have failed to show she electronically signed the Arbitration Agreement, and (2) the Arbitration Agreement is procedurally and substantively unconscionable. The court addresses each argument in turn.

### A.   Plaintiff's Electronic Signature on the Arbitration Agreement

A defendant may meet its "initial burden to show an agreement to arbitrate" merely "by attaching a copy of the arbitration agreement purportedly bearing the [plaintiff's] signature" to the motion to compel arbitration. *Espejo v. S. Cal. Permanente Med. Grp*., 246 Cal. App. 4th 1047, 1060 (2016). However, if a plaintiff "challenge[s] the validity of that signature in [their] opposition" to a motion to compel arbitration, a defendant is "then required to establish by a preponderance of the evidence that the signature [is] authentic." *Id.* To shift the burden back to the defendant, the plaintiff "need not *prove* that [their] purported signature is not authentic, but must submit sufficient evidence to create a factual dispute." *Iyere v. Wise Auto Grp.*, 87 Cal. App. 5th 747, 755 (2023).

California recognizes the validity of electronic signatures pursuant to the Uniform Electronic Transaction Act, which provides that a "signature may not be denied legal effect or

1   enforceability solely because it is in electronic form." Cal. Civ. Code § 1633.7. "An electronic

2   record or electronic signature is attributable to a person if it was the act of the person. The act of

3   the person may be shown in any manner, including a showing of the efficacy of any security

4   procedure applied to determine the person to which the electronic record or electronic signature

5   was attributable." Cal. Civ. Code § 1633.9.

6        The "burden of authenticating an electronic signature is not great." *Ruiz v. Moss Bros.*

7   *Auto Grp*., 232 Cal. App. 4th 836, 844 (2014). "Courts have found that evidence of a unique,

8   secure username and password may sufficiently authenticate a signature when that signature is a

9   typed name input by the user." *Zamudio v. Aerotek, Inc*., No. 1:21-cv-01673-JLT-CDB, 2024 WL

10  2055146, at *3 (E.D. Cal. May 8, 2024) (collecting cases). "Similarly, the use of a checkbox to

11  show acknowledgment and agreement with a specific policy document has also been found

12  sufficient where a unique, secure username and password was used to access the website

13  containing the policy document." *Smith v. Rent-A-Ctr*., *Inc*., No. 1:18-cv-01351-LJO-JLT, 2019

14  WL 1294443, at *5 (E.D. Cal. Mar. 21, 2019) (citation omitted).

15       The authentication of an electronic signature turns on the indicia of reliability

16  demonstrated in the processes associated with the signor's username and password. *Smith*, 2019

17  WL 1294443, at *5. "These processes, and attendant explanations, are fact-specific and

18  contextual; they may take many forms yet still satisfy the burden of authentication." *Id.* The

19  declarations of human resource employees may be sufficient to authenticate electronic signatures,

20  but "the *content* of such declarations, rather than their mere existence, is determinative for

21  clearing the authentication threshold." *Id.*

22       In their motion to compel arbitration, Defendants contend Plaintiff electronically signed

23  the Arbitration Agreement during her employment application process with Defendant

24  Sacramento Logistics. (Doc. No. 15-1 at 18–24.) In support of this contention, Defendants submit

25  /////

26  /////

27  /////

28  /////

the declaration of Krista Gaedje, a talent acquisition manager for Defendant C&S Wholesale.[3]

(Doc. No. 15-1.) In her declaration, Ms. Gaedje describes Defendants' hiring process and in

particular, their use of a software platform known as "Workday" to electronically manage

applications from candidates and onboard newly hired employees. (*Id* at 4.) To apply for a

position, a candidate must create a Workday account using their personal email address and a

unique password, which is inaccessible to Defendants. (*Id.* at 6.) The Workday employment

application contains screening questions, an initial assessment, and questions regarding a

candidate's prior work history. (*Id.* at 6–7.) After an employment application is submitted, a

recruiter is assigned to review the submission. (*Id.* at 7.) Candidates who meet job requirements

are advanced to the "interview" stage of the application process and may be invited to participate

in an onsite simulation during their onsite interview, so long as they sign a "Warehouse Tour and

Physical Job Simulation Waiver." (*Id.*) If a candidate receives an offer following the interview,

they advance to the "background check" stage where they are assigned tasks to complete via the

Workday system. (*Id.*) The candidate must complete "background check" tasks to proceed with

employment. (*Id.* at 7–8.) Specifically, a candidate must enter their social security number, date

of birth, and—relevant here—sign a "mutual arbitration agreement regarding wage and hour

claims." (*Id*. at 8.)

    According to Ms. Gaedje, at this stage to complete the task of signing the arbitration

agreement, candidates are presented with a screen that instructs them to read and acknowledge a

mutual arbitration agreement regarding wage and hour claims. (*Id*. at 11.) Candidates can click on

a blue file name, or hyperlink, to view the arbitration agreement in its entirety. (*Id.* at 12.) After

reviewing the arbitration agreement, candidates must select a checkbox under the words "I

Agree." (*Id.*) The webpage informs candidates that by selecting "I Agree," they are certifying that

they have "read, understand and agree to the Arbitration Agreement." Candidates are also

---

[3] Plaintiff objects to specific portions of Ms. Gaedje's declaration based on a lack of personal knowledge, lack of foundation/speculation, irrelevance, inadmissible hearsay, and statements concerning contents of documents. (Doc. No. 21-3.) Plaintiff's objections "are boilerplate and devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded." *United States v. HVI Cat Canyon, Inc*., 213 F. Supp. 3d 1249, 1256 (C.D. Cal. 2016). Therefore, Plaintiff's objections are overruled.

1   informed that clicking "I Agree" "will be accepted as [their] electronic signature." (*Id.* at 11.)

2   Defendants contend they only hire and onboard candidates who have completed all tasks assigned

3   at the "background check" stage on Workday. (*Id.*) Put differently, a candidate cannot be hired or

4   onboarded as an employee for Defendants unless the arbitration agreement task has been

5   completed in Workday. (*Id.*)

6          With regard to Plaintiff's application process and onboarding, Ms. Gaedje attaches a

7   Workday audit trail and system record to her declaration, purportedly showing all actions taken

8   by Plaintiff during her employment application process with Defendant Sacramento Logistics.

9   (*Id.* at 25–37.) Defendants assert these records show Plaintiff created a Workday account using

10  her personal email address and a unique password on June 3, 2021. (*Id.*) Documents, including

11  one with the filename "TerceroTeniah-Resume.doc," were uploaded to the Workday account.

12  (*Id.*) On July 4, 2021, Plaintiff allegedly signed a waiver via Workday to participate in an onsite

13  simulation and interview with Defendant Sacramento Logistics. (*Id.*) After attending an onsite

14  interview at Defendant Sacramento Logistics' facility on July 6, 2021, Plaintiff was advanced to

15  the "background check" stage of the application process in Workday (*Id.*) On July 7, 2021, a

16  recruiter sent Plaintiff an email to her personal address notifying her that she had tasks to

17  complete to move forward with the application process. (*Id.* at 14.) The Workday audit trail and

18  system records show that Plaintiff allegedly signed into her Workday account and completed the

19  arbitration agreement task at approximately 5:19 p.m. that same day. (*Id.* at 15, 26, 34.)

20         In opposition to the pending motion, Plaintiff argues Defendants have failed to

21  demonstrate she agreed to arbitrate her claims. (Doc. No. 21 at 12.) Plaintiff submits her own

22  declaration, denying she electronically signed the Arbitration Agreement.[4] (*Id.* at 12; Doc. No.

23  21-2 at 2.) Plaintiff states that she applied for her position via Indeed.com rather than through

24  Workday. (Doc. No. 21-2 at 2.) Plaintiff claims she did not create a Workday account at any time,

25  does not recognize the Arbitration Agreement, does not remember ever signing any arbitration

26

27  _____

    [4] Defendants object to specific portions of Plaintiff's declaration based on irrelevance, improper
    opinions, and misstatements of evidence. (Doc. No. 27-2.) Because the objected to material is not
28  relied upon by the court, it need not address Defendants' objections.

agreement, and did not ever knowingly or voluntarily sign an arbitration agreement. (*Id.*) Instead, Plaintiff alleges that a few days after she began working for Defendants, a supervisor at Defendants' warehouse created a Workday username and password for her to complete remaining onboarding tasks. (*Id.*) Thus, Plaintiff argues Defendants have not shown only she could have placed the electronic signature on the Arbitration Agreement. (Doc. No. 21 at 12.)

In reply, Defendants provide a supplemental declaration from Ms. Gaedje stating that when candidates attempt to apply for an Indeed.com job posting, they are ultimately rerouted to Defendant C&S Wholesale's careers website and are required to create a Workday candidate account. (Doc. No. 27-1 at 5–8.) Candidates can only apply for a position with Defendants by creating a Workday account using their personal information, even if they began the application process on Indeed.com. (*Id.*) Ms. Gaedje also clarifies in her supplemental declaration that once candidates are hired, they are provided log-in credentials for a Workday employee account which are separate and distinct from a Workday candidate account. (*Id.* at 10.)

Here, Defendants have met their initial burden to show an agreement to arbitrate by submitting the Arbitration Agreement purportedly bearing Plaintiff's electronic signature with their motion to compel arbitration. (Doc. No. 15-1); *see Espejo,* 246 Cal. App. 4th at 1060. However, Plaintiff challenges the authenticity of the electronic signature, arguing that she did not create a Workday candidate account or sign the Arbitration Agreement. (Doc. No. 21-2.) Therefore, the issue before the court is whether Defendants have satisfied their burden of establishing by a preponderance of the evidence that Plaintiff signed the Arbitration Agreement.

The court finds Defendants have provided sufficient information to authenticate Plaintiff's electronic signature on the Arbitration Agreement. Ms. Gaedje's declarations thoroughly explain the application process for a candidate seeking employment with Defendants. (Doc. Nos. 15-1, 27-1.) This process consists of discrete steps that a candidate must complete on the Workday platform in order to be hired and onboarded as an employee. (*Id.*) Signing an arbitration agreement is one part of the multi-step Workday application process. *See Tagliabue v. J.C. Penney Corp., Inc.*, No. 1:15-cv-01443-SAB, 2015 WL 8780577, at *3 (E.D. Cal. Dec. 15, 2015) (defendant submitted sufficient evidence to establish plaintiff electronically signed arbitration

agreements by providing a declaration detailing "20 discrete steps" of its onboarding process).

Plaintiff's Workday audit trails and account records show she took the usual steps to apply for a

position with Defendant Sacramento Logistics through Workday. (*Id.* at 25–37). Specifically, the

documents show a Workday candidate account was created using Plaintiff's personal email

address and a unique password, a resume bearing Plaintiff's name was uploaded to the account,

screening questions were answered, and a waiver required for Plaintiff's July 4, 2021 onsite

simulation and interview was signed. (Doc. No. 15-1 at 25–26, 29–33.) It follows that it was

Plaintiff who electronically reviewed and signed the arbitration agreement days later on July 7,

2021. (*Id.* at 26, 34); *see Taft v. Henley Enters., Inc.*, No. 8:15-cv-1658-JLS-JCG, 2016 WL

9448485, at \*3 (C.D. Cal. Mar. 2, 2016) (defendant satisfied its burden of authentication where it

submitted a declaration explaining its new hire onboarding process consisting of several discrete

steps and provided an audit trail showing the steps plaintiff took to sign an arbitration agreement);

*Walters v. Luxottica of Am. Inc.*, No. 8:23-cv-01099-FWS-MAA, 2024 WL 661195, at \*2 (C.D.

Cal. Jan. 5, 2024) (audit trail evidenced the plaintiff's assent to the arbitration agreement).

The court is unpersuaded by Plaintiff's argument that Defendants have failed to show only

she could have signed the Arbitration Agreement because, according to Plaintiff, a supervisor

provided her with Workday log-in credentials; she did not create them herself. (Doc. No. 21 at

12.) Ms. Gaedje explained, however, a Workday candidate account differs from an employee

account provided to new hires. (Doc. No. 27-1 at 10.) The creation of a Workday candidate

account and the completion of application forms therein required information only Plaintiff would

know, such as Plaintiff's social security number and date of birth, both of which were provided

the same day the Arbitration Agreement was signed. (Doc. No. 15-1 at 34); *see White v.

Conduent Com. Sols., LLC*, No. 1:23-cv-00113-JLT-CDB, 2024 WL 4373851, at \*8–9 (E.D. Cal.

Oct. 2, 2024) (signature sufficiently authenticated where declaration detailed security precautions

and "steps an applicant would have to take to place his or her name on the signature line of the

employment agreement"). Indeed, Plaintiff herself acknowledges that "nobody created a

Workday account for [her] *before* [her] employment" with Defendant Sacramento Logistics.

(Doc. No. 21-2 at 2.) Therefore, the court concludes that Defendants have produced sufficient

1    evidence to meet their burden of establishing Plaintiff signed the Arbitration Agreement.

2    **B.      Unconscionability**

3         Under California law, a court may refuse to enforce a provision of a contract if it

4    determines that the provision was "unconscionable at the time it was made." Cal. Civ. Code

5    § 1670.5(a); *see also Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (an

6    arbitration agreement may be deemed invalid on grounds of unconscionability). A "contract is

7    unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and

8    the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v.*

9    *Kho*, 8 Cal. 5th 111, 125 (2019).

10        "For unconscionability, California requires a showing of both procedural and substantive

11   unconscionability, balanced on a sliding scale." *Tompkins v. 23andMe, Inc*., 5:13-cv-05682-LHK,

12   2014 WL 2903752, at *13 (N.D. Cal. Jun. 25, 2014). Procedural unconscionability "addresses the

13   circumstances of contract negotiation and formation, focusing on oppression or surprise due to

14   unequal bargaining power." *OTO*, 8 Cal. 5th at 125 (citation omitted). "Substantive

15   unconscionability pertains to the fairness of an agreement's actual terms and to assessments of

16   whether they are overly harsh or one-sided." *Id*. "[T]he more substantively oppressive the

17   contract term, the less evidence of procedural unconscionability is required to come to the

18   conclusion that the term is unenforceable, and vice versa." *Sanchez v. Valencia Holding Co.,*

19   *LLC*, 61 Cal. 4th 899, 910 (2015) (citation omitted). The party opposing arbitration bears the

20   burden of establishing that an arbitration agreement is unconscionable. *See Shivkov v. Artex Risk*

21   *Sols., Inc*., 974 F.3d 1051, 1059 (9th Cir. 2020).

22        1.    Procedural Unconscionability

23        When analyzing procedural unconscionability, the court "begins by determining whether

24   the agreement is a contract of adhesion, which is a standardized contract offered by the party with

25   superior bargaining power on a take-it-or-leave-it-basis." *Prostek v. Lincare Inc*., 662 F. Supp. 3d

26   1100, 1115 (E.D. Cal. 2023). "If a contract of adhesion is at issue, courts must assess whether the

27   circumstances of the contract's formation created such oppression or surprise that closer scrutiny

28   of the contract's overall fairness is required." *Zamudio*, 2024 WL 2055146, at *6 (citing *OTO*, 8

10

1    Cal. 5th at 126). "[T]he adhesive nature of a contract, without more, [] give[s] rise to a low degree

2    of procedural unconscionability at most." *Poublon v. C.H. Robinson Co*., 846 F.3d 1251, 1261

3    (9th Cir. 2017).

4         Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because it

5    is a contract of adhesion. (Doc. No. 21 at 15–16.) Plaintiff points to Section 1 of the Arbitration

6    Agreement, which states "[y]ou understand that your new or continued employment with the

7    [c]ompany is deemed to be acceptance of the [Arbitration Agreement]." (*Id.* at 15.) Plaintiff

8    further argues that terms within the Arbitration Agreement were "hidden and riddled with

9    'surprise.'" (*Id.* at 15–16.) Plaintiff points to the options provided to candidates when completing

10   the arbitration agreement task in Workday. (*Id.*) Candidates could click a blue file name or

11   hyperlink containing the full arbitration agreement but were not required to do so. (*Id.* at 16.)

12   Instead, candidates could click "I agree" without opening the full arbitration agreement or "close

13   the internet browser," in which case their application would not be considered. (*Id.* at 16.) Finally,

14   Plaintiff notes that during her onsite onboarding on July 13, 2021, she was required to review

15   stacks of paperwork because she was provided with "28 different packets of information" and did

16   not know it included a hidden arbitration agreement. (*Id.*)

17        Defendants counter that the Arbitration Agreement was presented to Plaintiff in a

18   transparent manner with clearly delineated headings, normal font size, and relatively short

19   sections. (Doc. No. 27 at 11–12.)  Defendants further argue the Arbitration Agreement was not

20   buried amongst other documents, and Plaintiff was not under any time constraints when

21   reviewing it. (*Id.*) In Defendants' view, whether Plaintiff actually clicked through the hyperlinked

22   copy of the agreement and read the terms is irrelevant. (*Id.* at 12.)

23        Here, there is no dispute that the Arbitration Agreement is a contract of adhesion.

24   *Zamudio*, 2024 WL 2055146, at *6. Indeed, arbitration agreements imposed as a condition of

25   employment are typically considered contracts of adhesion. *OTO*, 8 Cal. 5th at 126. Plaintiff was

26   required to sign the Arbitration Agreement as a condition of employment. *See Kinney v. United*

27   *HealthCare Servs., Inc*., 70 Cal. App. 4th 1322, 1329 (1999) (agreement was a contract of

28   adhesion where "each employee was required to acknowledge his or her consent to its terms,

1   including the arbitration provision, as a condition of continued employment with the company"

2   and "had no opportunity to negotiate regarding the terms").

3          However, where an "employee must sign a non-negotiable employment agreement as a

4   condition of employment but 'there is no other indication of oppression or surprise,' then 'the

5   agreement will be enforceable unless the degree of substantive unconscionability is high.'"

6   *Poublon*, 846 F.3d at 1261 (quoting *Serpa v. Cal. Sur. Investigations, Inc*., 215 Cal. App. 4th 695,

7   704 (2013)); *see also Barrera v. Floor & Decor Outlets of Am., Inc*., No. 2:24-cv-02390-SB-

8   KES, 2024 WL 3993871, at *5 (C.D. Cal. July 11, 2024) ("Generally, an adhesive employment

9   contract bears some degree of procedural unconscionability, although exactly how much depends

10  on whether there is evidence of other 'sharp practices.'") (citation omitted). Plaintiff presents no

11  evidence of oppression or surprise, beyond the fact that the contract was given to her on a take-it-

12  or-leave-it basis as part of her employment application. The Arbitration Agreement was not

13  buried in small font within a larger document or otherwise difficult to read. *See Nat'l Bank of*

14  *Cal., NA v. Gay*, No. 2:11-cv-2521-RSWL-JCG, 2011 WL 2672359, at *3 (C.D. Cal. June 29,

15  2011) (determining that the element of surprise was not present at the time of contracting where

16  an arbitration agreement was "not hidden or difficult to read, as it was contained in a stand-alone,

17  three-page document"). Nor was it "hidden" solely because it was available via a hyperlink. *See*

18  *River Supply, Inc. v. Oracle Am., Inc*., No. 3:23-cv-02981-LB, 2023 WL 7346397, at *10 (N.D.

19  Cal. Nov. 6, 2023) (agreements were not unconscionable where defendant provided hyperlinks to

20  them and "the pages [were] not confusing, [] not hidden, and the [a]greement [was] easily

21  available"). Finally, the fact that Plaintiff reviewed "28 different packets of information" as part

22  of her onboarding on July 13, 2021 does not advance her argument because that review came

23  days after she signed the Arbitration Agreement on July 7, 2021.

24         For these reasons, the court concludes that this case presents a *de minimis* level of

25  procedural unconscionability. *Poublon*, 846 F.3d at 1261. The court will nonetheless continue to

26  assess substantive unconscionability. *See Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1284

27  (9th Cir. 2006) (even when "evidence of procedural unconscionability appears minimal," courts

28  are required under California law to consider substantive unconscionability as well).

1          2.       Substantive Unconscionability

2          Substantive unconscionability requires an examination of the fairness of a contract's terms

3   and consideration of whether the terms are "unreasonably favorable to the more powerful party,

4   not just a simple old-fashioned bad bargain." *Lim*, 8 F.4th at 1001–02 (citation and internal

5   quotation marks omitted). "Unconscionable terms impair the integrity of the bargaining process

6   or otherwise contravene the public interest or public policy or attempt to impermissibly alter

7   fundamental legal duties." *OTO*, 8 Cal.5th at 130 (citation and internal quotation marks omitted).

8   "[T]he paramount consideration in assessing [substantive] unconscionability is mutuality."

9   *Abramson v. Jupiter Networks, Inc*., 115 Cal. App. 4th 638, 657 (2004). An agreement lacks

10  mutuality when it is "unjustifiably one-side[d] to such an extent that it 'shocks the conscience.'"

11  *Chavarria v. Ralphs Grocery Co*., 733 F.3d 916, 923 (9th Cir. 2013) (quoting *Parada v. Super.

12  Ct*., 176 Cal. App. 4th 1554, 1578 (2009)). "To avoid being found substantively unconscionable,

13  'arbitration agreements must contain at least a modicum of bilaterality.'" *Beard v. Santander

14  Consumer USA, Inc*., No. 1:11-cv-11-1815-LJO, 2012 WL 1292576, at *9 (E.D. Cal. Apr. 16,

15  2012).

16         Here, Plaintiff argues that six different provisions of the Arbitration Agreement are

17  substantively unconscionable, and when combined with the procedural unconscionability

18  discussed above, serve to invalidate the Arbitration Agreement in its entirety. First, Plaintiff

19  argues that the Arbitration Agreement is unfairly one-sided because it requires arbitration of wage

20  and hour disputes exclusively brought by employees. (Doc. No. 17.) "[S]ubstantive

21  unconscionability may manifest itself in the form of 'an agreement requiring arbitration only for

22  the claims of the weaker party but a choice of forums for the claims of the stronger party.'"

23  *Nagrampa*, 469 F.3d at 1285–86 (quoting *Armendariz v. Found. Health Psychcare Servs., Inc*.,

24  24 Cal. 4th 83, 119 (2000)). "Courts have found one-sided employer-imposed arbitration

25  provisions unconscionable where they provide that employee claims will be arbitrated, but the

26  employer retains the right to file a lawsuit in court for claims it initiates, or where only the types

27  of claims likely to be brought by employees (wrongful termination, discrimination etc.) are made

28  subject to arbitration." *Serafin v. Balco Props. Ltd*., LLC, 235 Cal. App. 4th 165, 181 (2015); *see*

13

1   *also Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 495 (2024) ("[I]f an agreement singles

2   out certain claims for arbitration, there must be 'mutuality.' The agreement cannot require 'one

3   contracting party, but not the other, to arbitrate all claims arising out of the same transaction or

4   occurrence or series of transactions or occurrences.'") (citation omitted).

5        Under the Arbitration Agreement, "[c]overed [c]laims" includes wage-and-hour claims

6   that are likely to be brought by employees against employers, such as claims for minimum wage,

7   straight time, overtime, or meal and rest break premiums. (Doc. No. 27 at 12–13.) However, the

8   Arbitration Agreement also expressly states that it covers claims "brought by the [Defendants]

9   against [employees]." (Doc. No. 15-1 at 18.) Indeed, the Arbitration Agreement includes within

10  the meaning of "[c]overed [c]laims," claims Defendants are likely to bring such as claims for the

11  recovery of overpayment of wages and credit card or business expense misuse. (*Id.*); *see Prostek*,

12  662 F. Supp. 3d at 1120 (agreement was not unduly one-sided against employees where the

13  meaning of "covered claims" was non-exclusive and included claims that could be brought by an

14  employer); *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1021 (E.D. Cal. 2008)

15  (arbitration agreement was not one-sided where it covered claims an employer may raise against

16  an employee); *cf. Ramirez*, 16 Cal. 5th at 534 (arbitration agreement was unfairly one-sided

17  where it compelled the arbitration of claims employees were most likely to bring and specifically

18  excluded from arbitration claims that are typically employer-initiated, such as intellectual

19  property, noncompete agreement, and severance claims). Furthermore, the Arbitration Agreement

20  excludes from arbitration some claims that employees are likely to bring, such as harassment,

21  discrimination, retaliation, and failure to accommodate. (*Id.* at 13.) Thus, the court concludes the

22  Arbitration Agreement's covered claims are not "so one-sided as to 'shock the conscious'" and

23  render the agreement substantively unconscionable. *Sanchez*, 61 Cal. 4th at 911.

24       Second, Plaintiff argues that the Arbitration Agreement includes a mass arbitration

25  provision that is substantively unconscionable. (Doc. No. 21 at 18–20.) In support of this

26  argument, Plaintiff cites to Section 7 of the Arbitration Agreement, which provides that if an

27  employee's claim is "one of greater than 30 individual employment-related arbitration claims of a

28  nearly identical nature demanded against the [Defendants] in close proximity to one another,"

1  then Defendants may submit those claims to JAMS or a mutually agreed-upon mediator who will

2  "first shall select between five and ten 'test cases' to be arbitrated on an expedited basis." (Doc.

3  No. 15-1 at 21.) Plaintiff claims this provision is only meant to benefit Defendants because it

4  avoids "fees, costs, and investment of time it would take to arbitrate 30 or more arbitrations," but

5  there are no fees, costs, or time that an employee would save if the Defendants elected this option.

6  (Doc. No. 21 at 19.) Likewise, Plaintiff alleges mass arbitration would force an employee to wait

7  long periods of time before being allowed to proceed with their own arbitration, defeating the

8  purpose of arbitration in facilitating speedy and cost-effective adjudication. (*Id.*) However, the

9  only case Plaintiff cites in support of this argument is *MacClelland v. Cellco P'ship*, 609 F. Supp.

10  3d 1024 (N.D. Cal. July 1, 2022), which is plainly inapposite and therefore not persuasive. In

11  *MacClelland*, the court held that a mass arbitration provision was substantively unconscionable

12  because it required consumers "to wait months, more likely years before they [could] even submit

13  a demand for arbitration" against a company. *Id.* at 1042. Consumers were not permitted to file

14  claims in arbitration until "preceding traunches" were adjudicated, meaning "[t]hose in the queue

15  who [were] not able to file within the limitations period would be forever barred." *Id.* At the same

16  time, that arbitration agreement reserved the company's right to raise a statute of limitations

17  defense but did not contain a tolling provision. *Id.* By contrast here, the Arbitration Agreement

18  does not expressly reserve Defendants' right to raise a statute of limitations defense. (Doc. No.

19  15-1 at 21.) Instead, the Arbitration Agreement tolls the statutes of limitations while non-test

20  cases are on "stand-by," meaning they cannot be filed with any court or arbitration administrator.

21  (*Id.*) The Arbitration Agreement also allows both parties to opt out of the arbitration process and

22  proceed in court under certain conditions. (Doc. No. 15-1 at 21); *see McGrath v. DoorDash, Inc*.,

23  No. 3:19-cv-05279-EMC, 2020 WL 6526129, at *10 (N.D. Cal. Nov. 5, 2020) (mass arbitration

24  provision for claims "of a nearly identical nature" filed against a company in "close proximity to

25  one another" was not substantively unconscionable where there was "little concrete evidence to

26  support [Plaintiff's] argument that the [mass arbitration provision] would result in significant

27  delay" and claimants could choose to opt out of the arbitration process and return to court).

28  Therefore, the court concludes the mass arbitration provision is not substantively unconscionable.

1    Third, Plaintiff argues that the Arbitration Agreement contains a discovery consolidation

2    provision that only benefits Defendants. (Doc. No. 21 at 20–21.) In particular, the Arbitration

3    Agreement provides that an arbitrator may for discovery purposes only, consolidate claims filed

4    by multiple individual employees in a single arbitration proceeding or conduct a joint hearing.

5    (Doc. No. 15-1 at 21.) In Plaintiff's view, this provision saves the Defendants costs while

6    delaying employees from having their claims heard individually by "allow[ing] the [employer] to

7    consolidate claims when it feels fit." (Doc. No. 21 at 20–21.) The court disagrees. The Arbitration

8    Agreement does not give Defendants the right to consolidate claims. Instead, it gives the

9    *arbitrator* the right to consolidate claims for discovery purposes only. (Doc. No. 15-1 at 21);

10   *Gonzalez v. Interstate Cleaning Corp*., No. 4:19-cv-07307-KAW, 2020 WL 1891789, at *7 (N.D.

11   Cal. Apr. 16, 2020) (provision allowing arbitrator to consolidate claims was not substantively

12   unconscionable).

13   Fourth, Plaintiff argues that the Arbitration Agreement includes unconscionable

14   limitations on discovery. (Doc. No. 21 at 21–24.) The Arbitration Agreement provides that

15   "absent a showing of compelling need, the parties shall engage only in limited discovery . . ."

16   (Doc. No. 15-1 at 20.) Each party "shall avoid broad or widespread collection, search and

17   production of documents, including electronically stored information." (*Id.*) If a "compelling need

18   is demonstrated" by a requesting party, the production must be "narrowly tailored in scope,"

19   "only come from sources that are reasonably accessible without undue burden or cost," "be

20   produced in a searchable format if [electronically stored information]," and "not require

21   electronic metadata." (*Id.*) Additionally, the Arbitration Agreement provides that each party is

22   limited to one interrogatory for the identification of potential witnesses, 25 requests for

23   production of documents, and a maximum of two eight-hour depositions. (*Id.*) However, the

24   arbitrator "may allow additional discovery upon a showing of substantial need by either party or

25   upon a showing of an inability to pursue or defend certain claims without such additional

26   discovery." (*Id.* at 21.)

27   Plaintiff argues that these limitations impose a stringent standard that benefits Defendants

28   while hampering employees' ability to prosecute their statutory claims. (*Id.* at 23.) Specifically,

1   Plaintiff asserts the limitations on the production of electronically stored information effectively

2   restrict only her because Defendants have "exclusive custody" of employment documents and

3   information. (Doc. Nos. 21 at 23.) Plaintiff further argues she will need to depose more than two

4   individuals in this case. (Doc. Nos. 21 at 23; 21-1.) In support of this contention, Plaintiff submits

5   the declaration of her attorney, Sepideh Ardestani.[5] (Doc. No. 21-1.) Therein, Attorney Ardestani

6   states she will need to depose several individuals, including individuals familiar with the

7   Arbitration Agreement and Defendants' onboarding process, an individual familiar with

8   Plaintiff's "employee counseling record" for missing time punches, a "person most

9   knowledgeable" with Defendants' wage and hour policies, experts, Plaintiff's supervisor, and

10  Plaintiff's coworkers. (*Id.*)

11          Defendants counter that the limitations on discovery are not substantively unconscionable

12  because the Arbitration Agreement requires arbitration to be initiated with JAMS but the

13  Arbitration Agreement is actually "more generous" than JAMS rules, which limit parties to one

14  deposition per side unless the arbitrator grants a request for additional depositions. (Doc. No. 27

15  at 14.) Defendants also emphasize that the Arbitration Agreement provides the arbitrator the

16  authority to grant additional discovery where a party demonstrates a "substantial need." (*Id.*)

17  Finally, Defendants argue that the Arbitration Agreement's limitation on the production of

18  electronically stored information "does nothing more than track the limitations set forth in Fed. R.

19  Civ. P. 26." (*Id.*)

20          "The California Supreme Court has made clear that 'limitation on discovery is one

21  important component of the simplicity, informality, and expedition of arbitration.'" *Poublon*, 846

22  F.3d at 1270 (citation omitted); *see also Dotson v. Amgen, Inc*., 181 Cal. App. 4th 975, 983

23  (2010) (holding that "discovery limitations are an integral and permissible part of the arbitration

24  process"). Parties can agree to "something less than the full panoply of discovery provided" by

---

25  [5] Defendants object to specific portions of Attorney Ardestani's declaration based on lack of
26  personal knowledge, lack of foundation/speculation, relevance, improper opinions, and
    misstatements of evidence. (Doc. No. 27-2.) As explained further below, even considering the
27  objected-to material from Attorney Ardestani's declaration, the court still finds Plaintiff has not
    shown the discovery limitation clause to be substantively unconscionable. For this reason, the
28  court need not address Defendants' evidentiary objections.

1   law. *Ramirez*, 16 Cal. 5th at 504 (quoting *Armendariz*, 24 Cal. 4th at 106). However, an

2   arbitration agreement "must generally permit employees sufficient discovery to adequately

3   arbitrate any statutory claims." *Id.*; *see also Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th

4   713, 727 (2017) ("[A]n arbitration agreement must [] ensure minimum standards of fairness so

5   employees can vindicate their public rights."). A court's assessment of whether discovery

6   provisions are adequate "should focus on general factors that can be examined without relying on

7   subsequent developments." *Ramirez*, 16 Cal. 5th at 506. These factors include "the types of

8   claims covered by the agreement, the amount of discovery allowed, the degree to which that

9   amount may differ from the amount available in conventional litigation, any asymmetries

10  between the parties with regard to discovery, and the arbitrator's authority to order additional

11  discovery." *Id.*

12      Here, the Arbitration Agreement covers individual wage and hour claims, not the types of

13  employment disputes typically characterized as factually complex, such as class actions,

14  employment discrimination, harassment, or wrongful termination claims. *See e.g.*, *Fitz v. NCR*

15  *Corp.*, 118 Cal. App. 4th 702, 717 (2004) (discovery allowed by arbitration agreement was

16  inadequate where age discrimination dispute was complex because its outcome was likely to be

17  determined by the testimony of multiple percipient witnesses and written information about the

18  disputed employment practice); *Baxter*, 16 Cal. App. 5th at 727 (discovery allowed by arbitration

19  agreement was inadequate where wrongful termination case was "factually complex" because it

20  involved a 12-year employment history, multiple witnesses, document relating to family leave

21  and evaluation polices, prior complaints, and an internal investigation). As noted above, the

22  default discovery allowed under the Arbitration Agreement is one interrogatory identifying

23  potential witnesses, 25 requests for production, and a maximum of two eight-hour days of

24  depositions of witnesses for each party. (Doc. No. 15-1 at 20.) In her opposition to the pending

25  motion, Plaintiff objects only to the Arbitration Agreement's limitations on the production of

26  electronically stored information and depositions, not the prescribed interrogatory and requests

27  for production limitations. (Doc. No. 21 at 23.) With respect to the limitations on electronically

28  stored information, Plaintiff concludes that an asymmetry exists because Defendants have

"exclusive custody" of documents and information. (*Id*.) Plaintiff fails to demonstrate that the limitations on electronically stored information, which explicitly apply to "each party[,]" will have a non-mutual effect. (Doc. No. 15-1 at 20.) While Defendants may possess employee employment records, employees are also likely to have access to the types of documents relevant to individual wage and hour claims, such as their own wage statements. Finally, the court agrees with Defendants that the Arbitration Agreement largely tracks Federal Rule of Civil Procedure 26 in narrowly tailoring the scope of discovery and requiring any production to come from sources that are reasonably accessible without undue burden or cost.

With respect to the limitation on depositions, the court disagrees with Plaintiff's reading that the Arbitration Agreement limits her to only two depositions. Under the express terms of the Arbitration Agreement, Plaintiff can take "as many depositions as [she] wants over the course of two eight-hour days in which deposition proceedings are held." *Horne v. Starbucks Corp*., No. 2:16-cv-02727-MCE-CKD, 2017 WL 2813170, at *3 (E.D. Cal. June 29, 2017); (*see also* Doc. No. 15-1 at 20). In other words, on its face the Arbitration Agreement provides each party 16 hours for deposition proceedings, for a total of 32 hours. However, even if the Arbitration Agreement were read as only permitting two depositions, Plaintiff has not demonstrated two depositions are inadequate for employees bringing individual wage and hour claims, particularly in light of the permitted interrogatory and requests for production. Indeed, courts have determined that similar limitations on discovery are not substantively unconscionable. *See e.g.*, *Sherman v. Atria Senior Living, Inc*., No. 2:20-cv-02460-MCE-KJN, 2021 WL 4443257, at *4 (E.D. Cal. Sept. 28, 2021) (discovery limitations were not unconscionable where arbitration agreement limited discovery to one interrogatory, twenty-five requests for production of documents, and a maximum of two eight-hour depositions of witnesses and permitted the arbitrator to expand these limitations); *Rezaeian v. Starbucks Corp*., No. 2:16-cv-04599-JAK-AS, 2017 WL 11635407, at *8 (C.D. Cal. Feb. 8, 2017) (same); *Ortega v. UnitedHealth Grp., Inc*., No. 4:23-cv-05596-JST, 2024 WL 4495817, at *6 (N.D. Cal. Oct. 15, 2024) (same); *cf. Zamudio*, 2024 WL 2055146, at *9 (holding that JAMS rules for arbitration, which provide one deposition per side unless an arbitrator grants a request for more, are adequate).

1      Rather, Plaintiff argues that the discovery provision is unconscionable when applied to her

2      because she will need to depose more than two individuals to arbitrate her claims. But given

3      recent developments in this area of the law since briefing on the pending motion was completed,

4      Plaintiff's argument in this regard is now foreclosed. Specifically, the parties completed their

5      briefing on Defendants' motion to compel arbitration just a few weeks before the California

6      Supreme Court's issuance of its decision in *Ramirez*, which disapproved of several cases setting

7      forth a line of reasoning that the unconscionability of discovery limitations should be assessed "as

8      applied to a particular plaintiff." *Ramirez*, 16 Cal. 5th at 478. In *Ramirez*, the plaintiff argued that

9      an arbitration agreement's discovery provision was substantively unconscionable because it

10     allowed for only four depositions while she would need at least seven to substantiate her claims.

11     *Id.* at 505. The California Court of Appeal agreed, holding that the authorized discovery was

12     inadequate to permit plaintiff a fair pursuit of her claims. *Id.* The California Supreme Court

13     reversed, holding that the unconscionability assessment should focus on "general factors that can

14     be examined without relying on subsequent developments," meaning "circumstances known at

15     the time the agreement was made." *Id.* Accordingly, *Ramirez* forecloses Plaintiff's argument that

16     the Arbitration Agreement's discovery provisions are unconscionable because the number of

17     depositions provided are insufficient as applied to her.

18      To the extent Plaintiff's arguments regarding the number of depositions she requires still

19     has bearing on the unconscionability assessment, the court is unpersuaded that Plaintiff would be

20     unable to vindicate her rights without taking the depositions she anticipates she would need. For

21     example, Plaintiff alleges she needs to depose individuals familiar with the Arbitration

22     Agreement, Defendants' onboarding process, and how Plaintiff's electronic signature was

23     obtained, but these issues are irrelevant to the substance of her wage and hour claims. Nor is it

24     clear that for her wage and hour claims Plaintiff would need to depose numerous coworkers or

25     supervisors regarding her work history, which lasted approximately one year. *Cf. Fitz*, 118 Cal.

26     App. 4th at 717 (plaintiff had a twenty-year work history with defendant and brought age

27     discrimination claims); *Baxter*, 16 Cal. App. 5th at 727 (limitations on discovery were

28     unconscionable where plaintiff had a twelve-year employment history and made a factual

1    showing that the outcome of her wrongful termination claims would depend upon several

2    witnesses). Several courts have rejected a party's argument that discovery limitations are

3    substantively unconscionable where that party fails demonstrate that an arbitration agreement

4    provides them with insufficient discovery to arbitrate their claims. *See e.g.*, *Sanchez v. Carmax*

5    *Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398, 404 (2014) (discovery limitations were not

6    unconscionable where employee failed to show they would prevent him from vindicating his

7    rights); *Hicks v. Utiliquest, LLC*, No. 2:24-cv-00911-DJC-AC, 2024 WL 3011242, at *8 (E.D.

8    Cal. June 11, 2024) ("Plaintiff fails to argue that the arbitration agreement provides him

9    insufficient discovery, which is sufficient to deny finding that the discovery limitation is

10   substantively unconscionable."); *Poublon*, 846 F.3d at 1261 (same).

11           Finally, the Arbitration Agreement authorizes the arbitrator to resolve all discovery

12   disputes and grant additional discovery beyond the default limitations. (Doc. No. 15-1 at 21.) As

13   Plaintiff points out, the Arbitration Agreement appears to provide two different standards for

14   obtaining additional discovery: a showing of "compelling need" or "substantial need." (Doc. No.

15   15-1 at 20–21.) The "discovery" section of the Arbitration Agreement states that "absent a

16   showing of compelling need, the parties shall engage only in limited discovery." (Doc. No. 15-1

17   at 20.) However, the "arbitrator's authority" section of the Arbitration Agreement states that the

18   arbitrator shall decide all disputes related to discovery and "may allow additional discovery upon

19   a showing of substantial need." (*Id.* at 21.) Regardless of which standard applies, "[a]llowing the

20   arbitrator to deviate from agreed-upon default discovery limits ensures that neither party will be

21   unfairly hampered in pursuing a statutory claim based on circumstances that arise post-

22   formation." *Ramirez*, 16 Cal. 5th at 506 (noting that "giving the arbitrator authority to expand

23   upon discovery based on *Armendariz*'s requirement [that an arbitration agreement must generally

24   permit employees sufficient discovery to adequately arbitrate any statutory claims] is one way"

25   concerns about the adequacy of discovery can be addressed). Indeed, several courts have held that

26   similar limitations on discovery are not substantively unconscionable where an arbitrator can

27   grant additional discovery upon a showing of "substantial need," as is the case here. *See e.g.*,

28   *Carmax*, 224 Cal. App. 4th at 404; *Sabouhi v. Starbucks Corp.*, No. 2:21-cv-04446-MEMF-PLA,

1   2022 WL 2101727, at *7 (C.D. Cal. Mar. 14, 2022); *Baghdasarian v. Macy's, Inc*., No. 2:21-cv-

2   04153-AB-MAA, 2021 WL 12251599, at *10 (C.D. Cal. Oct. 28, 2021). Therefore, the court

3   concludes the discovery limitation clause is not substantively unconscionable.

4         Fifth, Plaintiff argues that the Arbitration Agreement contains an unconscionable

5   confidentiality provision. (Doc. No. 21 at 24.) Plaintiff asserts this provision has a one-sided

6   effect favoring Defendants because it prevents employees from bringing similar claims or

7   contacting other employees for helpful information. *Id*. But as Defendants correctly point out,

8   Plaintiff's argument has been rejected by federal and state courts. *See e.g.*, *Poublon*, 846 F.3d at

9   1267 (holding that a confidentiality clause is not substantively unconscionable); *Carmax*, 224

10  Cal. App. 4th at 408 (rejecting policy argument that confidentiality provisions "inhibit employees

11  from discovering evidence from each other"). There is nothing unreasonable or prejudicial about

12  "a secrecy provision with respect to the parties themselves." *Woodside Homes of Cal., Inc. v.*

13  *Superior Court*, 107 Cal. App. 4th 723, 732 (2003).

14        Sixth, Plaintiff asserts that a provision in the Arbitration Agreement preventing employees

15  from bringing representative actions unlawfully restricts actions under California's Private

16  Attorneys General Act ("PAGA"). (Doc. No. 21 at 25–26.) The Arbitration Agreement states that

17  claims will only be arbitrated on an "individual basis" and employees waive their right to bring

18  "any class, collective, or representative proceeding." (Doc. No. 15-1 at 18.) Plaintiff contends the

19  Arbitration Agreement's waiver of "representative proceedings" includes representative suits

20  under PAGA. (Doc. No. 21 at 25.) Plaintiff argues that consequently, this provision is

21  unenforceable because wholesale waivers of the right to bring a representative action under

22  PAGA are unenforceable under California law. (*Id.*)

23        As an initial matter, Plaintiff has not brought a PAGA claim so the alleged PAGA waiver

24  is not relevant to the matter before the court. *See e.g.*, *Velazquez v. CEC Ent., LLC*, No. 2:24-cv-

25  03519-AB-AGR, 2024 WL 4560169, at *6 (C.D. Cal. Oct. 23, 2024) (PAGA waiver presented no

26  barrier to the enforcement of an arbitration agreement where plaintiff did not allege a PAGA

27  claim); *Gonzales v. Charter Commc'ns, LLC*, 497 F. Supp. 3d 844, 854 (C.D. Cal. 2020)

28  (challenge to PAGA waiver was irrelevant to substantive unconscionability analysis where

1    plaintiff did not bring a PAGA claim).

2    　　　　Nonetheless, Plaintiff's challenge to the PAGA waiver provision also fails because she

3    misunderstands the two key decisions she cites in support of her argument: *Iskanian v. CLS*

4    *Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014) and *Viking River Cruises, Inc. v.*

5    *Moriana*, 596 U.S. 639 (2022). In *Iskanian*, the California Supreme Court held that where "an

6    employment agreement compels the waiver of representative claims," whether or not the

7    agreement specifically references PAGA, it "frustrates the PAGA's objectives" and "is contrary

8    to public policy and unenforceable as a matter of state law." 59 Cal. 4th at 384. In *Viking River*

9    *Cruises, Inc. v. Moriana*, 596 U.S. 639, 662 (2022), the United States Supreme Court considered

10    whether the FAA preempted *Iskanian*'s interpretation of PAGA. The Supreme Court in *Viking*

11    *River* clarified that PAGA claims are representative in two distinct senses: "PAGA actions are

12    'representative' in that they are brought by employees acting as representatives—that is, as agents

13    or proxies—of the State. But PAGA claims are also called 'representative' when they are

14    predicated on code violations sustained by other employees." *Id.* at 648. In *Viking River*, the

15    Supreme Court explained that the principal rule in *Iskanian* prohibited waivers of 'representative'

16    PAGA claims in the first sense, meaning it "prevent[ed] parties from waiving *representative*

17    *standing* to bring PAGA claims in a judicial or arbitral forum." *Id.* at 649. Further, in *Viking Riker*

18    the Supreme Court held that *Iskanian*'s principal rule prohibiting wholesale PAGA waivers was

19    not preempted by the FAA, but the FAA does preempt the rule of *Iskanian* "insofar as [that rule]

20    precludes division of PAGA actions into individual and non-individual claims through an

21    agreement to arbitrate." *Id.* In other words, because PAGA claims consist of both individual and

22    non-individual (representative) claims, a plaintiff's individual PAGA claims can still be

23    compelled to arbitration under the FAA even where an arbitration agreement contains a wholesale

24    PAGA waiver.

25    　　　　Here, the Arbitration Agreement does not run afoul of *Viking River* or *Iskanian* because it

26    does not contain a wholesale PAGA waiver. The Arbitration Agreement states the parties agree to

27    waive the "right to bring, participate in, join, or receive money or any other relief from any class,

28    collective, or representative proceeding." (Doc. No. 15-1 at 18.) Immediately preceding that

1    sentence, however, the Arbitration Agreement also states "[c]overed [c]laims will be arbitrated

2    only on an individual basis." (*Id.*) In other words, the Arbitration Agreement allows an employee

3    to bring an individual PAGA claim in arbitration. The waiver of a representative proceeding

4    "refers to non-individual or class claims." *See Valencia v. Mattress Firm, Inc*., No. 3:22-cv-

5    06875-WHA, 2023 WL 2062951, at *3 (N.D. Cal. Feb. 16, 2023); *see also Vazquez v. Tommy*

6    *Bahama R&R Holdings, Inc*., No. 3:22-cv-01881-JES-KSC, 2023 WL 8264554, at *6 (S.D. Cal.

7    Nov. 29, 2023) (no wholesale waiver existed where the word "representative" referred to the

8    second meaning articulated by *Viking River* "because it [was] grouped with the waiver to pursue

9    class and group actions"). Because the parties did not agree to waive both individual and

10   representative claims, there is no wholesale waiver. *See Dhaliwal v. Ace Hardware Corp*., No.

11   2:22-cv-00446-DAD-KJN, 2023 WL 2555471, at *8 (E.D. Cal. Mar. 17, 2023) (arbitration

12   agreement did not operate as a wholesale waiver where plaintiff was permitted to raise their

13   individual portion of a PAGA claim in arbitration); *Martinez-Gonzalez v. Elkhorn Packing Co.,*

14   *LLC*, 635 F. Supp. 3d 883, 898–99 (N.D. Cal. 2022) (same); *Shams v. Revature LLC*, 621 F.

15   Supp. 3d 1054, 1057 (N.D. Cal. 2022) ("Because the waiver only waives Shams' right to bring

16   non-individual PAGA claims, it is permissible under *Viking River Cruises*."); *Filemon Colores v.*

17   *Ray Moles Farms, Inc*., No. 1:21-cv-00467-JLT-BAM, 2023 WL 2752379, at *6 (E.D. Cal. Mar.

18   31, 2023) ("Because the Agreement does not prohibit Colores from bringing agent/proxy claims

19   on behalf of the State, it is not an impermissible 'wholesale' PAGA waiver[.]").[6]

20         Finally, to the extent Plaintiff is arguing that the waiver of representative actions is

21   substantively unconscionable because it contains a PAGA waiver prohibited by California law,

22   her argument is foreclosed by applicable precedent. "Under California law, '[c]ontracts can be

23   contrary to public policy but not unconscionable and vice versa.'" *Poublon*, 846 F.3d at 1264

24   (rejecting argument that arbitration agreement was substantively unconscionable because it

25   contained an unenforceable PAGA waiver). Indeed, the United States Supreme Court has

26   _____

27   [6] Because the court finds that there is no wholesale PAGA waiver in the Arbitration Agreement,
     and given that Plaintiff has not asserted a PAGA claim in this action, the court need not address
     whether a hypothetical wholesale PAGA waiver would be severable from the Arbitration
28   Agreement.

1   suggested arbitration agreements can generally waive representative claims and still be

2   enforceable. *Concepcion*, 563 U.S. at 336; *see also Poublon*, 846 F.3d at 1264 ("[E]ven if the

3   parties cannot lawfully agree to waive a PAGA representative action, *Concepcion* weighs sharply

4   against holding that the waiver of other representative, collective or class action claims, as

5   provided in the dispute resolution provision, is unconscionable.").

6        In sum, the court concludes Plaintiff has failed to meet her burden of demonstrating the

7   Arbitration Agreement is unconscionable. *Shivkov*, 974 F.3d at 1059. Having concluded that

8   Defendants have met their burden of establishing Plaintiff signed the Arbitration Agreement, and

9   the Arbitration Agreement is not unconscionable, the court finds that it must "enforce the

10  arbitration agreement in accordance with its terms." *Johnson*, 57 F.4th at 680–81. The terms of

11  the Arbitration Agreement clearly state that Plaintiff must "individually arbitrate" her wage and

12  hour claims. (Doc. No. 15-1 at 18). Consequently, the court will grant Defendants' motion to

13  compel Plaintiff to arbitrate her individual claims.

14  **C.    Class Action Waiver**

15       Defendants argue this court should dismiss Plaintiff's class claims because pursuant to the

16  Arbitration Agreement, she agreed to arbitrate her claims on an individual basis only. (Doc. No.

17  15 at 24.) An arbitration agreement may contain an enforceable waiver that waives the right to

18  initiate or participate in a class action. *See Concepcion*, 563 U.S. at 351; *Prostek*, 662 F. Supp. 3d

19  at 1122; *Ruiz*, 2023 WL 3379300, at *10. Here, the terms of the Arbitration Agreement require

20  that all covered claims be submitted and arbitrated on an individual basis. (Doc. No. 15-1 at 18.)

21  Plaintiff expressly waived the right to initiate or participate in any class action. (*Id.*) Apart from

22  arguing that the Arbitration Agreement as a whole is unconscionable, Plaintiff does not contend

23  that the class action waiver is inapplicable or unenforceable. Therefore, the court will give effect

24  to the Arbitration Agreement's class action waiver and dismiss all of Plaintiff's putative class

25  claims. *See Concepcion*, 563 U.S. at 351. This action will therefore be stayed pending arbitration

26  of Plaintiff's individual claims—the only claims remaining in this case. *See Smith v. Spizzirri*,

27  601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable

28  dispute, and a party requests a stay pending arbitration, Section 3 of the FAA compels the court to

1  stay the proceeding.").

2  **CONCLUSION**

3  For the reasons explained above:

4  1.  Defendants' motion to compel arbitration of Plaintiff's individual claims (Doc.
5      No. 15) is granted;

6  2.  Defendants' motion to dismiss Plaintiff's putative class claims (Doc. No. 15) is
7      granted;

8  3.  Plaintiffs' putative class claims are dismissed;

9  4.  This action is stayed in its entirety pending the completion of arbitration of
10     Plaintiff's individual claims;

11  5.  The parties shall file a joint status report ninety (90) days from the date of entry of
12      this order, and every 90 days thereafter, regarding the status of the arbitration
13      proceedings;

14  6.  Within fourteen (14) days of the completion of the arbitration proceedings, the
15      parties shall file a joint status report to notify the court of the arbitrator's decision
16      and request that the stay of this case be lifted; and

17  7.  In light of this order, Defendants' pending motion to dismiss (Doc. No. 17) is
18      administratively terminated, to be reactivated upon the lifting of the stay, if
19      appropriate.

21  IT IS SO ORDERED.

22  Dated:  __January 6, 2025__

Dena Coggins
23  United States District Judge

26