Jamie K. Serb, Esq. (SBN 289601)
jamie@crosnerlegal.com
Sepideh Ardestani, Esq. (SBN 274259)
sepideh@crosnerlegal.com
Zachary M. Crosner, Esq. (SBN 272295)
zach@crosnerlegal.com
**CROSNER LEGAL, PC**
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff
TENIAH TERCERO

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TENIAH TERCERO, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SACRAMENTO LOGISTICS LLC, a Delaware Limited Liability Company; C&S LOGISTICS OF SACRAMENTO/TRACY LLC, a Delaware Limited Liability Company; C&S WHOLESALE GROCERS, LLC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:2:24-cv-00953-MCE-JDP<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Request for Judicial Notice; and [Proposed] Order]*<br><br>**Date: May 16, 2025**<br>**Time: 1:30 p.m.**<br>**Courtroom: 9**<br>**Judge: Hon. Dena Coggins** |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 16, 2025 at 1:30 p.m., or as soon thereafter as the matter can be heard in Courtroom 8, 13th Floor of the Robert T. Matsui United States Courthouse, located at 501 I Street, Sacramento, California 95814, plaintiff Tenia Tercero ("Plaintiff") will and hereby does move this Court for an Order remanding the instant Action back to the state court in which it was originally filed. This Motion will be based on this Notice, the Memorandum of Points and Authorities, Plaintiff's Request for Judicial Notice, the complete files and records in this action, and all other matters and evidence that may be presented at the hearing on this Motion.

Plaintiff moves this Court to remand this Action back to the State Court where it belongs, and that the Clerk of the Court send a certified copy of the Order to the clerk of the State Court where the Action was originally filed, because this Court lacks subject matter jurisdiction over the Action on the following grounds: 1) CAFA does not apply because Defendants cannot demonstrate that the amount-in-controversy exceeds $5,000.000; 2) Defendants cannot demonstrate that the amount-in-controversy exceeds $75,000 to establish diversity jurisdiction; and 3) Defendants' preemption claim pursuant to § 301 of the Labor Management Relations Act (LMRA) fails under the two-prong test set forth in *Burnside v. Kiewit Pac. Corp.* (9th Cir. 2007) 491 F.3d 1053, 1059, thus no federal question jurisdiction exists.

Dated: March 26, 2025                    **CROSNER LEGAL, P.C.**


By: */s/ Sepideh Ardestani*
    Jamie K. Serb, Esq.
    Sepideh Ardestani, Esq.
    Zachary M. Crosner, Esq.

    Attorneys for Plaintiff
    TENIAH TERCERO

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.    LEGAL STANDARDS................................................................................3

    A.    Plaintiff's Motion for Order Remanding this Action is Timely ...............4

    B.    Diversity Jurisdiction Requires Evidentiary Showing ..............................5

        1.    CAFA Jurisdiction................................................................5

        2.    Traditional Diversity Jurisdiction .........................................6

    C.    Legal Standard for LMRA § 301 Preemption...........................................6

III.    NO EVIDENCE SHOWS THE REQUISITE AMOUNTS IN
CONTROVERSY ...................................................................................8

    A.    Defendants have not produced evidence....................................................8

        1.    Defendants' Declaration Does Not Support Their Amount in
Controversy ........................................................................10

        2.    Defendants' Meal Period and Rest Break Assumptions Are
Unreasonable .......................................................................10

        3.    Defendants' Other Calculations Are Arbitrary and Unsupported....13

        4.    Defendants' Waiting-Time Penalty Calculation Is Arbitrary and
Unsupported........................................................................14

        5.    Defendants' Alleged Wage Statement Penalties Amount Is
Unsupported....................................**Error! Bookmark not defined.**

        6.    Defendants Business Expense Amount Is Unsupported .................15

        7.    Defendants' Attorneys' Fees Assumption Is Inflated and Improper 15

    B.    Defendants' Alleged $75,000 Amount in Controversy Lacks Evidence.16

        1.    No Evidence Supports Defendants' Alleged Amount in
Controversy ........................................................................16

        2.    Defendants' Attorney Fee Assumption Is Flawed and Improper.....17

    C.    LMRA Preemption Does Not apply...........................................................18

        1.    The *Burnside* Analysis Does Not Preempt Plaintiff's Claims ........18

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING ACTION TO
STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

2.   The CBA's Grievance Procedure Does Not Support LMRA

Preemption........................................................................................22

IV.  CONCLUSION.......................................................................................23

# TABLE OF AUTHORITIES

**CASES**

*14 Penn Plaza LLC v. Pyett* (2008) 556 U.S. 247 ................................... 20

*Alaska Airlines Inc. v. Schurke*, 898 F.3d 904 (9th Cir. 2018) ......................... 5, 18

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) ....................................... 5, 18

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S. Ct. 1904,

85 L. Ed. 2d 206 (1985) ...................................................................... 20

*Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) ...................... 4, 8

*Arias v. Shyft Grp. GTB, LLC*, No. CV 23-1582-JFW(DFMX), 2023 WL 3559311,

at *2-3 (C.D. Cal. May 17, 2023) ....................................................... 1

*Armstrong v. Ruan Trans. Co.*, EDCV 16-1143-VAP (SPx), 2016 WL 6267931, at

*3 (C.D. Cal. Oct. 25, 2016) ............................................................ 10

*Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014)............. 8

*Avila v. Rue21, Inc.*, 432 F.Supp.3d 1175 (E.D. Cal. 2020) .................................... 1

*Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102 (9th Cir. 2000) ...... 5

*Beckwith-Cohen v. VibrantCare Rehabilitation, Inc.*, 2021 WL 5905956 (E.D. Cal.,

Dec. 14, 2021, No. 221CV01180TLNJDP) ........................................... 1

*Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, *1003-04 (C.D. Cal. 2009) ......... 3

*Biag v. King George - J&J Worldwide Servs. LLC,* No. 20-CV-307-BAS-DEB,

2020 WL 4201192, *2 (S.D. Cal. July 22, 2020)................................... 3

*Bruccheri v. Aramark Uniform Services, LLC*, 2018 WL 5617197,

*3-4 (E.D. Cal. 2018)........................................................................ 17

*Burnside v. Kiewit Pac. Corp.* (9th Cir. 2007) 491 F.3d 1053 ....................... , 2, 5

*Carranza v. Nordstrom, Inc.*, NO. EDCV 14–01699 MMM (DTBx), 2014 WL

10537816, at *9 (C.D. Cal. Dec. 12, 2014)........................................ 14

*Caterpillar Inc. v. Lewis*, 519 U.S. 61, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996) ... 3

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) .................................................. 8

*Contreras v. J.R. Simplot Co.*, 2017 WL 4457228, at *3 (E.D. Cal. Oct. 6, 2017) .. 7

*Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001) .............6, 16, 19

*Dart Cherokee Basin Operating Co., LLC v. Owens* ["*Dart Cherokee*"]

574 U.S. 81 (2014) .......................................................................................... 3, 4

*Davenport v. Wendy's Co.,* 2013 WL 6859009, at *6 (E.D. Cal., Dec. 2016)) ....... 16

*Davis v. Empire Chauffeur Service, LTD et al*, Case No. 2:23-cv-07968-MEMF-

SSC (C.D. Cal. March 18, 2024 .......................................................................... 2

*Dobbs v. Wood Grp. PSN, Inc.*, 201 F.Supp.3d 1184 (E.D. Cal. 2016)........ 1, 4, 6, 8

*Duran v. Allegis Glob. Sols., Inc.,* 2021 WL 3281073 (N.D. Cal. Aug. 2, 2021) ... 10,

11

*Duran v. Allegis Glob. Sols., Inc.,* 2021 WL 3281073, at *3

(N.D. Cal. Aug. 2, 2021) ..........................................................................12, 13, 14

*Freeman v. Mercy Servs. Corp.*, No. 2:16-cv-01151-TLNKJN, 2017 WL 2572428,

at *3-4 (E.D. Cal., June 14, 2017 ...................................................................... 10

*Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018) ........ 13, 16

*Fritsch v. Swift Transportation Company of Arizona, LLC*, 899 F.3d 785 (9th Cir

2018) ................................................................................................................. 15

*Garibay v. Archstone Cmtys. LLC*, 539 Fed. Appx. 763 (9th Cir. Aug. 27, 2013) 13,

16

*Gaus v. Mile, Inc.*, 980 F.2d 564 (9th Cir. 1992) ......................................................... 3

*Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir. 2001) ......................................... 16

*Gonzalez Quiroz v. Coffman Specialties, Inc.*, 2020 WL 7258725

(S.D. Cal. 2020), at *4 ...................................................................................... 17

*Gonzalez v. H & M Hennes Mauritz L.P. et al.*, 2022 WL 179292, at *4

(C.D. Cal. Jan. 20, 2022) ................................................................................ 1, 9

*Gonzalez v. H&M Hennes & Mauritz L.P.*, 2022 WL 179292, at *3

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING ACTION TO
STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

(C.D. Cal. Jan. 20, 2022) ................................................................................ 8

*Guglielmino v. McKee Foods Corp.*, 506 F.3d 696 (9th Cir. 2007) ........................ 4

*Harris v. KM Indus., Inc.*, 980 F.3d 694 (9th Cir. 2020) .......................................... 4

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994) ........................................ 18

*Hernandez v. DermCare Mgmt., LLC,* 2023 WL 6319851 (C.D. Cal. Sept. 28,
   2023) ................................................................................................................ 1

*Humble v. Boeing Co.*, 305 F.3d 1004 (9th Cir. 2002) ..................................... 5, 16

*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193 (9th Cir. 2015) ........................... 4, 6

*Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989 (9th Cir. 2022) ............ 7

*Kamm v. ITEX Corp.*, 568 F.3d 752 (9th Cir. 2009) ................................................ 3

*Koreisz v. On Q Fin., Inc.*, 2018 WL 6567694, at *3 (C.D. Cal. Dec. 12, 2018) . 1, 9

*Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199 (E.D. Cal. 2008) ............... 4

*Lacasse v. USANA Health Sci., Inc.*, 2021 WL 107143, at *3 (E.D. Cal. Jan. 12,
   2021) .............................................................................................................. 11

*LaCross v. Knight Transp. Inc.*, 775 F.3d 1200 (9th Cir. 2015) .............................. 8

*Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395 (9th Cir. 2010) ............................ 5

*Lindsey v. WC Logistics, Inc.*, 586 F. Supp. 3d 983 (N.D. Cal. 2022) .................... 5

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988) .............................. 5

*Lopez v. Sysco Corporation*, 2016 WL 3078840 (N.D. Cal. 2016) ...................... 18

*Luther v. Countrywide Home Loans Servicing, LP,* 533 F.3d 1031 (9th Cir. 2008). 3

*Magee v. Iconix Waterworks (US) Inc.*, No. 2:20-CV-00840- KJM-DB, 2020 WL
   4188607, at *3 (E.D. Cal., July 2020) .................................................................. 16

*Magee, supra*, 2020 WL 4188607, at *3 ............................................................... 16

*Miller v. AT&T Network Systems* (9th Cir. 1988) 850 F.2d 543 ............................. 19

*Munoz v. Central Parking Sys., Inc.*, No. CV 10-6172, 2010 WL 3432239, at *2
   (C.D. Cal. Aug. 20, 2010) ................................................................................. 10

*Nickolas Scott Wrightnour v. Marriott Hotel Service, LLC*, et al. (C.D. Cal., May
   23, 2024, No. 5:24-CV-00465-SSS-SHKX) 2024 WL 2625993, at *3 .............. 12

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING
ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

*Pac. Mar. Ass'n v. Mead*, 246 F.Supp.2d 1087 (N.D. Cal. 2003) ........................... 3

*Peters v. TA Operating LLC*, 2023 WL 1070350 (C.D. Cal. Jan. 26, 2023) ........ 2, 6

*Placencia v. Amcor Packaging Distribution, Inc*., 2014 WL 2445957, *2
    (C.D. Cal. May 12, 2014) ................................................................. 18

*Ramirez v. Yosemite Water Company*, 20 Cal. 4th 785(1999)........................ 16, 19

*Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975 (9th Cir. 2013) ................. 4

*Ross v. Stater Bros Markets*, No. 5:19-CV-00755-SJO (KKx), 2019 WL 6332241,
    at *4 (C.D. Cal. Aug. 8, 2019) ............................................................ 17

*Rutledge v. Healthport Techs., LLC*, 2017 WL 728375, at *2
    (N.D. Cal. Feb. 24 2017).................................................................... 11

*Ryan v. Mission Treatment Servs., Inc.*, 2022 WL 4331093, at *3
    (C.D. Cal. Sept. 19, 2022) ............................................................... 1, 9

*Salazar v. Johnson & Johnson Consumer Inc*., 2018 WL 4560683, at *3
    (C.D. Cal. Sept. 19, 2018)................................................................. 10

*Sanchez v. Vanderlande Indus., Inc.*, No. CV 23-531-JFW(MAAX), 2023 WL
    2862288, at *4 (C.D. Cal. Apr. 10, 2023) ............................................ 1

*Serrano v. 180 Connect, Inc.*, 478 F.3d 1018 (9th Cir. 2007) ................................. 4

*Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373 (9th Cir. 1977) ................. 6

*Smith v. Diamond Resorts Mgmt.*, 2016 WL 356020, at * 5 (C.D. Cal. 2016) ... 7, 14

*Smith v. Greyhound Lines, Inc*., 2018 WL 6593365, *6-7 (E.D. Cal. 2018) .......... 17

*Stone v. Sysco Corp.*, 2016 WL 6582598, *7-8 (E.D. Cal. 2016)......................... 17

*Taylor v. United Road Services, Inc.*, 313 F.Supp.3d 1161 (E.D. Cal. 2018)........... 1

*Textron Lycoming Reciprocating Engine Div.*, *Avco Corp. v. United Automobile,
    Aerospace and Agricultural Implement Workers of America, International Union
    and Its Local 787*, 118 S. Ct. 1626 (1998) ......................................... 17

*Toribio v. ITT Aerospace Controls LLC*, 2019 WL 4254935, at *3
    (C.D. Cal. Sept. 5, 2019).................................................................. 1, 9

*United States v. Cotton*, 535 U.S. 625 (2002) ....................................................... 3

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING ACTION TO
STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

*Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004) ........................................ 3

*Vanegas v. DH Express (USA), Inc.*, 2021 WL 1139743, at \*4

    (C.D. Cal. Mar. 24, 2021) ............................................................................ 1, 9, 11

*Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F.Supp.3d 932

    (C.D. Cal 2014)............................................................................5, 16, 17, 19

*Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F.Supp.3d 932

    (C.D. Cal. 2014)......................................................................................... 4, 13

*Vasserman v. Henry Mayo Newhall Memorial Hospital* (2017) 8 Cal.App.5th 236

    ............................................................................................................... 20

*Walker v. CorePower Yoga, LLC*, No 12-cv-4, 2013 WL 2338675, at \*6

    (S.D. Cal. 2013) ............................................................................................ 16

*Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 1:13-cv-01092-LJO-JLT,

    2013 WL 5274283, at \*6 (C.D. Cal. Sept. 17, 2013) ....................................... 10

*Whitaker v. U.S. Renal Care, Inc.*, No. CV 17- 2661-R, 2017 WL 3412203, at \*2

    (C.D. Cal. Aug. 8, 2017)............................................................................... 10

*Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806 (C.D. Cal. 2020) ................... 6

*Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70 ......................... 20


STATUTES

28 U.S.C.A. § 1447(c) (West)....................................................................... 3

Cal. Lab. Code § 226(a) ............................................................................. 7

Cal. Lab. Code § 512(e) ............................................................................. 18

Cal. Lab. Code § 514 ................................................................................. 16, 17

Class Action Fairness Act (CAFA) 28 U.S.C. §§ 1332(d)...................................... 1, 4, 5

Federal Rules of Evidence ("FRE"), Rule 901 ................................................. 15

Labor Management Relations Act ("LMRA") §301 ...................................... 5, 17, 18

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING
ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

**This Court has already remanded the related cases of Tercero II and Tercero III action back to State Court** as Defendants C&S Logistics of Sacramento/Tracy LLC and C&S Wholesale Grocers, LLC (collectively, "Defendants") failed to put forth grounds for this Court's subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), traditional diversity jurisdiction, or federal question jurisdiction.

With respect to CAFA, Defendants acknowledge that removal requires more than 100 class members yet have not evidenced that this requirement is met. [Defendants' Notice of Removal ("NOR"), ¶ 29.]  Moreover, Defendants admittedly have not put forward any evidentiary support for removal under CAFA. As a result, Defendants attempt to establish the requisite amount in controversy merely by pulling violation rates out of thin air — a strategy that courts reject, "whether [they] characterize[] them as 'conservative' or not"[1]

Further, courts consistently remand class actions after determining that the limiting language in the operative complaint — each similar to the Complaint here— did not support the defendant's assumed violations rates. See *Hernandez v. DermCare Mgmt., LLC*, 2023 WL 6319851 (C.D. Cal. Sept. 28, 2023); *Calderon, et al. v. Bio-Medical Applications of Mission Hills, Inc. dba Fresenius Kidney care Mission Hills*, 2023 WL 6130524 (C.D. Cal. Sept. 18, 2023); *Arias v. Shyft Grp. GTB, LLC*, No. CV 23-1582-JFW(DFMX), 2023 WL 3559311, at *2-3 (C.D. Cal. May 17, 2023); *Peters v. TA Operating LLC,* No. EDCV221831JGBSHKX, 2023 WL 1070350, at *5 (C.D. Cal. Jan. 26, 2023); *Davis v. Empire Chauffeur Service, LTD et al,* Case No. 2:23-cv-07968-MEMF-SSC (C.D. Cal. March 18, 2024).

---

[1] See, e.g., *Beckwith-Cohen v. VibrantCare Rehabilitation, Inc.*, 2021 WL 5905956 (E.D. Cal., Dec. 14, 2021, No. 221CV01180TLNJDP); *Dobbs v. Wood Group PSN, Inc.*, 201 F.Supp.3d 1184 (E.D. Cal. 2016) ; *Avila v. Rue21, Inc.*, 432 F.Supp.3d 1175 (E.D. Cal. 2020); *Taylor v. United Road Services, Inc.*, 313 F.Supp.3d 1161 (E.D. Cal. 2018); *Sanchez v. Vanderlande Indus., Inc.*, No. CV 23-531-JFW(MAAX), 2023 WL 2862288, at *4 (C.D. Cal. Apr. 10, 2023); *Ryan v. Mission Treatment Servs., Inc.*, 2022 WL 4331093, at *3 (C.D. Cal. Sept. 19, 2022) (quoting *Gonzalez v. H & M Hennes Mauritz L.P. et al.*, 2022 WL 179292, at *4 (C.D. Cal. Jan. 20, 2022)); see also *Toribio v. ITT Aerospace Controls LLC*, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019); *Vanegas v. DH Express (USA), Inc.*, 2021 WL 1139743, at *4 (C.D. Cal. Mar. 24, 2021); *Koreisz v. On Q Fin., Inc.*, 2018 WL 6567694, at *3 (C.D. Cal. Dec. 12, 2018).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING
ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

Separately, Defendants attempt to remove this Action based on traditional diversity grounds under 28 U.S.C. sections 1332 and 1441(b) with conclusory assertions that they satisfied the $75,000 amount in controversy requirement. However, Defendants rely on overinflated assumptions and violation rates with no reasonable foundation. Most notably, after calculating, without evidence, approximately $5,640,257.50 in controversy, Defendants assume attorneys' fees will be $96,079.12. This runs counter to precedent in the Ninth Circuit.

Finally, Defendants' third attempt to remove this Action is based on Federal Question Jurisdiction, and must fail as this Court lacks subject matter jurisdiction over this action alleging purely state law violations — and not alleging anything at all about any collective bargaining agreement ("CBA") — because Defendants have established none of the elements of federal preemption under Section 310 of the Labor Management Relations Act ("LMRA") 29 U.S. Code § 185. Indeed, the weight of Ninth Circuit caselaw, and a straightforward analysis applying the two-prong test for preemption in *Burnside v. Kiewit Pac. Corp.* (9th Cir. 2007) 491 F.3d 1053, 1059, lays bare the fatal flaws in Defendants' incorrect preemption argument in their NOR, including because:

- As to claims for which Defendants assert there is a Labor Code exemption, overwhelming case authority in the Ninth Circuit establishes that Labor Code claims are **_not_** preempted by virtue of the exemption, because:
  - the question of preemption does not alter the substance of the Labor Code claims as arising solely from state law, and not from a CBA (thus failing the first prong of the *Burnside* test for preemption); and
  - an employer's reliance on the statutory exemptions is an affirmative defense, and therefore not grounds for preemption.
- Plaintiff's claims arise solely from state law, and the Complaint makes no allegations as to any CBA, therefore no claims are preempted under the first prong of the *Burnside* test.
- Defendants have failed to show that the Court would need to analyze the CBA at all, but instead might arguably merely need to reference it. Further, Defendants

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING
ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

cannot evidence any disagreement about the meaning or application of any relevant CBA terms. Therefore, no claims are preempted under the second prong of the *Burnside* test.

## II.   **PROCEDURAL HISTORY**

On February 16, 2024, Plaintiff filed this instant Class Action in the Sacramento County Superior Court with case number 24CV002889 ("Tercero I"). (Plaintiff's Request for Judicial Notice ("RJN", Exh. 1).

On February 26, 2024, Plaintiff filed another Class Action in the Sacramento County Superior Court with case number 24CV003371 with the same causes of action and naming the same Defendants ("Tercero II") (RJN, Exh. 2) and a Representative Action also in the Sacramento County Superior Court with case number 24CV013119 ("Tercero III"). Plaintiff is represented by Wilshire Law Firm in Tercero II and III. (RJN, Exh. 3).

On March 27, 2024, Tercero I was removed by Defendants to this Court. (EFC No. 1).

On March 28, 2024, Tercero II and Tercero III were removed by Defendants to this Court. (RJN, Exh. 4).

On April 5, 2024, Defendants filed a Notice of Related Case relating Tercero I, Tercero II, and Tercero III, along with other cases. (EFC No. 8).

On April 16, 2024, Senior District Judge Morrison C. England, Jr., designated Tercero I, Tercero II, and Tercero III, along with other cases, as related. (EFC No. 12).

On May 31, 2024, Defendants filed (1) Motion to Compel Individual Arbitration of Plaintiff's Claims and to Stay all Proceedings Pending Resolution of the Motion and/or Completion of Arbitration, (2) Motion to Dismiss for Lack of Jurisdiction by Defendant C&S Logistics of Sacramento/Tracy LLC, and (3) Motion to Dismiss by Defendant C&S Wholesale Grocers, LLC in Tercero I. (EFC Nos. 15, 16, and 17).

Also on May 31, 2024, Defendants filed (1) Motion to Compel Individual Arbitration of Plaintiff's Claims and to Stay all Proceedings Pending Resolution of the Motion and/or Completion of Arbitration, (RJN, Exh. 5), (2) Motion to Dismiss for Lack of Jurisdiction by

1     Defendant C&S Logistics of Sacramento/Tracy LLC (RJN, Exh. 6), and (3) Motion to Dismiss

2     by Defendant C&S Wholesale Grocers, LLC in Tercero II and III.  (RJN, Exh. 7).

3         On June 13, 2024, Plaintiff filed Motions to Remand Tercero II and Tercero III back to

4     the Sacramento County Superior Court. (RJN, Exh. 8).

5         **On November 19, 2024, this Court granted Plaintiff's Motions to Remand**

6     **Tercero II and Tercero III back to the Sacramento County Superior Court and ordered**

7     **as moot, Defendants' Motion to Compel Arbitration and Motions to Dismiss.** (RJN, Exh.

8     9).

9         On January 7, 2025, this Court granted Defendants' Motion to Compel Arbitration on

10     Plaintiff's individual claims and granted Defendants' Motion to Dismiss Plaintiff's putative

11     class claims, staying the action in its entirety pending the completion of arbitration in Tercero

12     I.  (EFC No. 33).

13         Plaintiff has filed this instant Motion (and simultaneously, her Motion for

14     Reconsideration of Order Granting Defendants' Motion to Compel Arbitration of Plaintiff's

15     Individual Claims and Staying All Proceedings Pending Completion of Arbitration).

16     Furthermore, Plaintiff intends to consolidate Tercero I, Tercero II, and Tercero III once back

17     in State Court.

18 **III.**    <u>**LEGAL STANDARDS**</u>

19       **A.**     <u>**Plaintiff's Motion for Order Remanding this Action is Timely**</u>

20         If at any time before final judgement it appears that the District Court lacks subject

21     matter jurisdiction, the case shall be remanded. See 28 U.S.C.A. § 1447(c); *Kamm v. ITEX*

22     *Corp.*, 568 F.3d 752 (9th Cir. 2009); *United States v. Cotton*, 535 U.S. 625 (2002) (because

23     subject-matter jurisdiction involves a court's power to hear a case, it can never be forfeited or

24     waived); *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, *1003-04 (C.D. Cal. 2009) (because

25     plaintiff contests subject matter jurisdiction, remand motion was timely even though filed 14

26     months after the notice of removal); *Biag v. King George - J&J Worldwide Servs. LLC,* No.

27     20-CV-307-BAS-DEB, 2020 WL 4201192, *2 (S.D. Cal. July 22, 2020) (citing *Caterpillar*

28     *Inc. v. Lewis*, 519 U.S. 61, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996) ("If, however, [a] [c]ourt

1    lacks subject matter jurisdiction, then the attack could be raised at any time."). **Here, this**
2    **Court has already granted Plaintiff's Motion to Remand in Tercero II and III.** (RJN,
3    Exh. 9). Respectfully, the Court lacks subject matter jurisdiction. Accordingly, Plaintiff's
4    Motion is timely.

5    **B.    Diversity Jurisdiction Requires Evidentiary Showing**

6    The burden of establishing grounds for federal jurisdiction rests with the party seeking
7    removal. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). When a plaintiff
8    contests the removing party's allegations in support of removal, the removing party then must
9    prove, by a preponderance of evidence, actual facts necessary to support the petition for
10   removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *Gaus*
11   *v. Mile, Inc.*, 980 F.2d 564, 566-567 (9th Cir. 1992); *accord Luther v. Countrywide Home*
12   *Loans Servicing, LP,* 533 F.3d 1031, 1034 (9th Cir. 2008) (any doubt is resolved against
13   removability). On a motion for remand, the non-moving party must identify "a legitimate
14   source of the court's jurisdiction," and "[d]isputed questions of fact and ambiguities in the
15   controlling law must be resolved in favor of the remanding party." *Pac. Mar. Ass'n v. Mead*,
16   246 F.Supp.2d 1087, 1089 (N.D. Cal. 2003).

17   **1.    CAFA Jurisdiction**

18   Congress enacted CAFA intending that it be applied in harmony with this general rule.
19   *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("[When enacting CAFA],
20   Congress intended to maintain the historical rule that it is the proponent's burden to establish a
21   prima facie case of removal jurisdiction"). Under CAFA, "the burden of establishing removal
22   jurisdiction is, as it was before CAFA, on the party wishing to see the case in federal court."
23   *Lewis v. Verizon Commc'ns., Inc.,* 627 F.3d 395, 399 (9th Cir. 2010); *Korn v. Polo Ralph*
24   *Lauren Corp.*, 536 F.Supp.2d 1199, 1206 (E.D. Cal. 2008).

25   "A defendant seeking removal of a putative class action must demonstrate, ***by a***
26   ***preponderance of the evidence***, that the aggregate amount in controversy exceeds the
27   jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir.
28   2013) (emphasis added); *Dart Cherokee*, 574 U.S. at 89 (holding that a defendant asserting

removal jurisdiction ***must*** proffer "[e]vidence establishing the amount [in controversy]" when "the plaintiff contests, or the court questions, the defendant's allegations"). The Ninth Circuit has held on more than one occasion that "mere speculation and conjecture, with unreasonable assumptions" cannot support removal jurisdiction. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197-1198 (9th Cir. 2015); *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020); *Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F.Supp.3d 932, 982 (C.D. Cal. 2014) (defendant may not "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction"). A removing party's assumptions "cannot be pulled from thin air, but need some reasonable ground underlying them." *Dobbs v. Wood Grp. PSN, Inc.*, 201 F.Supp.3d 1184, 1188 (E.D. Cal. 2016) (quoting *Ibarra*, 775 F.3d at 1199); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

## 2.    Traditional Diversity Jurisdiction

Likewise, to invoke subject matter jurisdiction based on traditional diversity, the removing party must prove by a preponderance of the evidence that complete diversity of citizenship exists between the parties, and that the amount-in-controversy exceeds $75,000. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). In a class action removed outside of the Class Action Fairness Act (CAFA), "at least one named plaintiff in the class must satisfy the $75,000 amount in controversy requirement." *Lindsey v. WC Logistics, Inc.*, 586 F. Supp. 3d 983, 992 (N.D. Cal. 2022); *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010).

## C.    Legal Standard for LMRA § 301 Preemption

Congress enacted section 301 of the LMRA "to protect the role of grievance and arbitration and of federal law in resolving CBA disputes, ***not to alter or displace state law labor rights***." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 926 (9th Cir. 2018) (emphasis added) ("*Schurke*"). Thus, "the Supreme Court has repeatedly admonished that § 301 preemption is not designed to trump substantive and mandatory state law regulation of the employee-employer relationship." *Humble v. Boeing Co.*, 305 F.3d 1004, 1007 (9th Cir. 2002); *Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F.Supp.3d 932, 951 (C.D. Cal 2014)

("Despite the broad preemptive effect of § 301, a claim that seeks to vindicate nonnegotiable state-law rights … independent of any right established by contract is not within its scope."). Stated differently, "section 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985) ("*Lueck*").

The Ninth Circuit employs a two-step test for preemption. First, the court must ask if the claim involves a right conferred upon an employee by virtue of state law or solely through a CBA. *Burnside*, *supra*, 491 F.3d at 1058-59.  If the right exists independent of a CBA, the court must then inquire "whether the right is nevertheless substantially dependent on analysis of a [CBA]." *Id*. at 1059. Thus, while § 301 preempts state-law claims that directly implicate a CBA, it ***does not*** preempt claims that: (1) arise independently of a CBA, and (2) do not substantially depend on the analysis or interpretation of a CBA. *Id*. at 1061.

There is no presumption in favor of preemption where a claim asserts the protection of state-law labor regulations, and indeed "pre-emption should not be lightly inferred … since the establishment of labor standards falls within the traditional police power of the State." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412 (1988).  Accordingly, "'interpretation'" of a CBA "is construed narrowly" and means "something more than [to] 'consider,' 'refer to,' or 'apply.'" *Schurke*, *supra*, 898 F.3d at 921 (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)). In other words, "the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001).

The party asserting preemption bears the burden to prove that interpretation of a CBA's terms is required. *See Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 813 (C.D. Cal. 2020) ("It is not enough for Defendants to provide a laundry list of provisions that they allege the Court must interpret to resolve Plaintiff's claims; Defendants must explain why interpretation, as opposed to mere reference to the CBA, is necessary.") (granting remand motion).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING
ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

## IV.    NO EVIDENCE SHOWS THE REQUISITE AMOUNTS IN CONTROVERSY

### A.    Defendants have not produced evidence.

To establish CAFA jurisdiction, Defendants must prove, *inter alia*, that the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.  Defendants have failed to do so because Defendants have only pulled assumed violation rates from thin air.

"In determining the amount in controversy, courts first look to the complaint." *Ibarra*, *supra*, 775 F.3d at 1197. If the pleading does not facially specify an amount in controversy, the removing party "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1977)). This prevents a defendant from attempting to establish federal jurisdiction "by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197-1198. Instead, "[w]here the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy." *Dobbs*, *supra*, 201 F.Supp.3d at 1188. In short, any assumptions made by Defendants ***"cannot be pulled from thin air but need some reasonable ground underlying them."*** *Ibarra*, *supra*, 775 F.3d at 1199; *see also Peters v. TA Operating LLC*, No. EDCV221831JGBSHKX, 2023 WL 1070350, at *5 (C.D. Cal. Jan. 26, 2023)  (remanding after determining that the limiting language in the complaint—similar to the Complaint in this instant action and filed by the same Plaintiff's counsel—did not support the defendant's assumed violations rates, and noting, "what matters is the depth of the factual support provided by a defendant and the chain of reasoning it uses to reach its estimate"); *Arias v. Shyft*, *supra*, 2023 WL 3559311, at *2-3 (remanding after determining that the limiting language in the complaint—similar to the Complaint in this action, filed by the same Plaintiff's law firm); *Calderon, et al.*, *supra*, 2023 WL 6130524, at *5 ("looking at the language of the FAC in context, it is not clear that the Plaintiffs are alleging that Defendants made it impossible or impracticable *all the time* for *all employees* to take their rest and meal breaks").

When "a defendant provide[s] *no* evidence or clearly inadequate evidence supporting

its valuation for a claim," the Ninth Circuit has held it "might be appropriate for a district court to assign that claim a $0 value." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *Smith v. Diamond Resorts Mgmt.*, 2016 WL 356020, at * 5 (C.D. Cal. 2016) (rejecting defendant's violation rate of one hour of overtime per week because defendants failed to show how often plaintiffs and class members performed overtime work).

Here, Plaintiff's Complaint does not specify an amount of damages. [*See generally* Complaint, Dkt. No. 1, Exhibit A.]  Thus, to overcome Plaintiff's challenge, Defendants must show by a preponderance of the evidence that the amount in controversy is satisfied (*i.e.*, that it is more likely than not that the amount in controversy exceeds $5,000,000). This task should not be particularly difficult for Defendants, especially because Defendants are required under California law to create and maintain wage records that could be used to calculate an amount in controversy in this wage-and-hour class action. *See*, *e.g.*, Cal. Lab. Code § 226(a).  Yet Defendants present *no* evidence supporting the assumed violation rates for their purported amount in controversy.  [*See generally* NOR, Dkt. No. 1.]  For example, Defendants assume that during *every single workday (100%)* in the class period, *100% of putative class members* were not paid for 16.7 minutes of unpaid minimum wages;16.7 minutes of unpaid straight time wages; 1 missed meal period; and 1 missed rest break, *and also that:*

- putative class members worked an aggregate total of 53,140.84 overtime hours;
- putative class members worked an aggregate total of 2,888.29 double time hours;
- *every single former employee class member* is owed 30 days of waiting-time penalties;
- *every single eligible class member* is entitled to the $4,000 maximum penalty for wage statement violations;
- *every single class member* is owed $480 per year for cell phone expenses;
- *every single class member* is owed $50 per year for tools and equipment; and
- *every single class member* is owed $100 per year for work attire.

However, Defendants offer nothing to justify their wholly unsubstantiated and plainly unreasonable assumptions. Likewise, Defendants offer no evidentiary support for their data

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING
ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

points, including the total number of workdays in the class period, the average rate of pay, the total amount of hours of overtime worked, the number of employees who separated from their employment within the 3-year statute of limitations periods (and their average rate of pay and average length of workday), and the number of employees who separated from their employment within the 1-year statute of limitations periods (and the number of wage statements they were issued). [NOR ¶ 32.] Worse still, Defendants attempt to support their arguments with quotes that are not found in the Complaint (e.g., "faulty pay policies"). [NOR ¶ 56; f.n 9.]

### 1. Defendants' Declaration Does Not Support Their Amount in Controversy

Defendants' proffered Declaration of Brandon Driscoll does not evidence or even mention the variables assumed by Defendants' amount-in-controversy calculation. In short, ***nothing*** in the declaration "purports to provide evidence that would assist the Court in making a reasonable assumption as to applicable violation rate." *Gonzalez v. H&M Hennes & Mauritz L.P.*, 2022 WL 179292, at *3 (C.D. Cal. Jan. 20, 2022). In light of this "clearly inadequate evidence," it would be appropriate for the Court to assign a $0 value to the claims. *Jauregui*, *supra*, 28 F.4th at 994.

### 2. Defendants' Meal Period and Rest Break Assumptions Are Unreasonable

Defendants' amount-in-controversy calculations ***directly contradict the plain language of the Complaint***. Plaintiff is "'the master of the claim' and may avoid federal jurisdiction by pleading different facts." *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Thus, "[a]n assumption may be reasonable *if it is founded on the allegations of the complaint*." *Arias*, *supra*, 936 F.3d at 925 (emphasis added).

Defendants must demonstrate that their method of calculation is based on a representative sample from admissible data, from which it "extrapolate[s] ... for the entire class." *Dobbs*, *supra*, 201 F.Supp.3d at 1189 (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202-03 (9th Cir. 2015). In *Dobbs*, the complaint alleged that the defendant violated Labor Code Sections both "regularly" and as a "pattern and practice." There, the defendant

submitted two reports as summary-judgement-type evidence to support its contention that the language in the complaint supported the alleged amount in controversy. However, *Dobbs* concluded that the evidence lacked any statistical analysis or extrapolated calculations. *Id.* As such, the evidence did not justify the defendant's unreasonable assumptions and its purely speculative amount in controversy. *Id.* Here, Defendants have not even provided an evidentiary basis at all.

Plaintiff alleges that Defendants' violations merely "**predominate**"; "at times," and without certification that there is a risk of "inconsistent or contradictory adjudications." [Complaint, ¶¶ 17(b, f), 45, 46 (emphasis added).] Defendants disregard this consistent, limiting language of the Complaint in asserting, without evidentiary support, that meal period and rest break violations place $1,125,784.20 and $1,154,844.90 in controversy, respectively. [NOR, ¶ 59.] To reach these figures, Defendants manipulate the meaning of the Complaint to mean that 100% of class members experienced one meal period and one rest break violations every day. *Id.* However, conduct that "predominate[s]" and that could result in "inconsistent or contradictory adjudications" does not mean every single class member experienced meal and rest period violations every single day. Defendants' alleged violation rates are pulled from thin air and are directly contrary to the Complaint's plain language.

A party cannot establish CAFA jurisdiction merely by "plucking a violation rate out of the air and calling it reasonable." *Ryan v. Mission Treatment Servs., Inc.*, 2022 WL 4331093, at *3 (C.D. Cal. Sept. 19, 2022) (quoting *Gonzalez v. H & M Hennes Mauritz L.P. et al.*, 2022 WL 179292, at *4 (C.D. Cal. Jan. 20, 2022)); *see also Toribio v. ITT Aerospace Controls LLC*, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019); *Vanegas v. DH Express (USA), Inc.*, 2021 WL 1139743, at *4 (C.D. Cal. Mar. 24, 2021); *Koreisz v. On Q Fin., Inc.*, 2018 WL 6567694, at *3 (C.D. Cal. Dec. 12, 2018). Courts regularly find such unsupported assumptions of even *one* meal and *one* rest break violation *per week* to be impermissible to establish CAFA jurisdiction:

> As other courts in this district have held, Defendant may not rely on statistical assumptions to sustain the amount in controversy requirement. *Armstrong v. Ruan Trans. Co.*, EDCV 16-1143-VAP (SPx), 2016 WL

6267931, at *3 (C.D. Cal. Oct. 25, 2016) (remanding case in which defendant assumed one meal and rest break violation per week for the purposes of calculating amount in controversy). Courts have routinely remanded cases where amount in controversy calculations rely on speculative assumptions unsupported by evidence … See, e.g., *Whitaker v. U.S. Renal Care, Inc.*, No. CV 17- 2661-R, 2017 WL 3412203, at *2 (C.D. Cal. Aug. 8, 2017) (remanding case in which defendant assumed one meal and rest break violation per week for the purposes of calculating the amount in controversy); *Freeman v. Mercy Servs. Corp.*, No. 2:16-cv-01151-TLNKJN, 2017 WL 2572428, at *3-4 (E.D. Cal., June 14, 2017) (remanding case in which defendant assumed one violation per pay period in calculating the amount in controversy for Plaintiff's unpaid meal and rest period claims); *Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 1:13-cv-01092-LJO-JLT, 2013 WL 5274283, at *6 (C.D. Cal. Sept. 17, 2013) (rejecting amount in controversy calculations where "Defendant provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week or why an overtime violation should be presumed to occur for four hours every week"); *Munoz v. Central Parking Sys., Inc.*, No. CV 10-6172, 2010 WL 3432239, at *2 (C.D. Cal. Aug. 20, 2010) (rejecting defendant's assumption of one meal period violation per week because defendant "fail[ed] provide any evidentiary support for th[is] assumption[ ]").

*Salazar v. Johnson & Johnson Consumer Inc.*, 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018).

Defendants' assertions are just as unreasonable as the purported violation rates that *Salazar* found unsupported. With respect to similar periodic language as at issue here, *Salazar* found that "Defendant sets forth no facts supporting [an] assumed violation rate of 20% (*or even 5%*), nor do Plaintiffs' allegations of 'periodic' violations point to this conclusion." *Id.* (emphasis added).

While *Salazar* noted that some courts have held differently on their specific facts, "these cases are distinguishable because here Plaintiffs limit the allegations in the Complaint — they assert that they and other California Class members were unable to take off duty meal breaks 'from time to time,' and that they and other California Labor Sub-Class members were 'periodically' denied their proper rest periods." *Id.* at *4. This is directly parallel to the "at times" and other limiting language Plaintiff uses here, and thus, as in *Salazar*, cases that hold differently are distinguishable and do not apply here. Under *Salazar*, Defendants clearly may not assume even a *5 percent violation rate* based on periodic-type language such as is at issue here. When a defendant presents such estimates as unsupported conjecture, their "arbitrary

assumption does not permit the Court to find that Defendant[] ha[s] established by a preponderance of the evidence the amount in controversy….” *Id.* As the Court held in *Duran*:

> [Defendant's] assumption of a once-per-week incidence of overtime and minimum wage, and meal and rest break violations is even more arbitrary. It would be just as consistent with the complaint to assume a frequency of once-per-month, or possibly once-per-quarter. [Defendant] again did not provide any extrinsic evidence to tip the analysis in its direction, or point to anything in the complaint that might do so.

*Duran v. Allegis Glob. Sols., Inc.*, 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021).

Defendants' arbitrary assumptions that 100% of class members are owed for daily meal period and rest break violations, each, "shows how simple it is to manipulate the assumptions to produce totals larger or smaller than the $5 million threshold." *Vanegas*, *supra*, 2021 WL 1139743, at *4 (quoting *Lacasse v. USANA Health Sci., Inc.*, 2021 WL 107143, at *3 (E.D. Cal. Jan. 12, 2021)). Notably, without these claims, Defendants amount in controversy falls well below the CAFA threshold amount.

### 3. Defendants' Other Calculations Are Arbitrary and Unsupported

Defendants cannot meet their evidentiary burden under CAFA by assuming every single employee was required to work unpaid, every single workday, without providing *some* basis for that assumption. *See, e.g.*, *Rutledge v. Healthport Techs., LLC*, 2017 WL 728375, at *2 (N.D. Cal. Feb. 24 2017) (because the employer had access to employment and payroll records, it could not assume a violation of one hour of overtime per week without providing supporting facts or evidence). Yet Defendants calculate their alleged amount in controversy by employing arbitrary variables for unpaid minimum wages and unpaid overtime. Defendants seem not to consider the Complaint's limiting language in their calculations. [*See,* NOR ¶ 59.] Defendants unreasonably assert that Plaintiff's unpaid minimum and overtime violations place $1,235,832.74 in controversy, collectively. *Id.* For these calculations, Defendants proffer no admissible evidence to show how many shifts worked by putative class members were eligible for overtime pay. Nor do Defendants provide any evidence supporting the assumption that every single class member, every single day, suffered 16.7 minutes of unpaid minimum wages and 16.7 minutes of unpaid straight time wages. [NOR, ¶ 35.]

Defendants' assumptions are *wholly unsubstantiated* and *plainly unreasonable*.

Plaintiff alleges that Defendants, "***at times***", failed to pay Plaintiff and the Class, for all hours worked, including minimum and overtime wages; that Defendants' "failure to pay for all time worked by virtue of its time rounding, auto-deduction policies and practices for unlawful meal periods, failure to provide lawful meal periods, and/or other off-the-clock work practices and policies, resulted in the underpayment of minimum wages owed to Plaintiff and Class Members as well as unpaid overtime ages to those Class Members who worked more than eight (8) hours in a day and/or more than forty (40) hours in a week." Defendants' violations "***predominate***"; and without certification that there is a risk of "inconsistent or varying adjudications." [Complaint, ¶¶ 17(b, d), 38 (emphasis added).]  Conduct that "predominate[s]" or occurs "at times," to "some [class members]," and that could result in "inconsistent or varying adjudications" does not mean 100% of class members experienced these violations every single workday.

When such limiting language appears in a pleading, an "assumption of once-per-week incidence of overtime and minimum wage, and meal and rest break violations is even more arbitrary." *Duran, supra*, 2021 WL 3281073, at *3.  As *Duran* noted, "[i]t would be just as consistent with the complaint to assume a frequency of once-per month, or possibly once-per quarter." *Id.*

**4.    Defendants' Waiting-Time Penalty Calculation Is Arbitrary and Unsupported**

Defendants estimate that ***all*** putative class members that were terminated during the 3-year Statute of Limitations period, are owed for waiting time penalties. [NOR, ¶ 59.] Defendants again provide ***no rationale in support of their assumption of a 100% violation rate***.  The allegations in the Complaint can only be read to mean that different employees faced different circumstances, not that 100% of employees had exactly the same experience.  For example, the Complaint states that the Class is entitled to recover additionally waiting time penalties of ***up to*** 30 days' pay, plus attorneys' fees and costs…." pursuant to California Labor Code § 203." [*Id.*, ¶ 120 (emphasis added).]

The weight of case authority rejects the proposition, as asserted by Defendants here, that the amount in controversy includes the entire maximum waiting-time penalty period even though the complaint alleges, as here, that class members are entitled to "up to" the 30-day maximum. [Complaint, ¶ 64.] As recently as May 23, 2024, a Central District judge held that "the phrase 'up to' leaves open the possibility that Defendants paid overdue wages to at least some of the terminated employees before the full statutory period had elapsed." *Nickolas Scott Wrightnour v. Marriott Hotel Service, LLC*, et al. (C.D. Cal., May 23, 2024, No. 5:24-CV-00465-SSS-SHKX) 2024 WL 2625993, at *3. With respect, this Court should follow this line of cases and similarly hold that it is not reasonable for Defendants to assume that 100% of terminated employees are owed 100% of waiting-time penalties, even though the complaint alleges that they are owed quote "up to" the maximum.

### 5.    Defendants Business Expense Amount Is Unsupported

Defendants assume that every single class member incurred approximately $630.00 of unreimbursed expenses annually. [NOR, ¶ 55.] Plaintiff alleges that Defendants "based on information and belief" failed to indemnify employees for business expenses. [Complaint, ¶ 75.] Defendants do not describe or give any information as to why *every* class member spent $630 per year on business expenses that were not reimbursed. The $124,646.76 figure is clearly an arbitrary number created by Defendants to reach the $5,000,000 CAFA jurisdictional threshold and must be disregarded.

### 6.    Defendants' Attorneys' Fees Assumption Is Inflated and Improper

Defendants seek to meet the CAFA threshold by arguing that 25 percent of the total award is the benchmark in a class action involving a common settlement fund, even though the Ninth Circuit has rejected this very argument, holding that "we require a removing defendant to prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence. We also require the defendant to make this showing with summary judgment-type evidence…." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018); *see also Garibay, supra*, 539 Fed. App'x at 764-65.

Moreover, even if the percentage of attorneys' fees used by Defendants is not unreasonable in and of itself, it is applied "to valuations of the claims that are inherently unreasonable, [] so the amount attributed to fees cannot be used toward the jurisdictional threshold." *Duran, supra*, 2021 WL 3281073, at *3-4; *see also Smith.,* 2016 WL 356020, at * 5 (C.D. Cal. 2016)  ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee … would necessarily place the amount in controversy over the $5,000,000 CAFA threshold."). There is no justification to bloat the alleged amount in controversy with a further conjectural 25 percent fee multiplied by these speculative, unsupported damages.

### B.  Defendants' Alleged $75,000 Amount in Controversy Lacks Evidence

When a defendant removes an action based on traditional diversity jurisdiction (i.e., not CAFA), it must demonstrate that the named plaintiff's claims satisfy the juridical threshold. Here, Defendants fail to provide evidence that the amount in controversy is satisfied. This is particularly inexcusable here, because Defendants, as the employers, have ready access to all the facts, records, and information necessary to support their amount in controversy calculations. *See Carranza v. Nordstrom, Inc.*, NO. EDCV 14–01699 MMM (DTBx), 2014 WL 10537816, at *9 (C.D. Cal. Dec. 12, 2014) (the trial courts should consider "which party has access to or control over the records and information required to determine whether the amount in controversy requirement is met").

### 1.  No Evidence Supports Defendants' Alleged Amount in Controversy

Defendants assert, "Plaintiff's payroll, employment, and operational data was used and analyzed to determine the traditional diversity jurisdiction AIC for purposes of this Notice of Removal." [NOR, ¶¶ 65, 77.] Moreover, Defendants conclude that, "Plaintiff worked a total of 213 workdays," "Plaintiff's average base regular rate of pay was $17.67 per hour," "Plaintiff worked a total of 209 3.50-Hour Workdays," "Plaintiff worked a total of 208 5-Hour Workdays," "Plaintiff worked a total of 153 8/12-Hour Workdays during which he worked an aggregate total of 345.85 hours in excess of eight per day," "Plaintiff worked a total of 32 12-Hour Workdays during which he worked an aggregate total of: a. 128 hours in excess of eight

but less than 12 hours in a day; and b. 27.34 hours in excess of 12 hours in a day", "For the 3-Year SOL Period from February 16, 2021 through March 9, 2024: (i) Plaintiff was paid a final base regular rate of pay of $19.26; and (ii) Plaintiff worked an average of 10.5 hours per day at the time of her termination." *Id.*

Plaintiff objects to these statements pursuant to Federal Rules of Evidence ("FRE"), Rule 901, because Defendants have not authenticated any of the payroll, employment, and operational data records by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is," as Rule 901 requires. Plaintiff further objects pursuant to these statements under FRE 1002 and 1004 because these statements are not best evidence. Defendants attempt to testify to the contents of the documents in violation of FRE 1002. The documents "speak for themselves" and are the best evidence of their contents.

Plaintiff also objects pursuant to FRE 801-802 on grounds that the entire paragraph constitutes inadmissible, out-of-court hearsay offered for the truth of the statements, including because Defendants plainly cannot establish any of the requirements to admit the records under the FRE 803 business records exception and do not even attempt to assert that the records were made in the regular course of business. Here, the source of the purported records, and their preparation, indicate a lack of trustworthiness, as they are shrouded in secrecy and have been withheld from the Court despite Defendants' self-serving reliance on them for their NOR. Thus, with respect, this Court should not give these assertions any weight. Plaintiff also asserts these same objections as to Para. 35 (a-c) in its entirety. Defendants' speculative calculations assumed violation rates, and purported amount in controversy are without evidentiary support, and the Court should reject them.

### 2. Defendants' Attorney Fee Assumption Is Flawed and Improper

Defendants attempt to meet the $75,000 requirement for diversity jurisdiction by arguing that it is somehow conservative to assume $1,128,051.50 in attorneys' fees. [NOR, ¶ 58.] This is a mere conclusion with no evidentiary support. The Court should "reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING
ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

defendant fails to satisfy [their] burden of proof. *Fritsch v. Swift Transportation Company of Arizona, LLC*, 899 F.3d 785, 795 (9th Cir 2018).

Moreover, this is a class action, but Defendants fail to take into account that any future attorneys' fees will be spread out across the class and not just attributed to the named plaintiff. In this context, "[i]n determining the proper allocation to a named plaintiff, courts have ruled that "attorney's fees must be divided by the number of class members." *Magee v. Iconix Waterworks (US) Inc.*, No. 2:20-CV-00840- KJM-DB, 2020 WL 4188607, at *3 (E.D. Cal., July 2020) (*citing Davenport v. Wendy's Co.,* 2013 WL 6859009, at *6 (E.D. Cal., Dec. 2016)); *Walker v. CorePower Yoga, LLC*, No 12-cv-4, 2013 WL 2338675, at *6 (S.D. Cal. 2013). Indeed, "the Ninth Circuit has determined when 'attorneys' fees are not awarded solely to the named plaintiffs in a class action [by the authorizing statute] they [] cannot be allocated solely to those plaintiffs for purposes of amount in controversy.'" *Magee*, *supra*, 2020 WL 4188607, at *3, citing *Gibson v. Chrysler Corp.*, 261 F.3d 927, 942 (9th Cir. 2001). Further, the Ninth Circuit has rejected the inclusion of attorneys' fees to the extent Defendants are trying to balloon the amount in controversy. The Ninth Circuit has held that "we require a removing defendant to prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence. We also require the defendant to make this showing with summary judgment-type evidence…." *Fritsch*, *supra*, 899 F.3d at 795; *see also Garibay, supra*, 539 Fed. App'x at 764-65. Defendants fail to do so here.

## C.    LMRA Preemption Does Not apply.

### 1.    The *Burnside* Analysis Does Not Preempt Plaintiff's Claims

The great weight of Ninth Circuit authority rejects Defendant's incorrect assertion that Section 301 preempts California state law claims by virtue of the Labor Code section 514 exemption. As many Eastern District decisions have acknowledged, the controlling authority is *Vasserman v. Henry Mayo Newhall Memorial Hospital*, 65 F. Supp. 3d 932 (C.D. Cal. 2014) and its progeny. *Vasserman* granted a plaintiff's motion to remand, holding that the Labor Code section 514 exemption did not mandate preemption, regardless of whether the CBA meets all of the section 514 requirements, because (1) the question of preemption "does not

alter the substance" of the overtime claim as one that arises solely from state law and not from the CBA (thus failing the first prong of the *Burnside* test for preemption); and (2) an employer's reliance on the statutory exemptions amounted to an affirmative defense, and thus could not be grounds for preemption.  (*Id.* at 954 (*citing Humble v. Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002) (reliance on CBA provisions to defend against an independent state law claim does not trigger § 301 preemption)); *see also Cramer*, 255 F.3d at 691; *Ramirez v. Yosemite Water Company*, 20 Cal. 4th 785, 794-95 (1999).)

Courts within this District have followed *Vasserman*.  In *Densmore v. Mission Linen Supply*, 164 F. Supp. 3d 1180 (E.D. Cal. 2016), the court denied the defendant's motion to dismiss (and granted the plaintiff's motion to remand to state court) despite the defendant's claim of preemption, observing that *Vasserman* "provides the most thorough analysis on the issue" and holding that (1) the statutory exemption under Labor Code § 514 does not mandate preemption; and (2) even if a CBA satisfies the requirements for statutory exemption under § 514, this alone does not mandate preemption under § 310 because § 514 is an affirmative defense, the mere invocation of which does not demonstrate that a § 510 claim cannot exist outside of the CBA.  (*Id.* at 1190-1191.)  This District has resolved defendants' motions to dismiss and plaintiff's motions for remand in similar fashion in *Davalos v. A. Teichert & Son, Inc.*, 2019 WL 93539, at *4 (E.D. Cal. Jan. 3, 2019); *Stone v. Sysco Corp.*, 2016 WL 6582598, *7-8 (E.D. Cal. 2016); *Smith v. Greyhound Lines, Inc.*, 2018 WL 6593365, *6-7 (E.D. Cal. 2018); and *Bruccheri v. Aramark Uniform Services, LLC*, 2018 WL 5617197, *3-4 (E.D. Cal. 2018).

As noted in *Gonzalez Quiroz v. Coffman Specialties, Inc.*:

'[The *Curtis*] plaintiff claimed that he was being deprived under the arrangement laid out in the applicable CBA of rights to which he contended [California Labor Code] Section 510 entitles him to receive.' … *Ross v. Stater Bros Markets*, No. 5:19-CV-00755-SJO (KKx), 2019 WL 6332241, at *4 (C.D. Cal. Aug. 8, 2019). Here, in contrast, Plaintiff does not allege that the terms of the [CBA] violate state law; he simply alleges that [Defendant] has violated rights he has under the California Labor Code.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING
ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

(*Gonzalez Quiroz v. Coffman Specialties, Inc*., 2020 WL 7258725 (S.D. Cal. 2020), at \*4.) Just as in *Ross* and *Quiroz*, Plaintiff here does not allege that the CBA provisions violated California law. Nor does Plaintiff allege that Defendants failed to pay Plaintiff in compliance with the CBA, and that therefore Defendants violated the CBA. (*See, e.g.*, *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Automobile, Aerospace and Agricultural Implement Workers of America, International Union and Its Local 787*, 118 S. Ct. 1626, 1629 (1998) ("Suits for violation of contracts' under § 301(a) are ... suits that claim a contract has been violated.").)  Nor have Defendants proffered any evidence that any of the terms of the CBA are in dispute.  Instead, Plaintiff's Complaint simply alleges that Defendants did not comply with various provisions of California labor law.  As such, the claims are not preempted under *Burnside*.

Moreover, in *Lopez v. Sysco Corporation*, 2016 WL 3078840 (N.D. Cal. 2016), a representative PAGA action asserting claims similar to those here, the court ruled that the employer had failed to satisfy the first prong of the *Burnside* test, rejecting the proposition that mere invocation of Labor Code §512(e), a statutory exemption from meal period requirements, creates a situation where meal period rights are conferred by the CBA rather than state law. (*Id*. at \*3-4.)  *Lopez* followed *Vasserman* and other cases which "recognized that reliance on the CBA as an aspect of a defense *is not enough to inject a federal question into an action that asserts what is plainly a state-law claim*."  (*Id*. at 4 (emphasis added) (*quoting Placencia v. Amcor Packaging Distribution, Inc*., 2014 WL 2445957, \*2 (C.D. Cal. May 12, 2014) (internal quotations and brackets omitted).)  The *Lopez* Court further held that the defendant also failed to satisfy *Burnside's* second prong by failing to show that relevant terms of the CBA needed interpretation to resolve the meal period claim. (*Id*.)

The Ninth Circuit Court of Appeals has provided clear guidance on the first step of the *Burnside* test. In *Alaska Airlines Inc. v. Schurke*,  898 F. 3d 904 (9th Cir. 2018), the court explained that the claimed right or duty must be "created by the CBA itself" — that is, the CBA must be the "'only source' of the right the plaintiff seeks to vindicate." (*Id*. at 920-921 (*quoting Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258 (1994).) Thus, to qualify for

preemption, the entirety of the claim must rely on interpretation of the CBA. (*Id.*)  Where, by contrast, the claims "are not simply CBA disputes by another name" — if they simply "refer to a CBA-defined right, rely in part on a CBA's terms of employment, run parallel to a CBA violation, or invite use of the CBA as a defense" — the claims are not preempted. (*Id.*, citations omitted.)  The "primary point of reference" in this preemption analysis is "the plaintiff's pleading." (*Id.* at 923.)

The same reasoning applies here.  Plaintiff alleges claims solely derived from California law, specifically the Labor Code and Business & Professions Code. Such claims that seek to vindicate a "nonnegotiable state-law right[] … independent of any right established by contract" are not within the scope of §301 of the LMRA.  (*Allis Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 213.)  Plaintiff's Complaint makes no reference to a CBA or its terms. When state law creates a right that cannot be waived or modified by a private contract, and that right can be enforced without reference to the particular terms of the contract, Section 301 does not preempt the claim.  (*Miller v. AT&T Network Systems* (9th Cir. 1988) 850 F.2d 543, 546.) Similarly, a "hypothetical connection between the claim and the terms of the CBA" does not result in Section 301 preemption.  (*Cramer v. Consolidated Freightways, Inc*. (9th Cir. 2001) 255 F.3d 683, 691.)  Nor is preemption warranted "simply because the court may have to consult the CBA [or] 'look[] to' the CBA merely to discern that none of its terms is reasonably in dispute."  (*Id*. at 692.)

Specifically, (1) the question of preemption "does not alter the substance" of Plaintiff's claims as ones that arise solely from state law and not from the CBA (thus failing the first prong of the *Burnside* test for preemption); and (2) an employer's reliance on the statutory exemptions amounted to an affirmative defense, and thus could not be grounds for preemption. (*Vasserman, supra*, 65 F. Supp. 3d at 954  (*citing Humble*, 305 F. 3d at 1011 (reliance on CBA provisions to defend against an independent state law claim does not trigger § 301 preemption)); *see also Cramer*, 255 F.3d at 691; *Ramirez v. Yosemite Water Company*, 20 Cal. 4th 785, 794-95 (1999).) Resolution of Plaintiff's independent, state-law claims will not require "interpretation" of any purported CBA terms, and Defendants can evidence no actual dispute

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING
ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

between the Parties as to any purported CBA term. For these reasons, Plaintiff's claims are not preempted.

### 2.   The CBA's Grievance Procedure Does Not Support LMRA Preemption.

Defendants incorrectly claim that "any grievance raised by Plaintiff during her employment was at all times set forth in and governed by Section 18 of the 2022 CBAs (Grievance Procedures)." [NOR, ¶ 87.] On the contrary, the 2022 CBA is considerably more limited. From the CBA:

> A grievance is defined as ***a dispute relation to the interpretation or enforcement of a specific Section of the Agreement***, which dispute arises and is submitted during the term of the Agreement. Grievances may be filed by an employee, the Union, or the Company. In the event such a grievance arises, the following grievance procedure shall be applicable.

[*See* Declaration of Brandon Driscoll, exhibit 2, section 18 (Grievance Procedure) (emphasis added).] Under the plain language of this provision, Plaintiff's claims against Defendants for violations of the California Labor Code and the California Business & Professions Code are not grievances covered by the CBA. As such, Plaintiff was not obligated to utilize the grievance procedure before initiating her State Court Action.

Defendants' reliance on *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985) is misplaced. In *Lueck*, at issue was a Wisconsin tort law that was intrinsically related to the contract at issue, because the Wisconsin tort against an insurer for the bad-faith refusal to honor the insured's claim derived from the implied covenant of good faith and fair dealing found in every contract. *Id*. at 216-17. However, the Supreme Court noted, "it would be inconsistent with congressional intent under [section 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id*. at 212. Plaintiff's claims in this Action are such claims, as they derive from the California Labor Code and the California Business & Professions Code, not the CBA.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER REMANDING ACTION TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES

Moreover, Defendants' position that Plaintiff would be required to submit her claims to arbitration is similarly flawed.[2] California law clearly establishes that when statutory violations are alleged, the presumption of arbitrability that typically applies to contractual disputes arising out of a CBA is not applicable. (*Vasserman v. Henry Mayo Newhall Memorial Hospital* (2017) 8 Cal.App.5th 236, 245.)  Instead, an agreement to arbitrate statutory claims must be "explicitly stated" in the collective bargaining agreement. (*14 Penn Plaza LLC v. Pyett* (2008) 556 U.S. 247, 258.)  Indeed, "*any* CBA requirement to arbitrate … must be particularly clear," and a union can waive employees' statutory rights only if such a waiver was "clear and unmistakable." (*Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70, 79-80 (emphasis added).)

For these reasons, the CBA's grievance procedure does not support LMRA preemption.

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court to remand this Action back to the State Court where it belongs.

Dated: March 26, 2025                    **CROSNER LEGAL, P.C.**


By: */s/ Sepideh Ardestani*
    Jamie K. Serb, Esq.
    Sepideh Ardestani, Esq.
    Zachary M. Crosner, Esq.

    Attorneys for Plaintiff
    TENIAH TERCERO

---

[2] In any event, arbitration is optional, not mandated, since "[a]ny grievance that cannot be settled by the Grievance Committee **may be referred** to an impartial arbitrator...." [*See* Declaration of Brandon Driscoll, exhibit 2, section 18 (Grievance Procedure) (emphasis added).]