1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TENIAH TERCERO,                          No.  2:24-cv-00953-DC-JDP

12                Plaintiff,

13        v.                                  ORDER DENYING PLAINTIFF'S MOTION
                                              FOR RECONSIDERATION AND
14   SACRAMENTO LOGISTICS, LLC, et al.,       GRANTING PLAINTIFF'S MOTION TO
                                              REMAND AND REMANDING THIS
15                Defendants.                 ACTION TO THE SACRAMENTO COUNTY
                                              SUPERIOR COURT
16
                                              (Doc. Nos. 34, 35)
17

18         This matter came before the court on June 13, 2025 for a hearing on Plaintiff's motion

19   for reconsideration and motion to remand this action to the Sacramento County Superior Court. (Doc.

20   Nos. 34, 35.) Attorney Sepideh Ardestani appeared on behalf of Plaintiff. Attorney Sylvia Kim

21   appeared on behalf of Defendants. For the reasons explained below, the court will deny Plaintiff's

22   motion for reconsideration and grant Plaintiff's motion to remand.

23                                    **BACKGROUND**

24         On February 16, 2024, Plaintiff Teniah Tercero filed a wage-and-hour class action

25   complaint against Defendants Sacramento Logistics, LLC ("Sacramento Logistics") and C&S

26   Wholesale Grocers, LLC ("C&S Wholesale") (collectively, "Defendants") in Sacramento County

27   /////

28   /////

                                              1

Superior Court.[1] (Doc. No. 1 at 38–66.) Plaintiff's complaint alleges seven causes of action: (1) recovery of unpaid minimum wages and liquidated damages in violation of California Labor Code §§ 218, 218.5, 222-24, 1194, 1194.2, 1197; (2) recovery of unpaid overtime wages in violation of California Labor Code §§ 510 and 1194; (3) failure to provide meal periods or compensation in lieu thereof in violation of California Labor Code §§ 226.7 and 512; (4) failure to provide rest periods or compensation in lieu thereof in violation of California Labor Code § 226.7; (5) failure to timely pay all wages due upon separation of employment in violation of California Labor Code §§ 201-03; (6) failure to reimburse business expenses in violation of California Labor Code § 2802; and (7) unfair business practices in violation of California's Unfair Competition Law, Business & Professions Code §§ 17200 *et seq.* (Doc. No. 1 at 56–65.) Plaintiff seeks to represent a proposed class defined as:

> All current and former non-exempt employees that worked either directly or via a staffing agency for any one or more of the DEFENDANTS at any location in California at any time within the four years prior to the filing of the initial Complaint ("Class Period").

(*Id.* at 43.) Plaintiff alleges she worked for Defendants from approximately July 2021 through August 2022 in Sacramento, California. (*Id.* at 39.)

On March 27, 2024, Defendants removed this action to this federal district court pursuant to 28 U.S.C. § 1446, alleging diversity jurisdiction under the Class Action Fairness Act ("CAFA") (28 U.S.C. § 1332(d)), traditional diversity jurisdiction (28 U.S.C. § 1332(a)), and federal question jurisdiction (28 U.S.C. § 1331) arising from the complete preemption of Plaintiff's state law wage and hours claims by Section 301 of the Labor Management Relations Act ("LMRA") (29 U.S.C. § 185(a)). (Doc. No. 1.) Defendants' notice of removal alleges Plaintiff was represented by General Teamsters Local #150 (the "Union") at all times during her employment, and therefore her employment was governed by collective bargaining agreements between Defendant Sacramento Logistics and the Union (the "CBAs"). (*Id.* at 32; *see also* Doc.

---

[1] Plaintiff also named Defendant C&S Logistics of Sacramento/Tracy LLC in her complaint. (Doc. No. 1.) On November 25, 2024, the court granted Defendant C&S Logistics of Sacramento/Tracy LLC's motion to dismiss for lack of personal jurisdiction and dismissed Defendant C&S Logistics of Sacramento/Tracy LLC from this action. (Doc. No. 32.)

No. 1-2.)

On May 31, 2024, Defendants moved to compel arbitration of Plaintiff's individual claims and to stay all proceedings pending completion of arbitration.[2] (Doc. No. 15.) On June 14, 2024, Plaintiff filed her opposition to Defendants' motion to compel arbitration. (Doc. No. 21.) On June 24, 2024, Defendants filed their reply thereto. (Doc. No. 27.) On January 7, 2025, the court granted Defendants' motion to compel arbitration of Plaintiff's claims and stayed all proceedings pending the completion of arbitration. (Doc. No. 33.)

Over three months later, on March 26, 2025, Plaintiff filed the pending motion for reconsideration of the court's order dated January 7, 2025, which granted Defendants' motion to compel arbitration and stayed all proceedings pending the completion of arbitration. (Doc. No. 34.) Plaintiff seeks reconsideration of the court's order granting Defendants' motion to compel arbitration pursuant to Federal Rule of Civil Procedure 60(b)(4) and (b)(6). (Doc. No. 34 at 8–9.) On April 9, 2025, Defendants filed an opposition to Plaintiff's motion for reconsideration. (Doc. No. 36.) On April 18, 2025, Plaintiff filed a reply thereto. (Doc. No. 40.)

Federal Rule of Civil Procedure 60(b) authorizes courts to grant relief from "a final judgment, order, or proceeding for the following reasons. . . (4) the judgment is void. . . (6) any other reason that justifies relief." At the June 13, 2025 hearing on the pending motions, Plaintiff's counsel conceded that the court's order granting Defendants' motion to compel arbitration is not a "final judgment [or] order" within the meaning of Rule 60(b). On this basis alone, the court will deny Plaintiff's motion for reconsideration. *See Broadnax v. Uber Techs*., Inc., No. 2:25-cv-00113-JAD-MDC, 2025 WL 1808513, at *2 (D. Nev. July 1, 2025) ("[A]n order compelling arbitration and staying proceedings is not a final, appealable judgment; it's an interlocutory one to which FRCP 60(b) does not apply."); *Mota v. BMW of N. Am., LLC*, No. 2:21-cv-00630-MCS-AFM, 2022 WL 2199825, at *1 (C.D. Cal. Mar. 15, 2022) (denying Rule 60(b) motion as procedurally improper because an order compelling arbitration is "not a final, appealable order or

---

[2] On May 31, 2024, Defendants also filed a motion to dismiss Plaintiff's individual and putative class claims. (Doc. No. 17.) In its order granting Defendants' motion to compel arbitration, the court administratively terminated Defendants' motion to dismiss, to be reactivated upon the lifting of the stay, if appropriate. (Doc. No. 33.)

judgment").

Also on March 26, 2025, nearly a year after Defendants removed this action to federal court, Plaintiff filed the pending motion to remand this action back to Sacramento County Superior Court. (Doc. No. 35.) On April 9, 2025, Defendants filed an opposition to the pending motion. (Doc. No. 38.) On April 18, 2025, Plaintiff filed her reply thereto.[3] (Doc. No. 41.)

## LEGAL STANDARD

A defendant may remove to a federal district court "any civil action brought in a state court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over cases involving claims arising under federal law ("federal question jurisdiction") or where the parties are diverse citizens and the amount in controversy exceeds $75,000, exclusive of interest and costs ("traditional diversity jurisdiction"). 28 U.S.C. §§ 1331, 1332(a). For class actions, traditional diversity jurisdiction exists when there is complete diversity of citizenship between any named plaintiffs and defendants, and the amount in controversy for at least one named plaintiff plausibly exceeds $75,000. *See Snyder v. Harris*, 394 U.S. 332, 340 (1969); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

To protect the jurisdiction of state courts, removal jurisdiction is strictly construed in favor of remand. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005). It is presumed that a case lies outside the limited jurisdiction of the federal courts, and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Abrego v. The Dow Chem.*

---

[3] In support of her motion to remand, Plaintiff requests that the court take judicial notice of several filings in other actions, as well as a remand order issued by this court in a separate related action, *Tercero v. C&S Logistics of Sacramento/Tracy, LLC, et al.*, No. 2:24-cv-00963-DC-JDP. (Doc. No. 35-1.) Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts regularly take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). However, "judicial notice is not required for the court to consider [] cited opinions as matters of law and potentially persuasive precedents." *Phillips v. Nat'l City Bank of Ind. First Franklin Div.*, 462 F. App'x 666, *1 n.1 (9th Cir. 2011). Therefore, the court will take judicial notice of the filings in other actions, but need not take notice of its prior orders.

1   *Co.*, 443 F.3d 676, 684 (9th Cir. 2006); *see also Provincial Gov't of Marinduque v. Placer Dome,*

2   *Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that

3   removal is proper."). If there is any doubt as to the right of removal, a federal court must reject

4   jurisdiction and remand the case to state court. *Geographic Expeditions, Inc. v. Estate of Lhotka*,

5   599 F.3d 1102, 1107 (9th Cir. 2010).

6       CAFA confers original jurisdiction to federal district courts in any class action where

7   there are at least 100 class members, any plaintiff is diverse in citizenship from any defendant,

8   and the amount in controversy exceeds $5,000,000, notwithstanding interest and costs. 28 U.S.C.

9   § 1332(d). CAFA was enacted "specifically to permit a defendant to remove certain class or mass

10  actions into federal court." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

11  Congress intended CAFA to be interpreted "expansively." *Id.* Unlike cases removed under

12  traditional diversity or federal question jurisdiction, "no antiremoval presumption attends cases

13  invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

14  However, "the burden of establishing removal jurisdiction remains, as before, on the proponent of

15  federal jurisdiction." *Abrego*, 443 F.3d at 685.

16      A defendant's notice of removal must contain "a short and plain statement of the grounds

17  of removal," but "need not contain evidentiary submissions." *Dart Cherokee*, 574 U.S. at 83–84.

18  A plaintiff may seek remand of a case that has been removed to federal court by "making either a

19  'facial' or 'factual' attack on the defendant's jurisdictional allegations." *Harris v. KM Indus., Inc.*,

20  980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir.

21  2020)). "A facial attack accepts the truth of the [defendant's] allegations but asserts that they are

22  insufficient on their face to invoke federal jurisdiction." *Id.* at 699 (citations and quotations

23  omitted). When evaluating a facial attack, the court accepts defendant's allegations as true and

24  draws all reasonable inferences in the defendant's favor to determine whether the allegations are

25  sufficient to invoke the court's jurisdiction. *Salter*, 974 F.3d at 964.

26      By contrast, a factual attack contests the truth of the allegations themselves. *Harris*, 980

27  F.3d at 699. To mount a factual attack, Plaintiff "need only challenge the truth of the defendant's

28  jurisdictional allegations by making a reasoned argument as to why any assumptions on which

5

1  they are based are not supported by evidence." *Harris*, 980 F.3d at 700. If the plaintiff mounts a

2  factual attack, the defendant bears the burden of showing by a preponderance of the evidence that

3  jurisdictional requirements are satisfied. *Id.* at 699. This burden may be satisfied by submitting

4  "affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in

5  controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut.*

6  *Auto. Ins. Co*., 116 F.3d 373, 377 (9th Cir. 1997)).

### ANALYSIS

8      Plaintiff seeks remand of this action to the Sacramento County Superior Court on the

9  grounds that Defendants have failed to satisfy their burden of establishing (1) the amount in

10  controversy for putative class members exceeds the $5,000,000 threshold for CAFA jurisdiction,

11  (2) the amount in controversy for her individual claims exceeds the $75,000 threshold for

12  traditional diversity jurisdiction, or (3) federal question jurisdiction exists based on preemption

13  under Section 301 of the LMRA. (Doc. No. 35.) The court will first address the amount in

14  controversy, and then turn to preemption under Section 301 of the LMRA.

15  **A.      Amount in Controversy**

16      Plaintiff does not dispute that her putative class exceeds 100 members and minimal

17  diversity of citizenship exists for CAFA purposes.[4] Nor does she dispute that her citizenship as

18  the named plaintiff is diverse from all Defendants as required for traditional diversity jurisdiction.

19  The only issue before the court regarding diversity jurisdiction is the amount in controversy.

20  Specifically, Plaintiff argues this case should be remanded because Defendants have failed to

21  establish the amount in controversy exceeds $5,000,000 for jurisdiction under CAFA, or, in the

22  alternative, $75,000 for traditional diversity jurisdiction. (*See* Doc. Nos. 35 at 16–26; 41 at 9–18.)

23  For reasons explained below, the court concludes that Defendants have not met their burden of

24  establishing, by a preponderance of the evidence, that the amount in controversy exceeds either

25  jurisdictional minimum.

---

[4] In her motion to remand, Plaintiff alleges "Defendants acknowledge that removal requires more than 100 class members yet have not evidenced that this requirement is met." (Doc. No. 35 at 9.) Plaintiff's complaint, however, alleges that she "is informed and believes the class consists of at least 100 individuals." (Doc. No. 1 at 43.)

1      1.    CAFA

The amount in controversy is not apparent from the face of Plaintiff's complaint. (*See* Doc. No. 1 at 38–66.) Defendants' notice of removal calculates the amount in controversy for putative class members to be $5,640,257.50, above CAFA's $5,000,000 threshold.[5] (Doc. No. 1 at 23.) Defendants allege they used "payroll, employment, and operational data" to determine the amount in controversy under CAFA, including the aggregate number of workdays, shift lengths, number of pay periods, and hourly rates of pay. (*Id.* at 11–12.) Applying these data points and assumptions regarding the rates of violation, Defendants calculate unpaid minimum wages and liquidated damages, unpaid overtime, meal and rest period premiums, waiting time penalties, unreimbursed business expenses, and statutory attorneys' fees, as follows:

| Claim | Amount in Controversy |
|---|---|
| Unpaid Minimum Wages and Liquidated Damages | $398,315.64 |
| Unpaid Overtime/Double Time Premiums | $837,517.10 |
| Meal Period Violations | $1,125,784.20 |
| Rest Period Violations | $1,154,844.90 |
| Waiting Time Penalties | $871,097.40 |
| Unreimbursed Business Expenses | $124,646.76 |
| Statutory Attorneys' Fees | $1,128,051.50 |
| **Total** | **$5,640,257.50** |

(*Id.* at 23.)

In her motion to remand, Plaintiff argues Defendants' amount in controversy calculations

---

[5] Defendants' notice of removal included calculations for the amount in controversy through March 9, 2024. (Doc. No. 1 at 11.) In their opposition to the pending motion, Defendants provide updated calculations for the amount in controversy through March 29, 2025. (Doc. No. 38 at 11.) For example, Defendants' provide an updated figure of $1,529,523.68 for meal period violations, and $1,563,721.66 for rest period violations. (*Id.* at 39.) Even with those updated figures, however, Defendants fail to meet their burden of showing CAFA's jurisdictional requirements are satisfied for the reasons discussed herein.

must be set aside because they unreasonably assume labor code violations "pulled from thin air," which are contrary to the complaint's plain language. (Doc. No. 35 at 19.) More precisely, Plaintiff alleges that Defendants' assumption of a 100% violation rate for her claims ignores "limiting language" in her complaint that Defendants' labor violations occurred "at times" and "merely 'predominate.'" (*Id.* at 19.)

Plaintiff further argues Defendants have failed to provide competent supporting evidence for the data points and assumed violation rates used to estimate the amount in controversy. (*Id.* at 18, 21–22.) Despite having access to wage records, the only evidence Defendants proffered with their notice of removal was the declaration of Brandon Driscoll, associate HR business partner for Defendant C&S Wholesale and its subsidiaries. (Doc. No. 1-2.) Mr. Driscoll's declaration describes CBAs relevant to Plaintiff's employment but does not provide any information related to Defendants' amount in controversy calculations. (*Id.*)

In opposition, Defendants argue Plaintiff has not adequately challenged its amount in controversy calculations because she has not submitted proof that less than $5 million is in controversy. (Doc. No. 38 at 17–18.) Defendants assert that "when a removing defendant's [amount in controversy] calculations are challenged by a remand motion, both sides must submit proof, and then the [c]ourt decides, based on a preponderance of the evidence if the AIC requirement is satisfied." (*Id.*) (citing *Dart Cherokee*, 574 U.S. at 88.) According to Defendants, Plaintiff's failure to submit evidence to contradict Defendants' AIC calculations is an independent basis upon which to deny her motion to remand. (*Id.* at 18.)

Defendants also contend that their assumptions of a 100% violation rate are supported by Plaintiff's "unqualified and indeterminate allegations of Labor Code violations." (*Id.* at 20.) For example, Defendants contend that a 100% violation rate is appropriate for Plaintiff's meal and rest break violation claims because Plaintiff's complaint alleges such violations occurred as a matter of Defendants' "policies and/or practices," putative class members were "consistently unable" to take complaint meal breaks, and putative class members "were frequently if not always unable to take compliant rest periods." (*Id.* at 23–24.)

Finally, although Defendants maintain the notice of removal is sufficient to establish the

1     amount in controversy under CAFA, they nevertheless concurrently filed along with their

2     opposition to the pending motion a declaration from Sylvia Ryan. (Doc. No. 38-2.) Ms. Ryan is

3     the "Manager, HR Business Partner" for Defendant C&S Wholesale. (*Id.* at 2.) Ms. Ryan's

4     declaration is based upon her personal knowledge and review of business information and records

5     pertaining to Plaintiff and the class during the relevant class period. (*Id.* at 2–3.) In her

6     declaration, Ms. Ryan lists the data points used by Defendants to calculate the amount in

7     controversy. (Doc. No. 38-2 at 3–6.)

8               a.      *Evidentiary Burden*

9          At the outset, the court will address the parties' dispute regarding the evidentiary burden

10    for removal. Defendants argue that Plaintiff has failed to properly challenge its amount in

11    controversy calculation because she has not presented rebuttal evidence. (Doc. No. 38 at 17–18.)

12    Plaintiff counters that she is not required to submit evidence to make a factual attack on

13    Defendants' amount in controversy allegations because Defendants bear the evidentiary burden of

14    establishing jurisdiction by a preponderance of the evidence. (Doc. No. 41 at 8–9.) The court

15    agrees with Plaintiff.

16         Plaintiffs can mount a factual attack by making a reasoned argument that Defendants'

17    assumptions are not supported by the evidence, without introducing extrinsic rebuttal evidence.

18    *See Harris*, 980 F.3d at 700 (plaintiff is not required to proffer an alternative assumption

19    grounded in real evidence to mount a factual attack). Defendants' "burden of establishing

20    removal" does not shift to Plaintiff at any time. *Abrego*, 443 F.3d at 678, 685. "This approach is

21    akin to the procedure in the summary judgment context whereby, if the party with the initial

22    burden of production fails to carry its burden, the other party 'has no obligation to produce

23    anything.'" *Giles v. Nat'l Express Transit Corp.*, No. 1:22-cv-00257-JLT-BAM, 2023 WL

24    2681974, at *1 (E.D. Cal. Mar. 29, 2023) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz

25    Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000)). Put differently, if the court determines

26    Defendants have not satisfied their burden of establishing removal jurisdiction, it need not

27    address Plaintiff's evidence or lack thereof.

28    /////

b. *Violation Rates*

To determine whether CAFA's amount in controversy threshold is satisfied, "courts first look to the complaint." *Ibarra*, 775 F.3d at 1197. A removing defendant is permitted to rely on "a chain of reasoning that includes assumptions" when calculating an amount in controversy. *Id. at* 1199. However, a defendant's "assumptions cannot be pulled from thin air." *Id.* at 1199. The assumptions "need some reasonable ground underlying them." *Id; see also Ellis v. Pac. Bell Tel. Co.*, No. 8:10-cv-01141-CJC-FFM, 2011 WL 499390, at *2–3 (C.D. Cal. Feb. 10, 2011) (noting that a defendant may rely on good-faith calculations to satisfy its burden, but those calculations cannot be based on unreasonable or speculative assumptions). "Reasonable grounds may be established on the basis of the complaint and extrinsic evidence." *Moore v. Dnata US Inflight Catering LLC*, No. 3:20-cv-08028-JD, 2021 WL 3033577, at *2 (N.D. Cal. July 19, 2021) (citation omitted).

In wage-and-hour cases, it is common that "the amount in controversy turns on the frequency of the alleged violations of California labor laws." *Hayes v. Salt & Straw, LLC*, No. 2:20-cv-03063-CJC-KS, 2020 WL 2745244, at *3 (C.D. Cal. May 27, 2020). "Whether the alleged violations occur from time to time, as a matter of pattern and practice, or uniformly, as alleged in the complaint, has a significant impact on the amount in controversy calculation." *Cocroft v. EquipmentShare.com Inc.*, No. 3:24-cv-00645-BAS-AHG, 2024 WL 3877274, at *7 (S.D. Cal. Aug. 19, 2024). "This frequency informs the court's adoption of a violation rate expressed as a percentage when calculating the amount in controversy." *Id.*

Plaintiff's motion to remand attacks the violation rate assumptions underlying Defendants' amount in controversy estimates for all claims. The court begins by assessing the reasonableness of Defendants' violation rate assumptions for Plaintiff's meal and rest break claims because those claims account for a significant portion ($2,280,629.10) of Defendants' $5,640,257.50 amount in controversy estimate, and the $5 million threshold cannot be met in this case without the amounts in controversy for those claims. (Doc. Nos. 1 at 23; 38 at 39.)

Under California Labor Code § 512(a), employers must provide an uninterrupted meal period of not less than thirty minutes to employees who work more than five hours per day. A

10

1    second meal period must be provided if an employee works more than ten hours per day. Cal.

2    Lab. Code § 512(a). Similarly, employers must permit employees to take rest periods for ten

3    minutes per four hours worked in a workday. Cal. Lab. Code § 226.7(b). Employers are required

4    to pay an employee an additional one hour of pay at the employee's regular pay rate for each

5    workday that a compliant meal or rest period is not provided. Cal. Lab. Code § 226.7(c).

6        Plaintiff's complaint alleges that putative class members "were at times interrupted during

7    purported meal periods," "were consistently unable to take timely, off duty, thirty-minute,

8    uninterrupted meal periods," and Defendants "implemented policies and/or practices that failed to

9    relieve [c]lass [m]embers of all duties and [Defendants'] control during unpaid meal periods."

10   (Doc. No. 1 at 50.) Plaintiff's complaint further alleges that putative class members "were

11   frequently if not always unable to take complaint rest periods" and Defendants "implemented

12   policies and/or practices that failed to relieve [Plaintiff] and other [c]lass [m]embers of all duties

13   and [Defendants'] control during rest periods." (*Id.* at 52–53.) Plaintiff claims that the class is

14   entitled to "one additional hour's pay at the employee's regular rate of compensation for each day

15   a meal period was missed, late, interrupted, or otherwise unlawful," and "one hour of additional

16   pay at the regular rate of compensation for each workday that a required rest period was not

17   provided." (*Id*. at 60–61.)

18       Based on these allegations, Defendants' notice of removal alleges it is reasonable to

19   assume that "each of the [putative class members] will claim to have not been provided nor paid

20   premiums for *one* non-compliant meal break *each day* they worked a meal-break eligible shift

21   (i.e. over five hours) during the 4-Year [statute of limitations] period." (Doc. No. 1 at 17.)

22   Defendants also argue they can reasonably assume "each of the [putative class members] who

23   worked a rest eligible shift (i.e. more than 3.5 hours in a workday) will claim to have not been

24   authorized or permitted to take at least one rest break nor paid a rest break premium for the

25   missed rest break on each 3.5-Hour Workday during the 4-Year [statute of limitations] Period."

26   (*Id.* at 18.) In their opposition to the pending motion, Defendants similarly argue that it is

27   "reasonabl[e] [to] assume that [putative class members] would claim to have experienced *at least*

28   one meal and rest break violation on *each* meal and rest break eligible shift." (Doc. No. 38 at 25.)

11

Put differently, Defendants claim that 100% of class members experienced one meal period and one rest break violation every shift that they were eligible to receive one.

Defendants assert their timekeeping and payroll data shows there were 47,804 five-hour workdays and 49,038 three-and-a-half hour workdays recorded during the relevant time period. (Doc Nos. 1 at 12, 18, 19; 38 at 23; 38-2 at 3.) Defendants also identify the average base regular rate of pay as $23.55. (Doc Nos. 1 at 12; 38 at 23; 38-2 at 3.) Assuming a 100% violation rate, Defendants calculate an amount in controversy for Plaintiff's meal period claim as $1,125,784.20 ($23.55 average regular rate of pay × 47,804 total number of putative meal break violations) and rest period claim as $1,154,844.90 ($23.55 average regular rate of pay × 49,038 total number of putative rest break violations).

The assumption underlying Defendants' calculation—that putative class members received *none* of the meal or rest breaks they were entitled to during eligible shifts—is not supported by Plaintiff's complaint. The complaint states that meal break violations occurred "at times." (Doc. No. 1 at 50.) "The language 'at times'. . . clearly limit[s] the allegations regarding how many employees were affected and how often they were affected." *Davis v. Empire Chauffeur Serv., Ltd.*, No. 2:23-cv-07968-MEMF-SSC, 2024 WL 1217377, at *6 (C.D. Cal. Mar. 18, 2024). District courts have held that language indicating violations occurred "at times" cannot reasonably support a 100% violation rate. *Id.*; *Duran v. Allegis Glob. Sols., Inc.*, No. 3:20-cv-09025-JD, 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021) (finding a 100% violation rate unreasonable where plaintiff alleged that defendants "acted 'at times' in a manner that violated California state employment laws" and "the violations may have happened to only 'some' of the putative class members"); *cf. Powell v. USI Ins. Serv., LLC*, No. 23-cv-04129-ODW-BFM, 2023 WL 6276578, at *4 (C.D. Cal. Sept. 25, 2023) (a 60% violation rate for meal periods and a 30% violation rate for rest periods was proper where plaintiff alleged that defendants "sometimes, but not always" violated protections).

As Defendants argue to support their 100% violation rate, Plaintiff's complaint also states that meal and rest break violations occurred "consistently," "frequently," and as a result of Defendants' "policies and/or practices." (Doc. No. 1 at 50–53.) Defendants cite to cases where

12

district courts have accepted 100% violation rates as reasonable based on allegations that an employer engaged in "consistent" or "uniform" violations. *See e.g.*, *Mendoza v. OSI Indus., LLC*, No. 5:22-cv-01202-JGB-SP, 2022 WL 4291327, at *5 (C.D. Cal. Sept. 16, 2022) (finding a 100% violation rate reasonable where plaintiffs alleged defendant's official policy uniformly prevented class members from taking compliant meal and rest breaks); *Archuleta v. Avcorp Composite Fab., Inc.*, 2018 WL 6382049, at *4-5 (C.D. Cal. Dec. 6, 2018) (100% violation rate where plaintiff alleged a "consistent policy" of failing to provide meal breaks). However, courts have also determined that a 100% violation rate may be unreasonable even where there are "policy and practice" allegations. *See e.g.*, *Powell v. USI Ins. Serv., LLC*, No. 2:23-cv-04129-ODW-BFM, 2023 WL 6276578, at *4 (C.D. Cal. Sept. 25, 2023) (complaint allegations of a pattern and practice could not reasonably support a 100% violation rate); *Davis,* 2024 WL 1217377, at *6 (holding that "policy" and "practice" cannot reasonably be read as 100% of employees). The court agrees with the latter approach. "While it is true that the complaint alleges that [the defendant] maintains 'an institutionalized unwritten policy that mandates' the employment violations alleged in the complaint, including the denial of meal and rest periods, this does not mean that such violations occurred in each and every shift." *See e.g.*, *Ibarra*, 775 F.3d at 1199.

Defendants have not provided any support to show their interpretation of a 100% violation rate is reasonable in this case. *Ibarra*, 775 F.3d at 1198–99 (the removing party has the "burden to show that its estimated amount in controversy relied on reasonable assumptions"). It would be just as consistent with the complaint to assume a frequency of one or three violations per week as it is to assume one violation for every shift that class members were eligible to receive a meal or rest break. *See Duran*, 2021 WL 3281073, at *3 (noting that an assumption of once-per-week for meal and rest break violations was arbitrary where defendant did not provide any evidence to tip the analysis in its direction); *Li v. Golftec Mgmt. LLC*, No. 3:24-cv-01678-RFL, 2024 WL 4553148, at *2 (N.D. Cal. May 29, 2024) ("In the absence of any evidence from [defendant], the [c]ourt simply has no reasonable basis to identify whether violations occurred only every other week, every month, or every other month, on average as to each putative class member.").

Accordingly, the court finds Defendants' assumed 100% violation rate untethered to

1  allegations in Plaintiff's complaint.

2              c.    *Defendants' Supporting Evidence*

3          Defendants have not offered any other "extrinsic evidence independently validating" their

4  assumptions of a 100% violation rate for meal and rest break claims. *Duran*, 2021 WL 3281073,

5  at *3. Defendants' only supporting evidence for its CAFA amount in controversy calculations is

6  Ms. Ryan's declaration. (Doc. No. 38-2.) But, as Plaintiff emphasizes in her motion and reply

7  brief (Doc. No. 41 at 9–10), Ms. Ryan's supplemental declaration is inadequate because it does

8  not mention any alleged violation rates, or the percentage of class members affected by

9  Defendants' violations. *See also Gipson v. Champion Home Builders, Inc.*, No. 1:20-cv-00392-

10  DAD-SKO, 2020 WL 4048503, at *5 (E.D. Cal. July 20, 2020) (determining that a declaration

11  alone was not sufficient to support defendant's amount in controversy where it failed to "provide

12  any evidence regarding the frequency of violations with respect to each of plaintiff's claims or the

13  violation rate generally").

14          Because Defendants' assumed violation rate is not supported by the complaint or tied to

15  any evidence, the court concludes that it is arbitrary and unreasonable. *Ibarra*, 775 F. 3d at 1199

16  (defendants must provide some support for their assumed violations rates, they cannot be "pulled

17  from thin air"). "Where a defendant's assumption is unreasonable on its face without comparison

18  to a better alternative, a district court may be justified in simply rejecting that assumption and

19  concluding that the defendant failed to meet its burden." *Jauregui v. Roadrunner Transp. Servs.,

20  Inc.*, 28 F.4th 989, 996 (9th Cir. 2022); *Li*, 2024 WL 4553148, at *2 (concluding that defendant

21  failed to satisfy its burden of establishing a sufficient amount in controversy where its assumed

22  violation rate was unreasonable, and no alternative violation was provided to the court). Indeed,

23  courts have declined to "propose a reasonable violation rate" because the "[c]ourt need only

24  weigh the reasonableness of the removing party's assumptions, not supply further assumptions of

25  its own." *Peters v. TA Operating LLC*, No. 5:22-cv-01831-JGB-SHK, 2023 WL 1070350, at *9

26  (C.D. Cal. Jan. 26, 2023) (cleaned up). When combined, Defendants' estimates for Plaintiff's

27  meal and rest break claims account for $2,280,629.10 of the total $5,640,257.50 amount in

28  controversy. (Doc. No. 1 at 23.) Therefore, the court need not address Defendants' valuations of

the remaining claims because even assuming they are correct, their combined total is below CAFA's $5,000,000 threshold. In sum, the court concludes that the Defendants have failed to meet their burden of showing by preponderance of the evidence that CAFA's jurisdictional requirements are satisfied.

       2.    Traditional Diversity Jurisdiction

      Defendants' notice of removal calculates the individual amount in controversy for Plaintiff to be $96,079.12, above the $75,000 threshold for traditional diversity jurisdiction. (Doc. No. 1 at 29.) Defendants allege they used Plaintiff's "payroll, employment, and operational data" to determine the amount in controversy for traditional diversity jurisdiction, including Plaintiff's number of workdays, shift lengths, number of pay periods, and hourly rates of pay. (*Id.* at 25.) Applying these data points and many of the same assumptions used to calculate the amount in controversy under CAFA, Defendants calculate Plaintiff's unpaid minimum wages and liquidated damages, unpaid overtime, meal and rest period premiums, waiting time penalties, unreimbursed business expenses, and statutory attorneys' fees, as follows:

| Claim | Amount in Controversy |
|---|---|
| Unpaid Minimum and Straight Time Wages and Liquidated Damages | $1,715.24 |
| Unpaid Overtime/Double Time Premiums | $4,669.73 |
| Meal Period Violations | $3,675.36 |
| Rest Period Violations | $3,693.03 |
| Waiting Time Penalties | $6,789.00 |
| Unreimbursed Business Expenses | $536.76 |
| Statutory Attorneys' Fees | $75,000 |
| **Total** | **$96,079.12** |

(*Id.* at 29.)

      With respect to statutory attorneys' fees, Defendants estimate Plaintiff's counsel will

spend "(a) at least 100 hours litigating Plaintiff's *individual* claims on written discovery and related motions (35 hours), non-expert depositions (20 hours), non-discovery motion practice, including dispositive motions (40 hours), and expert witness discovery and depositions (5 hours); and (b) at least 50 additional hours prosecuting those claims at trial or arbitration (40 hours) and engaging in post-trial or post-arbitration motions (10 hours)." (Doc. No. 1 at 28.) Assigning Plaintiff's counsel an "average hourly rate of $500 per hour," Defendants calculate attorneys' fees in the amount of $75,000 (150 hours × $500 per hour), or 78% of the $96,079.12 individual amount in controversy for Plaintiff's claims. (*Id*.) In Defendants' view, their attorneys' fees estimate is "conservative." (*Id*.)

In her motion to remand, Plaintiff argues that Defendants' attorneys' fees calculation lacks evidentiary support. (Doc. No. 35 at 25–26.) In addition, Plaintiff alleges Defendants' attorneys' fees estimate is flawed because "Defendants fail to take into account that any future attorneys' fees will be spread out across the class and not just attributed to the named plaintiff." (*Id*. at 26.)

In their opposition to the pending motion, Defendants counter that their statutory attorneys' fees estimate is "reasonable." (Doc. No. 38 at 16.) In support of this contention, Defendants provide the declaration of their counsel, Attorney Matthew C. Kane. (Doc. No. 38-1). In his declaration, Attorney Kane provides estimates for statutory attorney's fees that differ from the estimates provided in Defendants' notice of removal. Specifically, Attorney Kane estimates Plaintiff's counsel will spend "*at least* 150 hours, budgeted as follows: (a) written discovery on Plaintiff's individual claims and related motions; 35 hours; (b) non-expert depositions . . . 55 hours; (c) expert witness discovery and depositions of Plaintiff's expert who will analyze Plaintiff's time and pay records and Defendants' experts: 20 hours; and (d) non-discovery motion practice, including opposing dispositive motions on Plaintiff's individual claims: 40 hours." (*Id.* at ¶ 11.) Attorney Kane further states that "while Defendants estimate $500/hour for Plaintiff's attorneys' fees" in their notice of removal, "Plaintiff's counsel's firm have provided declarations in other matters. . . in why they testified [Plaintiff's counsel's] hourly rates range from $700/hour

1   to $850/hour."[6] (*Id.* at ¶ 12.) Attorney Kane explains that for the last 20 years, his practice has

2   almost exclusively focused on employment and wage and hour litigation. (*Id.* at ¶ 6.) Based on

3   his experience and extensive knowledge, Attorney Kane estimates that Plaintiff's counsel will

4   spend at least 150 hours litigating Plaintiff's individual claims. (*Id.* at ¶ 6.) Finally, Defendants

5   cite to the declaration of Plaintiff's counsel, Sepideh Ardestani, as support for their attorneys'

6   fees estimate. (Doc. No. 38 at 26) (citing Doc. No. 21-1). In her declaration, Attorney Ardestani

7   stated that she "will need to depose more than two individuals." (Doc. No. 21-1.)

8            a.    *Type of Jurisdictional Challenge*

9          As an initial matter, the court finds Plaintiff has mounted a factual attack on Defendants'

10   amount in controversy allegations. Rather than accepting the truth of Defendants' amount in

11   controversy allegations, Plaintiff challenges both the lack of evidence supporting Defendants'

12   calculations and the reasonableness of assumptions underlying Defendants' calculations. (*See*

13   Doc. No. 35); s*ee Rodriguez v. Rentokil N. Am., Inc.*, No. 8:24-cv-01356-DOC-DFM, 2024 WL

14   4467517, at *3 (C.D. Cal. Oct. 10, 2024) (plaintiff mounted a factual attack where they not only

15   challenged the lack of evidence but the factual assumptions being made by the defendant). For

16   example, Plaintiff emphasizes that Defendants include statutory attorneys' fees in their amount in

17   controversy calculation for Plaintiff's individual claims, but those fees are not awarded solely to a

18   named plaintiff; they are allocated amongst the class. (Doc. No. 35 at 26.) Because the court

19   concludes that Plaintiff has mounted a factual rather than facial attack, it will "apply the higher

20   evidentiary standard requiring the Defendant[s] to submit 'competent proof' that shows, by a

21   preponderance of the evidence, that the [amount in controversy is] satisfied." *Fuentes v. Hous.*

22   *Auth. of the City of L.A.*, No. 2:23-cv-03295-SPG-JPR, 2023 WL 5530027, at *3 (C.D. Cal. Aug.

23   25, 2023) (citing *Harris*, 980 F.3d at 701).

24   /////

---

25   [6] Attorney Kane's declaration attaches as exhibits several declarations filed by Plaintiff's counsel
26   in other matters. (Doc. No. 38-1.) Defendants request that the court take judicial notice of the
    declarations. (Doc. No. 39.) As previously discussed, courts regularly take judicial notice of court
27   filings and other matters of public record. *See Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6.
    Accordingly, the court will take judicial notice of the declarations filed by Plaintiff's counsel in
28   other matters, which are attached as exhibits to Attorney Kane's declaration.

1          b.      *Reasonableness of Defendants' Calculations*

2          Attorneys' fees may be "considered in determining the amount in controversy if such fees

3   are recoverable by plaintiff, either by statute or by contract." *Campbell v. Hartford Life Ins. Co*.,

4   825 F. Supp. 2d 1005, 1009 (E.D. Cal. 2011) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150,

5   1156 (9th Cir. 1998)). Future attorneys' fees awards may be included in determining the amount

6   in controversy under fee-shifting statutes. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d

7   785, 795 (9th Cir. 2018). However, district courts may exclude future fees if they are too

8   speculative. *Id.* It bears repeating that that there is a strong presumption against removal on

9   traditional diversity jurisdiction grounds. *Geographic Expeditions,* 599 F.3d at 1107. Defendants

10  must overcome this strong presumption by "us[ing] 'summary-judgment-type evidence' to show

11  that it is 'more likely than not' that the amount in controversy (including attorneys' fees) exceeds

12  $75,000." *Schneider v. Ford Motor Co*., 441 F. Supp. 3d 909, 914 (N.D. Cal. 2020) (quoting

13  *Fritsch*, 899 F.3d at 795–96).

14         Defendants have failed to meet their burden of proving the amount in controversy exceeds

15  $75,000 for traditional diversity jurisdiction because their future attorneys' fees estimate is

16  speculative. Attorney Kane's declaration does not demonstrate why his estimate that it would take

17  at least 150 hours to litigate Plaintiff's individual claims is reasonable. (*See* Doc. No. 38-1.)

18  Although Attorney Kane relies on his experience litigating wage and hour matters, he does not

19  explain what specific factors in this case led him to make his estimates beyond the fact that

20  Plaintiff's counsel has expressed their desire to take more than two depositions. *See Elias v.*

21  *Integon Preferred Ins. Co*., No. 2:24-cv-01981-WLH-RAO, 2024 WL 2732228, at *2 (C.D. Cal.

22  May 28, 2024). Attorney Kane's estimate "lacks the type of evidentiary support that typically

23  allows for the inclusion of [attorneys'] fees" in an amount in controversy calculation, "such as fee

24  petitions submitted in similar cases." *Newsome v. FCA USA LLC*, No. 1:20-cv-01189-JLT-BAK,

25  2022 WL 408631, at *6 (E.D. Cal. Feb. 10, 2022); *see also Martinez v. Ford Motor Co.*, No.

26  1:18-cv-01607-LJO-JLT, 2019 WL 1988398, at *7 (E.D. Cal. May 6, 2019) (defendant included

27  "five petitions for attorneys' fees filed in other similar cases" to support its amount in controversy

28  calculation).

1    Defendants' attorneys' fees assumptions are also flawed because they fail to account for

2    the impact of class claims. Defendants allege that their attorneys' fees calculation is based solely

3    on work required for Plaintiff's individual claims. (Doc. No. 1 at 30–31.) But Attorney Kane's

4    estimate includes legal work that would be performed on behalf of the entire class, such as

5    conducting discovery. (Doc. No. 38-1 at 4–5); *see Rodriguez v. Goodrich Corp*., No. 2:14-cv-

6    01026 JAM AC, 2014 WL 3842904, at *4 (E.D. Cal. Aug. 1, 2014) (defendants' attorneys' fees

7    estimates were not based solely on fees applicable to plaintiff because they included pretrial

8    activities that are typically "conducted on behalf of the entire putative class"). Furthermore, if

9    Plaintiff is successful on the merits of her claims, she would be entitled to an award for attorneys'

10    fees pursuant to California Labor Code Section 1194, which does not authorize an award of fees

11    "solely to named plaintiffs in a class action," but rather to "any employee" who prevails on his or

12    her claim. (*See e.g.*, Doc. No. 1 at 54–55, 58); *Rodriguez*, 2014 WL 3842904, at *4. "In such

13    cases, courts determine the plaintiff's appropriate share of attorneys' fees by distributing the total

14    estimated fees on a pro rata basis amongst the named plaintiff(s) and class members." *Jurado v.

15    Aequor Heathcare Servs., LLC*, No. 2:21-cv-02633-VAP-AS, 2021 WL 2178846, at *2 (C.D.

16    Cal. May 27, 2021). As Plaintiff notes, Defendants have not attempted to estimate her pro-rata

17    share of attorneys' fees.

18    For these reasons, Defendants have not met their burden to show by a preponderance of

19    the evidence that the amount in controversy requirement is satisfied. Even if the court were to

20    adopt the rest of Defendants' calculations in full, the total would still fall below the $75,000

21    threshold. (Doc. Nos. 1 at 31; 38 at 39.) Therefore, the inadequacy of Defendants' attorneys' fees

22    estimate is fatal to removal on traditional diversity jurisdiction grounds.

23    **B.    Preemption under Section 301 of the LMRA**

24    Section 301 of the LMRA provides federal courts with original jurisdiction, regardless of

25    the amount in controversy or citizenship of the parties, over any lawsuits "for violation of

26    contracts between an employer and a labor organization representing employees in an industry

27    affecting commerce." 29 U.S.C. § 185(a). In the specific context of preemption under Section 301

28    of the LMRA, the Ninth Circuit has recognized that preemption "has such 'extraordinary pre-

19

1    emptive power' that it 'converts an ordinary state common law complaint into one stating a

2    federal claim for purposes of the well-pleaded complaint rule.'" *Curtis v. Irwin Indus., Inc.*, 913

3    F.3d 1146, 1152 (9th Cir. 2019) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)); *see

4    also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-

5    question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that

6    federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's

7    properly pleaded complaint.").

8        In *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053 (9th Cir. 2007), the Ninth Circuit

9    established a two-part test to determine whether a state law claim is preempted by Section 301 of

10   the LMRA. The first step requires courts to consider "whether the asserted cause of action

11   involves a right conferred upon an employee by virtue of state law, not by a [collective bargaining

12   agreement]." *Burnside*, 491 F.3d at 1059. At this first step, courts consider "the legal character of

13   a claim, as 'independent' of rights under the collective-bargaining agreement and not whether a

14   grievance arising from 'precisely the same set of facts' could be pursued." *Livadas v. Bradshaw*,

15   512 U.S. 107, 123 (1994) (cleaned up). "If the right exists solely as a result of the [collective

16   bargaining agreement], then the claim is preempted" and the analysis ends without proceeding to

17   step two. *Burnside*, 491 F.3d at 1059. If not, the court proceeds to the second step and asks

18   whether a plaintiff's state law right is nevertheless "substantially dependent" on interpretation of

19   the collective bargaining agreement. *Burnside*, 491 F.3d at 1059. "[T]he term 'interpret' is

20   defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v.

21   Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000). If the claim merely

22   requires "looking to" the collective bargaining agreement, then the claim it is not preempted.

23   *Burnside*, 491 F.3d at 1060. If interpretation of the collective bargaining agreement is required,

24   then the claim is preempted. *Id.*

25       Defendants assert that this court has federal question jurisdiction because Plaintiff's

26   claims regarding overtime, meal and rest break, and paid sick leave violations are preempted by

27   Section 301 of the LMRA. (Doc. Nos. 1 at 29-35; 38 at 31-33.) Specifically, Defendants allege

28   that adjudication of Plaintiff's claims is substantially dependent on interpretation of the CBAs

1   between Defendant C&S Wholesale and the Union under step two of the *Burnside* test. (Doc. No.

2   38 at 31–32.) Defendants assert that Plaintiff's claims are predicated on the theory that Defendant

3   failed to pay for overtime hours, meal and rest break premiums, and paid sick leave, and

4   California law requires the payment of such wages at the "regular rate of pay." (Doc. No. 38 at

5   32.) The CBAs state that the overtime rate shall be "one and one-half (1 ½) times the straight time

6   rate," but do not define the "straight time rate" or "regular rate of pay" for purposes of calculating

7   overtime wages and break premiums. (*Id.*) Therefore, Defendants argue that the court will have to

8   analyze forms of pay provided by the CBAs and decide if they should have been included in

9   employees' "regular rate." (*Id.*)

10      Defendants analogize this case to *McKinley v. Southwest Airlines* Co., No. 2:15-cv-02939-

11   AB-JPR, 2015 WL 2431644 (C.D. Cal. May 19, 2015), in which the court held the plaintiff's

12   overtime rate required interpretation of a collective bargaining agreement fand was therefore

13   preempted by Section 301 of the LMRA. There, the collective bargaining agreement governing

14   plaintiff's employment did not explicitly define plaintiff's regular rate of pay for the purpose of

15   calculating overtime pay. *McKinley*, 2015 WL 2431644, at *8. Instead, it applied multipliers to

16   employees' hourly rate. *Id.* However, the collective bargaining agreement did not state the types

17   of remuneration that were to be included in the hourly rate. *Id.* Because plaintiff alleged that

18   defendant did not calculate and/or factor all remuneration earned in the regular rate of pay, the

19   court concluded that it would have to "examine each form of pay provided by the [collective

20   bargaining agreement], determine when that pay was due, and then decide whether the pay should

21   have been included in [p]laintiff's regular rate." *Id.* at *6. In other words, the court "would have

22   to consider the interaction of multiple [collective bargaining agreement] provisions to calculate

23   [p]laintiff's regular rate of pay." *Id.*

24      Defendants' reliance on *McKinley* is unavailing. In *McKinley*, defendant's "liability

25   hing[ed] on whether it properly calculated [p]laintiff's regular rate of pay," which required the

26   court to evaluate "many different provisions" of the collective bargaining agreement to assess

27   plaintiff's claim. *Id.* at *8. By contrast here, the court does not need to consider the interaction of

28   multiple CBA provisions. *See Peters v. RFI Enters., Inc*., No. 5:18-cv-01187-BLF, 2018 WL

1    3869564, at *6 (N.D. Cal. Aug. 15, 2018) (LMRA did not preempt plaintiff's claims where the

2    court did not need to consider the interaction of multiple collective bargaining agreement

3    provisions to determine the regular rate of pay because employees' hourly rates were clearly set

4    forth in an addendum to the agreement). Plaintiff's allegations focus on Defendants' failure to pay

5    for overtime work and missed meal and rest breaks. (Doc. No. 1 at 57-62.) As Plaintiff correctly

6    notes, employees are paid wages according to "Appendix A" of the CBAs, which lists hourly

7    rates of pay for different positions. (Doc. No. 41 at 18.) The CBAs state that the overtime rate is

8    "one and one-half (1 ½) times the straight time rate." (Doc. No. 1-2 at 12, 52.) Thus, the CBAs

9    provide instructions on how to calculate the regular rate of pay for purposes of calculating

10   overtime wages with a compensation formula that is not complicated. *See Div. of Lab. Standards*

11   *Enf't v. Save Mart Supermarkets*, No. 2:21-cv-07402-ODW, 2022 WL 837206, at *5 (C.D. Cal.

12   Mar. 21, 2022) (concluding interpretation of collective bargaining agreements was not required

13   where they provided a table of wage rates from which the court could "readily determine in a

14   clear and straightforward manner the [employees'] regular hourly rates of pay"); *Flournoy v.*

15   *Watts Healthcare Corp*., No. 2:20-cv-06607-RGK-SK, 2020 WL 5960686, at *5 (C.D. Cal. Oct.

16   6, 2020) (court only needed to reference rather than interpret a collective bargaining agreement

17   where plaintiff's claim was that defendant failed to pay for overtime hours worked and not that

18   defendant misapplied a complex premium schedule).

19          Further, Defendants fail to identify any active dispute between the parties regarding the

20   regular rate of pay used to calculate premiums. *See Alaska Airlines Inc. v. Schurke*, 898 F.3d 904,

21   921 (9th Cir. 2018) ("[C]laims are only preempted to the extent there is an active dispute over

22   'the meaning of contract terms.'"); *Anguiano v. Mann Packing Co*., No. 5:19-cv-02133-VKD,

23   2019 WL 2929789 (N.D. Cal. July 8, 2019) ("The [c]ourt rejects [defendant's] suggestion that the

24   absence of an express definition for a term used in a [collective bargaining agreement] necessarily

25   creates [] a dispute."). Notably, Defendants do not specify how their definition of the regular rate

26   of pay or straight-time rate differs from Plaintiff's. Nor do Defendants claim that the regular rate

27   of pay *cannot* be determined based on the hourly rates for various job classifications listed in

28   Appendix A. *See e.g.*, *Peters*, 2018 WL 3869564, at *6 (court did not need to interpret a

collective bargaining agreement to determine the amount of overtime pay where the regular rate of pay was "indisputably" the hourly rate set forth in an addendum to the agreement). In fact, Defendants acknowledge in their notice of removal that "Appendix A of the CBAs sets forth the bargained for regular rates of pay for covered employees." (Doc. No. 1 at 33.) Although the court may need to refer to the CBAs to calculate premiums, referring to the CBAs is not considered interpretation. *See e.g.*, *Wilson-Davis v. SSP Am., Inc*., 434 F. Supp. 3d 806, 813 (C.D. Cal. 2020) ("It is not enough for Defendants to provide a laundry list of provisions that they allege the [c]ourt must interpret to resolve Plaintiffs claims; Defendants must explain why interpretation, as opposed to mere reference to the [collective bargaining agreement], is necessary."); *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 957–58 (C.D. Cal. 2014) (mere reference to a collective bargaining agreement is not enough to find a claim substantially dependent on the agreement). Because Defendants have not established that interpretation of the CBAs is required to adjudicate Plaintiff's claims, the court finds that LMRA preemption does not apply.

Having found that none of Defendants' asserted bases for subject matter jurisdiction exist, the court will grant Plaintiff's motion to remand.

## CONCLUSION

For the reasons explained above,

1.    Plaintiff's motion for reconsideration (Doc. No. 34) is DENIED;

2.    Plaintiff's motion to remand (Doc. No. 35) is GRANTED;

3.    Plaintiff's request for judicial notice (Doc. No. 35-1) is GRANTED in part and DENIED in part, as set forth herein;

4.    Defendants' request for judicial notice (Doc. No. 39) is GRANTED, as set forth herein;

5.    This action is remanded to the Sacramento County Superior Court for all further proceedings;

6.    The court's order dated January 7, 2025, granting Defendants' motion to compel arbitration (Doc. No. 33) is VACATED; and

/////

23

1       7.      The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **October 2, 2025**

Dena Coggins
United States District Judge